## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BELGRAVIA HARTFORD GOLD ASSETS CORP.,
F/K/A INTERNCONTINENTAL POTASH CORP.,

      Plaintiff,

v.                                                                  Case No. 2:21-cv-00918-MIS-JHR

POLYNATURA CORP., F/K/A INTERCONTINENTAL
POTASH CORP. (USA)

      Defendant.

### PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR DETERMINATION OF AMBIGUITY IN ROYALTY AGREEMENT

Plaintiff Belgravia Hartford Gold Assets Corporation F/K/A Intercontinental Potash Corporation (USA) ("Belgravia"), by and through counsel of record, respectfully submits its reply in support of its Motion for Determination of Ambiguity in Royalty Agreement to Allow Jury to Consider Parol Evidence, filed on September 6, 2024 [Doc. 145] ("Motion"). In its Response to the Motion [Doc. 158] ("Response"), Defendant argues that the Motion is procedurally improper and that parol evidence is not admissible to "change . . . the Parties' contract." Resp. 2-5. However, Plaintiff's Motion is the *only* procedurally appropriate means of obtaining the relief it requests, and Defendant's parol evidence objection rests on a misunderstanding of the "two-level analysis" New Mexico courts must employ to determine when such evidence may be used. *See City of Sunland Park v. Harris News, Inc.*, 124 P.3d 566, 571 (N.M. Ct. App. 2005). Accordingly, this Court should grant the Motion.

### ARGUMENT

### I.    The Motion is Procedurally Proper.

Belgravia's Motion is procedurally proper because it requests a court order. Pursuant to the Federal Rules of Civil Procedure, "[a] request for an order *must* be made by motion," which must

(1) be in writing; (2) state with particularity the grounds for seeking the order; and (3) state the relief sought. Fed. R. Civ. P. 7.1(b) (emphasis added); *see also* D.N.M.LR-Civ. 7.1(a). Thus, if a party wants the Court to grant an order or issue other relief, the party is required to request the order or relief in a proper motion. *See Faircloth v. Marquez*, No. 12-cv-03317-REB-KLM, 2014 WL 1328495, at *1 (D. Colo. Apr. 2, 2014) (declining to consider merits of plaintiff's arguments "to the extent plaintiff intends by [them] to request affirmative relief" because an objection to the magistrate judge's recommendation was "not the proper vehicle for presenting such matters for resolution." (citing Fed. R. Civ. P. 7(b)(1)). Indeed, it is well-established that a request for relief that is buried in a brief may be rejected on the basis that the party failed to make a proper motion as required under Rule 7(b). *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010), *cert. denied*, 565 U.S. 816 (upholding trial court's denial of leave to amend plaintiff's complaint where plaintiff did not file a written motion to this effect, but only included the request in her opposition to a motion to dismiss).

Here, Plaintiff's Motion seeks a court order that the Royalty Agreement that is at the center of this dispute is ambiguous, such that parol evidence may be considered by the jury at trial to determine the true intent of the parties. Mot. 1. Defendant argues that the Motion is procedurally improper because "[t]he claimed ambiguity . . . is unavoidably an additional objection to summary judgment that Plaintiff was required to include within the 24-page limit on its opposition brief." Resp. 1. However, the provisions of Fed. R. Civ. P. 7(b) clearly provide that, far from being procedurally improper, the Motion is the *sole* procedurally appropriate means for Plaintiff to obtain its requested relief. Moreover, Defendant is in no way prejudiced by the Motion because the ambiguity issue is sufficiently briefed in Plaintiff's Response for the Court to decide, pursuant to Fed. R. Civ. P. 56, whether the ambiguity of the Agreement constitutes a material fact as to which

there is a genuine dispute. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4-5 (Sept. 6, 2024) [Doc 142-1]. Plaintiff's Motion, by contrast, asks the Court to determine not that there is a genuine dispute about the Agreement's ambiguity, but that the Agreement is actually ambiguous. Thus, Defendant has absolutely no grounds to request that the Court strike the Motion.

**II.    If Plaintiff's Motion is Granted, the Court May Admit Parol Evidence To Aid The Jury in Interpreting the Royalty Agreement.**

Plaintiff's Motion proffers evidence that the Agreement is ambiguous, and if the Court rules in Plaintiff's favor, the trier of fact may consider parol evidence to aid in its interpretation. Whether an agreement contains an ambiguity is "a matter of law to be decided by the trial court." *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993). The court may consider "collateral evidence of circumstances surrounding the execution of the agreement" in determining whether the language of the agreement is unclear, i.e. in this first stage of determining an ambiguity the court is not constrained to the four-corners of the contract itself. *Id.* If the court determines that the contract is "reasonably and fairly susceptible of different constructions," (and may consider the parol evidence in making such determination) an ambiguity exists. *Id.* Once an agreement is found to be ambiguous, the meaning to be assigned the unclear terms is "a question of fact" that "must be resolved by the jury." *Id.* at 1235-36. In carrying out this interpretive task, the jury may consider "extrinsic evidence of the language and conduct of the parties and circumstances surrounding the agreement, as well as oral evidence of the parties' intent." *Id.* at 1236.

Here, Plaintiff has offered evidence in the Motion that key terms in the Royalty Agreement, such as "commercially reasonable efforts," are ambiguous given the circumstances surrounding its execution. Defendant's objection that this evidence is inadmissible because its purpose or effect is to contradict the terms of the Agreement puts the cart before the horse because "[n]o parol evidence that is offered can be said to contradict a writing until by process of interpretation the

meaning of the writing is determined." *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 243 (N.M. 1991) (quoting Arthur Corbin, *The Parol Evidence Rule*, 53 Yale L.J. 603, 622 (1944)). If a court determines that the terms of a contract are ambiguous, then they are "susceptible to reasonable but conflicting meanings[,]" *see id.*, and the proffered evidence cannot be said to contradict them. That is why New Mexico courts have held that extrinsic evidence was offered to contradict the terms of a contract rather than aid in their interpretation only where they have already found the contract to be *unambiguous*. *See, e.g.*, *Memorial Medical Ctr., Inc. v. Tatsch Construction, Inc.*, 12 P.3d 431, 437 (N.M. Ct. App. 2000) (holding that because a lease term was not ambiguous, evidence contradicting the term could not be admitted under parol evidence rule); *In re Faust*, No. 13-03-14316 SA, 2007 WL 4395695, at *5 (D.N.M. Dec. 12, 2007) (finding that testimony proffered to show ambiguity did "not cast doubt on the meaning of the clear words" of the contract but was an attempt to contradict it, so the court did not need to admit the testimony); *see also* Corbin, *supra*, at 642 ("Testimony to prove an addition [that contradicts the writing] is wholly immaterial, *after it has been established that the writing is a complete and accurate integration*[.] . . . Until such establishment, however, [such testimony] should be admitted." (emphasis added)). In other words, if the Court decides that the Agreement is ambiguous, that ruling "is also a ruling on whether extrinsic evidence may or may not be heard"—that is, whether the extrinsic evidence proffered by Plaintiff contradicts the unambiguous meaning of a contract's terms or is an aid to interpreting them. *See City of Sunland Park*, 124 P.3d at 571.

Defendant also argues that parol evidence may be considered by this Court only to detect a "latent ambiguity." Resp. 3. As this phrase is defined by Defendant—"the document is not ambiguous on its face, but introduction of extrinsic evidence demonstrates that there was actually an ambiguity," *id.*—Plaintiff's claim is that the Agreement is latently ambiguous at least in part,

and Plaintiff has offered evidence in the record to that effect, specifically the email from Mr. Peter Yu attached to the Motion as Exhibit B. However, Defendant's claim that this Court may use parol evidence *only* to detect "latent" ambiguity is belied by the New Mexico Supreme Court's expansive definition of ambiguity, which it set forth in the context of describing when courts may use extrinsic evidence to determine "whether chosen terms are clear":

> Ambiguity, as it has been used in this state, is best understood as a proxy for describing lack of clarity in the parties' expressions of mutual assent. The term, as it has been employed, incorporates a variety of conceptual problems including the distinctive notions of ambiguous syntax, ambiguous terms, vagueness, and general lack of clarity.

*C.R. Anthony Co.*, 817 P.2d at 242-43 & n.2. The New Mexico Supreme Court's authoritative pronouncement clearly establishes that for purposes of making a legal determination regarding the Agreement's ambiguity, "ambiguity" encompasses a broad range of situations where there is lack of clarity in the parties' expressions of mutual assent, and not just where the contract is facially unambiguous but extrinsic evidence shows that there is latent ambiguity.

**III.    Defendant's Proposed Stipulation Does Not Resolve the Issues Raised by Plaintiff's Motion.**

Defendant's proposed stipulation to correct what it calls a "typographical error" in Section 5(e) of the Agreement, *see* Resp. 5, is inadequate as a mechanism for resolving the issues raised in the Motion for a number of reasons. First, while Plaintiff is open to amending Section 5(e) to bring it closer to what the parties intended, and has expressed as much to Defendant,[1] an amendment would not resolve the other ambiguities in the Agreement—in particular, the switch from "commercial best efforts" to "commercially reasonable efforts" as described in Plaintiff's Motion.

---

[1] *See* E-mail from Spencer L. Edelman, Plaintiff's Counsel, to R. Matthew Burke, Defendant's Counsel (Oct. 4, 2024), attached hereto as **Exhibit 1**. Notably, Defendant's counsel reached out to Plaintiff's counsel with the proposed stipulation at 5:33 p.m. MST the day before filing its Response. *See* Resp., Ex. 2.

In addition, Plaintiff is unwilling to stipulate that Section 5(e) "reflects a scrivener's error," *id.*, given the deposition testimony of one of Defendant's principals, Paul Hong, to the effect that the provision is neither ambiguous nor in error. *See* Mot., Ex. C, Dep. of Paul Hong 104:12-105:14 ("Q: The last sentence talks about grantee, who is PolyNatura's obligation to confer and consult with grantor regarding the renewal of the water lease; correct? A. I don't think so.  The grantee is Belgravia. Q: So you think that's a typo? A: [. . .] I think it's confused but recall that until and certainly as of the date of this agreement, Belgravia controlled Polynatura and had the institutional knowledge, institutional recollection, had many of the files and similar of Polynatura ICP USA.  And most importantly regarding the water.  That it was really contact of Belgravia that had good insight into obtaining, maintaining leases.  So I think that this means what it says which is that the grantee, Belgravia, agrees to confer and consult with PolyNatura regarding renewal of the water lease."). This questioning continued for fourteen pages, replete with objections and obfuscation before Mr. Hong stated that he did believed Section 5(e), as written was "absolutely consistent." Dep. of Paul Hong 118:6; *see also* Dep. of Paul Hong 104:12-118:6 attached hereto as **Exhibit 2**. Defendant was given every opportunity to simply agree that this was a scrivener's error but presented testimony that suggested it was the exact opposite. Defendant's counsel's wish to unwind their client's testimony is unavailing.

Mr. Hong's statements themselves constitute evidence of a lack of clarity in the parties' expressions of mutual assent that should be available to the jury to help them interpret the Royalty Agreements meaning. Finally, and relatedly, to the extent that Defendant requests that this Court reform Section 5(e), *see* Resp. 5 & n.2, this remedy is not available where the reformed language was not "clearly and convincingly" part of the original agreement. *Twin Forks Ranch, Inc. v. Brooks*, 1998-NMCA-129, ¶ 20, 125 N.M. 674. Given Mr. Hong's contrary testimony and

6

Plaintiff's arguments as set forth in its Motion, Defendant's proposed reformed language clearly does not meet that standard.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiff's Motion.

Respectfully submitted,

MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.

BY: /s/ *Spencer L. Edelman*
      Spencer L. Edelman
      Jamie L. Allen
      P.O. Box. 2168
      500 Fourth St. NW, Ste. 1000
      Albuquerque, NM 87103-2168
      505.848.1800
      sle@modrall.com
      jallen@modrall.com

WE HEREBY CERTIFY that on the 18th day of October 2024 we filed the foregoing electronically through the CM/ECF system, which caused all parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

MODRALL, SPERLING, ROEHL, HARRIS
   & SISK, P.A.

By: /s/ *Spencer L. Edelman*
      Spencer L. Edelman

W5193319.DOCX