IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BELGRAVIA HARTFORD GOLD
ASSETS CORP.,

      Plaintiff,

v.                                                                 No. 2:21-cv-00918-MIS-JHR

POLYNATURA CORP.,

      Defendant.

<u>**OMNIBUS ORDER**</u>

**THIS MATTER** is before the Court on the Parties' motions for summary judgment, Plaintiff's Motion for Determination of Ambiguity, Defendant's Motion to Exclude Expert Testimony, and Defendant's Motion to Strike or Exclude Declaration of Sidney Himmel. Defendant PolyNatura Corp. ("PolyNatura") filed its Motion for Summary Judgment ("Defendant's SJ Motion"), ECF No. 136, on August 12, 2024. Plaintiff Belgravia Hartford Gold Assets Corp. ("Belgravia") filed its Motion for Partial Summary Judgment ("Plaintiff's SJ Motion"), ECF No. 144, on September 6, 2024. Belgravia responded to Defendant's SJ Motion, and PolyNatura replied. ECF Nos. 143, 154. PolyNatura responded to Plaintiff's SJ Motion, and Belgravia replied. ECF No. 157. The Court held a hearing on limited issues on December 4, 2024, ECF No. 178, following which the parties filed supplemental briefing and designations of evidence pursuant to Court order. ECF Nos. 185, 189, 190, 193. Upon due consideration of the parties' submissions, the record, and the relevant law the Court will **GRANT IN PART** and **DENY IN PART** Defendant's SJ Motion; **DENY** Plaintiff's SJ Motion; **DENY** Plaintiff's Motion for Determination of Ambiguity; **DENY without prejudice** Defendant's Motion to

Exclude Expert Testimony; and **GRANT** Defendant's Motion to Strike or Exclude Declaration
of Sidney Himmel.

I.      **FACTUAL BACKGROUND**

The parties have a long and complicated history, the intricacies of which the Court will
not delve into here. The present dispute centers on the development of a potash/polyhalite mine
in Lea County, New Mexico. Second Am. Compl. & Jury Demand ("Second Am. Compl.") at
¶¶ 5, 14, ECF No. 67. Two deep water wells were drilled for projected use in the mining project.
*Id.* at ¶ 14.[1] However, because the developers later shifted the mine's focus toward a different
potash product that required significantly less water to process than the originally contemplated
product, they determined that there would be excess water from the wells available for sale. *Id.*;
Pl.'s Resp. Def.'s Mot. Summ. J. at 3, ECF No. 142-1. Over time several investors fought for
control of PolyNatura, the entity that owns the rights to extract the minerals and the interests in
the Water. Second Am. Compl. ¶¶ 14, 17. Lengthy litigation resulted in a 2017 settlement in
which the entity now known as Belgravia agreed to give Cartesian Capital full ownership and
control of PolyNatura in exchange for two cash payments and royalties. *Id.* at ¶¶ 17-18.

The Royalty Agreement, ECF No. 137-8, provided that PolyNatura (now under the
control of Cartesian Capital) would pay Belgravia a 75% royalty on any revenue realized from
the sale of the Water, up to a cap of $12.2 million. Royalty Agreement § 3.a. Further, if the
Water royalties had not reached that dollar amount by 2023, then Belgravia would begin
receiving a 1% royalty on revenues from the mine (up to the same cap). *Id.* Importantly for the
present case, the Royalty Agreement obligated PolyNatura to use "***commercially reasonable***

---

[1] The water from those two wells will hereinafter be referred to as the Water, following the lead of the
parties. *See* Def.'s SJ Mot. at 1; *see generally* Pl.'s SJ Resp.

*efforts* to realize revenues" from the Water and the mine. *Id.* § 5.a. (emphasis added). The same section of the Agreement continues, "[PolyNatura] shall have no obligation to develop, quarry, mine, remove, or sell any [potash from the mine] or [W]ater and, if such activities are begun, nothing herein shall require [PolyNatura] to continue to develop, quarry, mine, remove, or sell the same if, in [PolyNatura]'s reasonable discretion, it is not commercially reasonable to do so." *Id.*

The Royalty Agreement also states, in a section titled "Books and Records/Inspection," that PolyNatura shall permit Belgravia, at Belgravia's cost and expense, "to inspect [PolyNatura]'s records (including without limitation, any records and data that are maintained electronically)," and make copies of such records, and "to discuss with [PolyNatura] the calculations of the Royalty and the [Water revenue amount], and [mining revenue amount]." *Id.* § 7.

According to Belgravia, PolyNatura's efforts to realize revenue from the mining and Water assets have been contractually insufficient. After the execution of the settlement and Royalty Agreement, PolyNatura hired a consultant to conduct a formal Request for Proposals ("RFP") process and "and solicit bids to buy or lease the water from the wells or the wells themselves." Second Am. Compl. ¶ 23. Before the settlement, PolyNatura (then under Belgravia's control, *see* Def.'s SJ Mot. at 7-8) received an offer from Tommy Cope to buy the wells outright. Second Am. Compl. ¶ 24. However, that offer was rejected and expired. Def.'s SJ Mot. at 8. The original RFP deadline came and went in December 2017 without PolyNatura receiving a single bid. Second Am. Compl. ¶ 27. PolyNatura then extended the deadline and received one offer (from Fluid Delivery Solutions ("FDR")) to lease the Water. *Id.* ¶ 28. FDR and PolyNatura negotiated, but the deal fell through by the end of August, 2018. *Id.* ¶ 39; Def.'s

SJ Mot. at 9. At this point, with Belgravia's recommendation, PolyNatura retained a water broker to help identify leads and broker a deal. Second Am. Compl. ¶ 42. In September, 2019, Belgravia proposed a new water broker to PolyNatura, who PolyNatura engaged. *Id.* ¶ 43. No deal came to fruition from either broker's efforts. *See id.* ¶¶ 42-45.

## II.     PROCEDURAL BACKGROUND

Plaintiff Belgravia filed the instant action on September 20, 2021 under the Court's diversity jurisdiction. Belgravia subsequently amended its complaint twice, on November 12, 2021, and on December 28, 2022. The latter document is the operative complaint. Belgravia asserts one claim for breach of contract against PolyNatura. Belgravia asserts that PolyNatura breached the Agreement in four ways: (1) "Delaying and interfering with the inspection of PolyNatura's books and records, and improperly withholding documents"; (2) "Failing to pursue a transaction with [a particular interested buyer] in 2018"; (3) "Failing to use commercially reasonable efforts to realize revenues from the water wells"; and (4) "Failing to use commercially reasonable efforts to realizing revenues from the mining asset." Second Am. Compl. at 18.

## III.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that threshold is

met, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. In applying the summary judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (citation omitted).

## IV.    DISCUSSION

### A.    Plaintiff's Motion for Determination of Ambiguity

#### 1.    Parties' arguments

On the same day that it filed its own motion for summary judgment and response to PolyNatura's summary judgment motion, Belgravia filed an additional motion styled as "Motion for Determination of Ambiguity in Royalty Agreement to Allow Jury to Consider Parole Evidence." ECF No. 145. In its motion, Belgravia requests this Court issue "an order determining that the Royalty Agreement that is the center of this dispute is ambiguous, such that parole evidence may be considered by the jury at trial to determine the true intent of the parties." *Id*. at 1. Belgravia argues that the term "commercially reasonable efforts" as used in the Agreement is ambiguous. As evidence of this ambiguity, Belgravia points to an email from a Cartesian Capital executive about the contract in which he uses a different phrase, "commercial best efforts," *id*. at 2—parole evidence Belgravia asserts the Court may consider in determining ambiguity under New Mexico law, *id*. at 4.

PolyNatura responds, first, that Belgravia's motion is procedurally improper. Def.'s Resp. Pl.'s Mot. Determination Ambiguity Royalty Agreement Allow Jury Consider Parole Evidence at 2-3, ECF No. 158. PolyNatura alleges that Belgravia's Motion is clearly an attempt to circumvent this Court's local rule limiting response briefs to twenty-four pages, *see*

D.N.M.LR-Civ. 5.7, and that this argument should have been raised in Belgravia's opposition to PolyNatura's Motion for Summary Judgment. For this reason, PolyNatura asks the Court to strike Belgravia's Motion from the record. On the merits of Belgravia's Motion, PolyNatura argues that parole evidence cannot be considered to "contradict the writing," but rather can only be used to detect a "latent ambiguity" in the text. Here, PolyNatura argues there is no such latent ambiguity—plaintiff wants to use parole evidence to replace one unambiguous term with another. *Id.* at 4-5. And, in any event, the "commercially reasonable efforts" language was in fact proposed by Belgravia. *Id.* at 4. In reply, Belgravia argues that the motion is procedurally proper because it is a request for an order under Federal Rule of Civil Procedure 7.1(b). Pl.'s Reply Supp. Mot. Determination Ambiguity Royalty Agreement at 1-2, ECF No. 165. It did argue in its response to PolyNatura's Motion that the ambiguity of the contract "constitutes a material fact as to which there is a genuine dispute," *id.* at 2-3 (citing Pl.'s Resp. at 4-5), but in the instant motion it asks the Court to determine that the Agreement "is actually ambiguous," *id.* at 3. Further, Belgravia argues, PolyNatura conflates parole evidence offered to vary the terms of a contract already determined to be unambiguous with parole evidence offered to determine at step one whether there is ambiguity at all. *Id.* at 3-4.

### 2.        Analysis

As an initial matter, it would have been more appropriate for Belgravia to include its ambiguity arguments in its own motion for summary judgment. *See* Fed. R. Civ. P. 56(a) (permitting a party to move for summary judgment on "part" of a claim). However, because the Motion to Determine Ambiguity was filed simultaneously with Plaintiff's SJ Motion, and because Belgravia had plenty of pages to spare in that brief, the Court will consider the ambiguity arguments.

Under New Mexico law,[2] "[w]hether contractual terms are ambiguous is a question of law" properly decided by the court. *ConocoPhillips Co. v. Lyons*, 299 P.3d 844, 849 (N.M. 2012). *See also Levenson v. Mobley*, 744 P.2d 174, 176 (N.M. 1987). Courts are to deduce the "purpose, meaning and intent of the parties to a contract" from "the language employed by them," and "where such language is not ambiguous, it is conclusive." *ConocoPhillips*, 299 P.3d at 852 (quoting *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 80 (N.M. 1993)). "A contract term may be ambiguous if it is 'reasonably and fairly susceptible [to] different constructions.'" *Id.* (quoting *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993)) (alteration in original). If a court determines that a term is ambiguous, the interpretation of the term is a question of fact for the jury (or the judge in the case of a bench trial). New Mexico courts may consider extrinsic evidence in making the "threshold" determination as to ambiguity. *ConocoPhillips*, 299 P.3d at 849. Permissible collateral evidence includes that of "the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 242-43 (N.M. 1991).

Belgravia here asks the Court to determine whether or not the phrase "commercially reasonable efforts" in the Agreement is ambiguous. The Court may consider the proffered collateral evidence in answering this "preliminary" question of law. *Mark V, Inc.*, 845 P.2d at 1235. The email on which Belgravia relies, however, does not demonstrate ambiguity. The email is from the Managing Director of PolyNatura's parent company (Cartesian Capital) to representatives at Belgravia in which the Managing Director lodges an objection to an apparent

---

[2] The Royalty Agreement specifies that it is governed by New Mexico law. Royalty Agreement § 9(g); *see also* Def.'s SJ Mot. at 18 n.83; Pl.'s SJ Mot. at 7-8.

proposal from Belgravia and states: "We have every incentive to develop the water opportunity and will commit to commercial best efforts to do so and provide audit rights, but we cannot in any way accept this structure." ECF No. 145-2. It is this invocation of "commercial best efforts" that Belgravia hangs its hat on. But this email was sent in the course of negotiations over the Agreement; it is clear that negotiations were ongoing and drafts would continue to be exchanged. The Managing Director even notes at the beginning of the email that he "is going to defer to [another PolyNatura executive] and counsel on most of this," *id.*, further highlighting the tentativeness of the Agreement at that point. The fact that the phrase "commercial best efforts" was used at some point does not inject doubt into the meaning of the different phrase "commercially reasonable efforts" the parties used in the final Agreement.

Furthermore, Belgravia's argument about ambiguity is internally inconsistent. The argument that in using the phrase "commercially reasonable efforts" the parties actually meant "commercial best efforts" necessarily implies that those terms mean the same thing. But both parties recognize, and rely on, the fact that the two phrases have very different meanings subjecting PolyNatura to different standards. *See* ECF No. 145 at 4 ("This distinction is relevant to analyzing the merits of this matter because using the term 'commercial best efforts' would elevate PolyNatura's contractual responsibility to attempt to generate revenue from the water/minerals."); ECF No. 158 at 5 ("Plaintiff's now preferred formulation—'commercial best efforts'—is manifestly a different and more rigorous standard."). Finally, the parties in fact used the phrase "commercial best efforts" elsewhere in the Agreement, demonstrating that they knew how to use that term when desired. Royalty Agreement § 5(e). Given this context, Plaintiff's

argument strains credulity. Accordingly, Plaintiff's Motion for Determination of Ambiguity in Royalty Agreement to Allow Jury to Consider Parole Evidence is **DENIED**.[3]

### B.    Motions for Summary Judgment

PolyNatura seeks summary judgment on the entirety of the Second Amended Complaint; that is, on all four alleged breaches. Plaintiff Belgravia seeks partial summary judgment on only the record inspection part of its claim for breach. The Court will address each alleged breach in turn.

### 1.    Undisputed material facts (PolyNatura's Motion)

The following recital of undisputed material facts draws from PolyNatura' statement of undisputed material facts in its motion, Def.'s SJ Mot. at 4-5, Belgravia's response to PolyNatura's facts, Pl.'s SJ Resp. at 8-10, and Belgravia's statement of additional undisputed material facts, *id.* at 10-13.[4] The Court has chosen to include only proffered facts that are material to the present Motion or helpful for background purposes. To the extent a fact has been omitted, the Court hereby deems such fact immaterial to the present Motion.

---

[3] Belgravia additionally argues in its Motion that there is ambiguity in Section 5(e) of the Royalty Agreement, specifically the third sentence. ECF No. 145 at 2, 5. Although the preceding sentence states that Grantor (PolyNatura) is obligated to renew the water lease, the third sentence states that "[i]f **Grantee**" (Belgravia) has not obtained a renewal of the lease within a certain time frame, then it will confer with **Grantor**. Royalty Agreement § 5(e). In response, PolyNatura proposes a stipulation to correct the text, swapping the occasions of "Grantee" and "Grantor" in that third sentence. ECF No. 158 at 5-6. Belgravia replies that the stipulation is inadequate because it "would not resolve the other ambiguities in the Agreement—in particular, the switch from 'commercial best efforts' to 'commercially reasonable efforts' as described in Plaintiff's Motion." ECF No. 165 at 5. However, Belgravia nonetheless states that it is "open to amending" the provision, *id.* In the email it attaches to its reply, which contains correspondence between counsel for both parties regarding PolyNatura's proposed stipulation, Belgravia's counsel acknowledges that the proposed language "is much closer to what the parties intended" and that "[a]s to the language of [Section 5(e)] my client is open to discussions on an amendment . . . that would solve this error." Ex. 1, ECF No. 165-1. Given the Court's ruling as to the purported ambiguity in "commercially reasonable efforts," and indeed, the Court's ruling *infra* dismissing Belgravia's claim in relation to this clause, the Court also denies the Motion for Determination of Ambiguity on this point.

[4] Although PolyNatura purports to dispute certain of Belgravia's additional undisputed material facts, Reply Further Supp. Def.'s Mot. Summ. J. at 4, ECF No. 154, its merely declaring so in a footnote in its reply is insufficient to adequately dispute those facts pursuant to the federal rules and this District's local rules. Accordingly, the Court is permitted to treat all of Belgravia's additional facts as undisputed. *See* Fed. R. Civ. P. 56(e)(2).

As of the date of PolyNatura's motion, neither the Water nor the mining asset has produced any revenue. Def.'s SJ Mot. at 4, Undisputed Material Fact ("UMF") 1; Pl.'s SJ Resp. at 8. PolyNatura's efforts to market the Water include: (1) preparing and conducting the RFP, with Belgravia's support, Def.'s SJ Mot. at 4, UMF 2.a.; Pl.'s SJ Resp. at 8; (2) contacting approximately fifty potential buyers or lessees for the Water and negotiating with at least three different entities, Def.'s SJ Mot. at 5, UMF 2.c.; Pl.'s SJ Resp. at 9; and (3) engaging two water brokers to whom it expended $65,000 in payments, Def.'s SJ. Mot. at 5, UMF 2.b,d; Pl.'s SJ Resp. at 9.[5] Potential purchasers of the Water have cited several reasons for not completing a purchase transaction, including "its undesirable chemical characteristics, the high cost required to treat and transport it, a difficult and changing regulatory environment, and weak market demand." Def.'s SJ Mot. at 5, UMF 4; Pl.'s SJ Resp. at 10.[6]

### 2. Failure to use commercially reasonable efforts to monetize the mining asset.

As a preliminary matter, the fourth breach alleged by Belgravia (failure to use commercially reasonable efforts to realize revenues from the mining assert) is easily disposed of. PolyNatura argues in its motion that Belgravia has alleged no facts in support of that claim. Def.'s SJ Mot. at 26-27. To the contrary, PolyNatura asserts, the undisputed evidence demonstrates that it expended significant efforts to realize revenue from the mine. *Id.* at 13-14, 25-26. In response, Belgravia does not dispute PolyNatura's factual recital of the efforts it has

---

[5] Belgravia responds to PolyNatura's asserted fact that it engaged two water brokers that PolyNatura "did not provide [the brokers] with all the resources and background necessary for them to achieve success." Pl.'s SJ Resp. at 9. Belgravia does not dispute that PolyNatura did retain those brokers.

[6] Belgravia disputes UMF 4 as "incomplete," identifying three "specific, **additional** reasons that potential purchasers" have failed to complete a transaction. *Id.* at 10. This is therefore a proposed supplementation to PolyNatura's UMF 4, not a dispute as to the reasons PolyNatura identified.

undertaken and does not otherwise address the alleged mining asset breach, leaving PolyNatura's Motion essentially unopposed on that issue.

The Court finds that there is no genuine dispute as to any material fact regarding the fourth alleged breach. PolyNatura is entitled to judgment as a matter of law because Belgravia "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex*, 477 U.S. at 322-23. Accordingly, PolyNatura's motion is **GRANTED** as to part four of the sole count of the Complaint (breach of contract for "fail[ure] to use commercially reasonable efforts to realize revenues from the mining asset").

        3.      **Failure to use commercially reasonable efforts to realize revenues from the water wells and to pursue a transaction with an interested buyer.[7]**

            a)      **Parties' arguments**

Belgravia's chief grievance is PolyNatura's alleged mishandling of the Water. It is this issue to which the parties focus most of their attention: whether PolyNatura breached the Agreement by "failing to use commercially reasonable efforts to realize revenues from the water wells" (i.e. the third breach as alleged in the Second Amended Complaint). PolyNatura argues in its summary judgment motion that undisputed facts demonstrate that it used "commercially reasonable efforts" as required by the contract and that, therefore, there was no breach. Def.'s SJ Mot. at 18-21. More specifically, PolyNatura argues that it took "affirmative steps" to market the Water in accordance with the contract—efforts that Belgravia cannot now criticize with the benefit of hindsight as inferior to other or additional actions PolyNatura could have taken. *Id.*

---

[7] Although Belgravia lists "fail[ure] to pursue a transaction with Buyer #1 in 2018" separately from the failure to use commercially reasonable efforts to monetize the water, Second Am. Compl. at 18, the former is best understood as a component of the latter. Indeed, Belgravia itself in briefing describes the failure to engage with that buyer as a sub-theory of breach of the commercially reasonable efforts (Water) provision. *See, e.g.*, ECF No. 189 at 7, 9-10. Accordingly, the Court will consider and address the commercially reasonable efforts (Water) and failure to pursue breaches together.

Neither is PolyNatura's lack of success itself evidence that it failed to use commercially reasonable efforts, it argues. PolyNatura further argues that even if speculation as to alternative actions could state a claim for breach of contract for failure to use commercially reasonable efforts, Belgravia has not and cannot put forth any evidence that "PolyNatura overlooked or thwarted any feasible opportunity." *Id.* at 21-27.

Belgravia responds that three "issues" with PolyNatura's marketing of the Water are independently and cumulatively sufficient to raise a genuine issue of material fact as to whether PolyNatura failed to use commercially reasonable efforts and thus breached the Agreement. Pl.'s Resp. Def.'s Mot. Summ. J. ("Pl.'s SJ Resp.") at 13, ECF No. 143: (1) PolyNatura's failure to renew the Water Lease and Water Easement, *id.* at 14-16; (2) PolyNatura's failure to engage with water purchase offers beyond the RFP process, *id.* at 16-19; and (3) PolyNatura's focus on developing the mine to the detriment of the Water rights efforts, *id.* at 19-22. In sum, Belgravia argues that "there is a factual dispute regarding whether actions were reasonable or not under the circumstances." *Id.* at 23.

In reply, PolyNatura renews its argument that Belgravia cannot make out its claims using improper "hindsight comparison" as to commercially reasonable efforts. Reply Further Supp. Def.'s Mot. Summ. J. ("Def.'s SJ Reply") at 1, ECF No. 154 (quoting *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 838 F. App'x 608, 610 (2d Cir. 2020) (summary order)). Rather, the undisputed evidence of its affirmative efforts, PolyNatura argues, require summary judgment. *Id.* at 2. PolyNatura further argues that even if hindsight criticisms were legally relevant, Belgravia "has not supported those criticisms with admissible evidence" and "none of Plaintiff's three stated breach of contract theories presents a triable issue of fact." *Id.* at 3. PolyNatura takes issue with two of the Belgravia's proffered declarations and much of its documentary evidence. *Id.* at

4-8. As to the three specific issues Belgravia identified, PolyNatura replies that (1) Belgravia does not dispute that the delay in renewing the Water Lease was the result of the state department's own processing delay and does not allege that PolyNatura could have done anything to speed up the department's process, *id.* at 8-9; (2) Belgravia has not put forth any admissible evidence that PolyNatura failed to engage with prospective buyers in a way that was commercially unreasonable, *id.* at 9-10; and (3) Belgravia has not supported its allegation that PolyNatura's allocation of resources and attention between the mine and Water was to the Water's detriment, nor has it explained how, as a legal matter, that could be a contractual breach, *id.* at 11.

### b)    Analysis

PolyNatura is owed summary judgment as to the alleged Water breach. In their summary judgment briefing the Parties bicker over the actions PolyNatura did or did not take and whether those actions were sufficient under the "commercially reasonable efforts" standard of the contract. But neither party adequately explains *what "commercially reasonable efforts" means* in this context. A factfinder would require expert evidence to understand what is considered "commercially reasonable" in the marketing of non-potable water for industrial use. Because Belgravia has not produced any such expert evidence in resisting summary judgment, and indeed cannot produce such evidence at trial, having failed to disclose an expert witness on this subject, Belgravia cannot make out its claim and PolyNatura is entitled to judgment as a matter of law.

### i.    Commercial reasonableness as a fact issue

As PolyNatura notes, Def.'s SJ Mot. at 18 n.83, New Mexico caselaw is silent on the issue of "commercially reasonable efforts" clauses in non-U.C.C. contracts. However, a portion of New Mexico's Uniform Commercial Code mandates commercial reasonableness, explains the

term in some depth, and has been interpreted by the courts of this State. Pursuant to N.M. Stat. Ann. § 55-9-610, when a secured party seeks to dispose of collateral after default, "[e]very aspect of" that disposition, "including the method, manner, time, place and other terms, must be commercially reasonable." Section 55-9-627 describes the criteria by which this commercial reasonableness is measured—a disposition is "made in a commercially reasonable manner" if it is made "in the usual manner on any recognized market"; "at the price current in any recognized market at the time of the disposition"; or "otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *Id*. § 55-9-627(b).

Applying an earlier version of Section 55-9-610, the New Mexico Supreme Court held that "'[t]he determination of commercial reasonableness will turn on the particular facts of each case,' and where the evidence concerning commercial reasonableness is contradictory, the issue is a question of fact." *Sec. Fed. Sav. & Loan v. Prendergast*, 775 P.2d 1289, 1291 (N.M. 1989) (quoting *Villella Enters., Inc. v. Young*, 766 P.2d 293, 295 (N.M. 1988)). *See also Ridley v. First Nat'l Bank in Albuquerque*, 531 P.2d 607, 610 (N.M. Ct. App. 1974) ("We . . . consider the meaning of commercially reasonable within [the disposition statute] to require a factual determination in light of all the circumstances of any particular case."). Although these statutes and cases do not bear directly on the present issue, they are still instructive insofar as New Mexico courts can be expected to interpret the same term consistently. *Cf. PPD Enters., LLC v. Stryker Corp.*, No. 4:16-CV-0507, 2017 WL 4950065, at *4 (S.D. Tex. Nov. 1, 2017) (relying on Texas case about commercially reasonable sales of collateral for the proposition that "[t]he concept of commercial reasonableness is inherently one of fact, and much depends upon the

totality of the circumstances particular to each case" in commercially reasonable efforts breach of contract case (internal quotation omitted)).

As to the specific question of the meaning of "commercially reasonable efforts" as used in non-U.C.C. contracts, the Court is further guided by the well-reasoned decisions of sister courts. The task of crafting a universal definition of "commercially reasonable efforts" appears to have eluded (or been outright rejected by) the vast majority of courts to confront the issue. *See, e.g.*, *Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 926 (E.D. Cal. 2010) ("There is no settled or universally accepted definition of the term 'commercially reasonable efforts.'"). A few have offered some general guidelines; the Delaware Court of Chancery, for example, has held that that a company committed to commercially reasonable efforts is not required "to take any action that would be commercially detrimental, including the expenditure of material unanticipated amounts or management time." *Akorn, Inc. v. Fresenius Kabi AG*, C.A. No. 2018-0300-JTL, 2018 WL 4719347, at *86-87 (Del. Ch. Oct. 1, 2018), *aff'd*, 198 A.3d 724 (Del. 2018). *See also Lucky Lucy D LLC v. LGS Casino LLC*, 534 P.3d 689, 693 (Nev. 2023) (relying on the Delaware Court of Chancery's definition).

Many courts have recognized that the lack of a non-standard definition is inherent: "commercially reasonable efforts" is a fact-intensive inquiry that depends on context. *See, e.g.*, *Pac. Controls Inc. v. Cummins Inc.*, No. 1:19-cv-03428-MKV-BCM, 2021 WL 4462725, at *7 (S.D.N.Y. Sept. 29, 2021) ("Indiana courts have consistently held that the question of whether a defendant used 'commercially reasonable efforts' is one of fact that is not amendable to summary judgment."); *LeMond Cycling, Inc. v. PTI Holding, Inc.*, No. Civ. 03-5441 PAL/RLE, 2005 WL 102969, at *5 (D. Minn. Jan. 14, 2005) (applying Minnesota law); *PPD Enters., LLC*, 2017 WL 4950065, at *4 (applying Texas law); *EZ Green Assocs., LLC v. Ga.-Pac. Corp.*, 734

S.E.2d 485, 488-89 (Ga. Ct. App. 2012) (applying Georgia law); *Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 441-42 (6th Cir. 2014) (applying Kentucky law); *see also Avalyn Pharma, Inc. v. Vincent*, No. 3:20-cv-02267-RSH-KSC, 2023 WL 2731727, at *8 (S.D. Cal. Feb. 27, 2023) (applying Delaware law and collecting cases). In *Eastwood Insurance Services, Inc. v. Titan Auto Insurance of New Mexico, Inc.*, for example, the Ninth Circuit (applying California law) reversed the lower court's entry of summary judgment for defendant on a commercially reasonable efforts claim holding that there were genuine issues of material fact for trial. 469 F. App'x 596, 599 (9th Cir. 2012). Whether the defendant used commercially reasonable efforts "to maximize the performance of [plaintiff's] assets," the court held, required consideration of "the standards and customs of the industry, context, and intent." *Id.* at 598-99.

Both New Mexico law on the meaning of "commercially reasonable" in another context and other states' caselaw on the meaning of the phrase in the present context, therefore, suggest that the question of whether a party to a contract has used commercially reasonable efforts is ordinarily one of fact for the trier of fact, not a question of law suitable for summary judgment. PolyNatura points the court to *Kansas Penn Gaming, LLC v. HV Properties of Kansas, LLC*, a Tenth Circuit case in which that court affirmed the district court's grant of summary judgment to defendant on plaintiff's breach of contract claim for failure to use commercially reasonable efforts. 662 F.3d 1275 (10th Cir. 2011). It should be noted, first, that that case concerned Kansas law and is therefore not binding as to this Court's application of New Mexico law. In any event, *Kansas Penn* is not as analogous to the present case as PolyNatura suggests. In that case, the parties entered into a contract by which the plaintiff sold certain land to defendant for the purpose of defendant's building and operating a casino. *Id.* at 1277-79. The contract provided that defendant would pay plaintiff certain additional sums upon particular dates associated with

the development of the casino. *Id.* at 1279-80. Defendant was obligated to use "good faith commercially reasonable efforts" to obtain the necessary permits and permissions toward operating the casino. *Id.* at 1280. Ultimately, due in large part to the opening of a nearby competing casino, defendant, after expending much effort, decided that the opening of the casino contemplated in the contract was not economically feasible. Plaintiff thereafter sued for breach of contract, alleging that defendant had failed to use the "good faith commercially reasonable efforts" the contract required.

The Tenth Circuit relied on the definitions of "good faith" and "reasonable efforts" under Kansas law, noting that the latter "'has diligence as its essence,' but falls short of the standard required of a fiduciary." *Id.* at 1290 (internal quotation omitted). Affirming the district court's holding that that standard had been met, the Tenth Circuit reasoned that most of the complained-of actions were taken by an entity that was not a party to the contract, and therefore were irrelevant. Even taking those actions into account, the court found that the plaintiff's evidence did not indicate that defendant was "insincere or dishonest" and the record indicated that the third-party entity "acted in good faith." *Id.* at 1290-92. This language suggests that the *Kansas Penn* court was guided primarily by the "good faith" portion of the contractual standard—a term not present in the contract at issue in this case. Further, the *Kansas Penn* court itself recognized that "[g]ood faith and reasonableness are usually questions of fact, but may be decided as a matter of law under proper circumstances." *Id.* at 1290 (internal quotations omitted). This case does not present those "proper circumstances."

### ii.    Need for expert evidence

But preserving a factual question for the jury is pointless if the party with the burden to produce evidence on that question cannot do so. Such is the case here. A jury would be tasked

with answering whether PolyNatura used commercially reasonable efforts to market the Water. But the average juror will not be familiar with the industry standards for the marketing of non-potable water for industrial use and water rights in the Permian Basin and thus would require expert testimony to elucidate what exactly is "*commercially* reasonable." Belgravia, the party that bears the burden to make out its case at trial, did not in its summary judgment briefing point the Court to any such expert testimony in the record. Nor can it produce such evidence—Belgravia has disclosed two potential experts, neither of whom propose to testify on this issue. Discovery in this case has long since closed, having already been extended several times.

On December 4, 2024, the Court held a hearing to address the expert evidence question. The hearing was limited to the issues of "(1) whether expert testimony is necessary on the meaning of 'commercially reasonable efforts' as it relates to the marketing of the water at issue in this case, and (2) if so, whether such evidence is in the record." Notice, ECF No. 178. Counsel for both parties appeared and presented argument. *See* Clerk's Minutes, ECF No. 184. PolyNatura argued that expert testimony is required given the specialized nature of the industry at issue. Belgravia countered that expert testimony is not necessary because the issues are within the capacity of a lay juror, and, in the alternative, to the extent such testimony is necessary it is in the record. Following the hearing, the Court issued an Order permitting the parties to submit supplemental briefing and designations of evidence:

> At the hearing, Plaintiff identified three potential witnesses who it alleges are competent to testify on the issue of "commercially reasonable efforts" as it pertains to the Water: Dr. William Turner, Tommy Cope, and Cody Lee. Plaintiff should designate the evidence in the record, including portions of Dr. Turner's and Mr. Cope's depositions (Mr. Lee was not deposed), that it alleges demonstrates that those witnesses previously testified as to commercial reasonableness and are in fact competent to do so. Along with this evidence, Plaintiff may file a brief limited to 5 pages explaining how, if the Court were to decide that expert evidence is necessary to show that Defendant's efforts to

market the Water were commercially unreasonable, the evidence Plaintiff designates is sufficient.

Plaintiff may file an additional brief that addresses with specificity why, in its estimation, expert evidence is not necessary on the three theories of breach (on the basis of commercially reasonable efforts to market the water) that it raised at the hearing, namely: (1) PolyNatura's alleged failure to engage with potential buyer Tommy Cope; (2) PolyNatura's alleged failure to provide the water brokers with all the information they would have needed to sell the water; and (3) PolyNatura's alleged failure to keep the Water in marketable state as it pertains to the leases and easements. If Plaintiff contends that expert evidence is unnecessary on some other, additional theory of commercial unreasonableness in Defendant's marketing of the Water (for example, PolyNatura's alleged prioritization of the mine over the Water, *see* ECF No. 142-1 at 13), the brief shall address those theories as well. This brief shall be limited to 10 pages. . . .

Defendant may submit counter designations and a response brief that addresses Plaintiff's arguments as well as Defendant's own argument that expert evidence is necessary on the issue of commercially reasonable efforts to market the water. Defendant's brief shall be limited to 15 pages.

ECF No. 185. Belgravia filed its supplemental briefing and designations on January 6, 2025.[8]

ECF Nos. 189 ("Pl.'s Suppl. Br. 1"), 190 ("Pl.'s Suppl. Br. 2"). PolyNatura filed its supplemental

briefing and counter-designations on January 27, 2025. ECF No. 193.

In its supplemental briefing, Belgravia argues that expert testimony is unnecessary

because the questions at issue are within the province of the jury, which will be aided by

"testimony rooted in personal observations related to this specific project and decades of

experience." Pl.'s Suppl. Br. 1 at 2. Such testimony, it avers, is proper lay opinion testimony.

Belgravia points in particular to witnesses Sidney Himmel, William Turner, Tommy Cope, and

Cody Lee who it asserts will "ground[] the jury in the realities of the industry and offer[] a

factual lens through which to evaluate PolyNatura's efforts." *Id.* at 5-6. Belgravia maintains that

its "three theories of breach," namely, "(1) failing to engage with a serious potential buyer; (2)

---

[8] The Court notes that Belgravia's supplemental briefs fail to comply with this District's local rule requiring the text of all filings to be double-spaced, D.N.M.LR-Civ. 10.1, in an apparent effort to circumvent the page limits the Court imposed. The Court will excuse this local rule violation for purposes of the present Order but reminds the parties to be mindful of all local rules in future filings.

withholding information about other potential buyers from a broker; and (3) failing to timely renew the Water Lease and Water Easement," are capable of evaluation "by lay jurors based on their own understanding of reasonable diligence." *Id.* at 7, 9-10. Further, Belgravia argues, expert testimony defining "commercially reasonable efforts" would in fact improperly invade the role of the jury. *Id.* at 3.

In response, PolyNatura argues that Belgravia needs to present expert testimony to make out its case, pointing the Court to decisions of other courts requiring such evidence in like circumstances. Def.'s Br. Expert Testimony ("Def.'s Suppl. Br.") at 3-5, ECF No. 194-1. The present controversy, PolyNatura asserts, concerns a specialized industry outside the knowledge or experience of a lay juror. The jury will be unable to assess issues central to this case without assistance of an expert—for example, the role of certain technical obstacles to marketing the Water (e.g. its undesirable chemical characteristics) and the interaction of key players in the New Mexico Permian Basin water rights market. *Id.* at 5-6. PolyNatura argues that expert evidence is required on each of Belgravia theories of breach. The alleged failure to engage with a buyer, for example, implicates the RFP process—a lay jury would require "qualified expert testimony identifying the standards for the preparation and conduct of an RFP for sale of water rights in the Permian Basin." *Id.* at 6-7. PolyNatura identifies similar examples of expert evidence needs as to the failures to renew the lease and failure to provide information to brokers theories of breach. *Id.* at 8-9. Finally, PolyNatura argues that Belgravia's designations of "expert" evidence are wholly insufficient. *Id.* at 9-15.

The Court holds that the jury would require expert testimony to understand what would be "commercially reasonable" and determine the issues in this case. First, requiring expert testimony on this issue comports with New Mexico's approach to expert testimony in other

contexts. New Mexico courts have routinely required expert testimony to prove breach of the standard of care in professional malpractice cases, for example. *See, e.g.*, *LM Ins. Corp. v. I Do Albuquerque*, 527 P.3d 685, 688-89 (N.M. 2022); *Buke, LLC v. Cross Country Auto Sales, LLC*, 331 P.3d 942, 954-57 (N.M. Ct. App. 2014); *Adobe Masters, Inc. v. Downey*, 883 P.2d 133, 135-36 (N.M. 1994) ("In professional negligence cases, both breach of the implied warranty to use reasonable skill under contract law and negligence resulting in a finding of malpractice must be proved by expert testimony *unless* the case is one where exceptional circumstances within the common experience or knowledge of a layman are present."). New Mexico courts have also required expert testimony to show causation in cases involving medical negligence, professional malpractice, crashworthiness, negligent installation, and stray voltage claims "where it [(causation)] cannot be determined by common knowledge that an average person ordinarily possesses." *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1060-61 (D.N.M. 2016) (collecting cases). This case law suggests that if the question of breach cannot be determined "by resort to common knowledge," then expert testimony is required. *Id.* at 1067 (determining the same as to causation in breach of contract cases); *see also Derrick v. Standard Nutrition Co*, No. CIV 17-1245 RB/SMV, 2019 WL 2024960, at *7 (D.N.M. May 8, 2019).

Second, even more to the point, courts in other jurisdictions have held explicitly that the issue of "commercially reasonable efforts" in breach of contract cases requires expert testimony. A court in the Southern District of Texas addressed a very similar question to that at issue here in *Musket Corp. v. Suncor Energy (U.S.A.) Marketing, Inc.*, Civ. H-15-100, 2017 WL 896510 (S.D. Tex. Mar. 7, 2017). There, defendant, an energy company, alleged in a counterclaim that the plaintiff failed to use "commercially reasonable efforts" (as required by a contract governed by

New York law) to ensure that its terminal in Colorado had sufficient capacity to receive crude oil from plaintiff. *Id.* The court granted the plaintiff's motion for summary judgment, holding that the defendant did not have "sufficient evidence of whether [plaintiff] used commercially reasonable efforts to create an issue of material fact for trial." *Id.* at *7. The court reasoned that, in order to evaluate the plaintiff's efforts, "it would need to know what types of capabilities a company that is expanding a rail terminal to accept crude oil in Colorado should have," which determination "necessarily requires an expert or at least some evidence that would suggest to the finder of fact that the company was not doing what a reasonable company facing the same obstacles would do to expand the terminal." *Id.* at *6. The court further opined that "[i]n a case such as the instant case, involving an industry with which the ordinary trier of fact will be unfamiliar, it is almost imperative to have an expert to testify" on the matter. *Id.* The defendant's evidence, which only showed that the terminal had not been expanded, was therefore insufficient to raise an issue of material fact. *Musket Corp* is not an anomaly—as a general matter, courts in the Southern District of New York applying New York law "require the party seeking to enforce the efforts provision to establish the objective standard by which the breaching party's efforts are to be judged, in the context of the particular industry." *Holland Loader Co. v. FLSmidth A/S*, 313 F. Supp. 3d 447, 472-73 (S.D.N.Y. 2018) (collecting cases); *see also JPMorgan Chase Bank, N.A. v. Tesla, Inc.*, No. 21 Civ. 9441 (PGG), 2024 WL 4167340, at *8 (S.D.N.Y. Sept. 12, 2024) ("[B]ecause . . . 'commercial reasonableness' must be considered in the context of a particular industry and the customs that prevail in that industry, expert testimony is often necessary."); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 950 F. Supp. 2d 568, 617 (S.D.N.Y. 2013) ("[Expert] evidence is necessary to support a cause of action premised upon an allegation [of]

commercially unreasonable conduct where, as here, the complained-of conduct took place in the context of an industry that is outside the fact-finder's ordinary experience.").

The court in *Deficcio v. Winnebago Industries, Inc.* reached the same conclusion under New Jersey law that the "commercially reasonable efforts" standard requires expert testimony. No. 11-7406 (MLC), 2015 WL 5722724 (D.N.J. Sept. 29, 2015). The court looked to other circumstances in which expert testimony is required under New Jersey law, noting that as a general matter such testimony is necessary when "the matter under consideration is so esoteric or specialized that jurors of common judgment and experience cannot form a valid conclusion." *Id.* at *2 (internal quotation omitted). The court cited New Jersey cases requiring expert testimony for breach of contract for failure to repair, negligence, and other claims "where the establishment of a particular standard of care or an industry standard is an element." *Id.* These cases, the court concluded, necessitated expert testimony in the present case on the question of whether the defendant used commercially reasonable efforts to repair plaintiff's RV. The testimony of fact witnesses, though they purported to have knowledge on the topic, would not suffice because those witnesses had not been disclosed as experts and the time to do so had passed. *Id.* at *4-5. Thus, the court held, there was no genuine issue of material fact and the defendant's motion for summary judgment was due to be granted. *Id.* at *5; *see also Deligdish v. Bio-Reference Labs., Inc.*, No. 6:17-cv-438-Orl-31DCI, 2018 WL 6261868, at *13-14 (M.D. Fla. Oct. 19, 2018) (applying New Jersey law and holding that plaintiff could not survive summary judgment where it had not offered expert testimony on "commercially reasonable efforts" in an industry not "within the realm of common judgment and experience").

Moreover, other courts have considered expert testimony to be crucial in determining whether a commercially reasonable efforts clause has been breached without explicitly stating

that such testimony is required. In *Crestwood Farm Bloodstock v. Everest Stables, Inc.*, for example, the Sixth Circuit held that lay witness testimony that the cross-defendant's marketing efforts were unreasonable was insufficient against testimony from an "industry expert" that those efforts were "standard and consistent" with the practices in that industry and region. 751 F.3d at 442. The court reasoned that the cross-plaintiff's argument that "the unreasonableness of [cross-defendant]'s marketing efforts is obvious even to lay observers" could not "rebut the uncontradicted testimony of industry experts" because the contract imposed a "commercially reasonable efforts" standard, not a "reasonable man" standard. *Id. See also Avalyn Pharma*, 2023 WL 2731727, at *8-9 (holding that nonmoving party's expert evidence on the issue of commercially reasonable efforts raised a genuine issue of material fact).

The Court is persuaded by these decisions of its sister courts. Whether a party's efforts were commercially reasonable necessarily depends upon the particular commercial context. Here, PolyNatura's actions to sell the Water must be measured against the "standards and customs" of the industrial mining and other relevant industries as pertain to the marketing of non-potable water in the applicable region. *Eastwood Ins. Servs.*, 469 F. App'x at 598-99. The regular practices and norms in the market for non-potable, industrial-use water is not "a matter of common knowledge," *Am. Mech. Sols.*, 184 F. Supp. at 1060-61. Therefore, expert evidence is necessary.

Belgravia's arguments to the contrary are unconvincing. As stated above, Belgravia argues that its three theories of breach require determinations that are "well within the knowledge and understanding of laypersons." Pl.'s Suppl. Br. 1 at 9. As for PolyNatura's alleged failure to engage with a serious potential buyer, Belgravia states that the associated factual issues, including "(1) whether the prospective buyers were serious, had the financial capacity to

complete the transaction, and demonstrated genuine interest in acquiring the water rights; (2) whether Defendant received, acknowledged, accepted, or rejected those offers; and (3) whether Defendant's actions, including its refusal to engage in negotiations and the reasons for doing so, were reasonable under the circumstances" all involve "common-sense judgments." *Id.* But Belgravia's statement of these issues obscures the more complicated component considerations; it cannot avoid the need for expert testimony by framing the issues at a higher level of abstraction. The evidence in the record reveals that answering those ostensibly common-sense questions requires technical knowledge specific to this industry. For example, Mr. Cope (the "serious potential buyer") testified in his deposition that he did not respond to PolyNatura's RFP because it was "too detailed" and required proprietary information. *See* Cope Dep. at 46:10-13, ECF No. 137-56; *see also id.* at 238:11-239:23. The average juror will have no idea who was acting reasonably in that situation without knowing whether the RFP was within the norms for the industry. Perhaps it was in fact "too detailed," or perhaps it requested information all completely standard. As another example, the question of "whether prospective buyers were serious" would apparently require understanding the norms for due diligence in the industry. *See id.* at 134:1-137:20 (discussing the "Due Diligence" requirement in an offer from FMR Sourcing). And, indeed, Mr. Cope disclaimed knowledge of the "technical issues" involved therein. *Id.* at 137:1-5 ("Q. Okay. Well then what's the purpose of the diligence period? A. There are so many technical issues in this that you'd want to know how to handle. I'm – I'm not – you'll have to ask a professional that.").

The same is true for issues implicated in Belgravia's other two theories of breach. As for PolyNatura's alleged withholding of information from brokers, *see* Pl.'s Suppl. Br. 1 at 10, determining whether PolyNatura's information sharing was commercially reasonable necessarily

requires understanding what information a water broker in like circumstances would generally need in order to competently do their job. PolyNatura's purported failure to renew the lease and easement likewise requires industry-specific knowledge, such as about the regulatory framework and processes. As another example, there is apparent dispute about the extent to which PolyNatura's lease allows (or did allow) PolyNatura to sell or transfer the Water. Belgravia argues that a layperson knows that without authority to sell a product, a reasonable buyer will not purchase said product. But surely the parties understood PolyNatura to have some power to sell the Water—that's nearly the entire focus of the present controversy. Is the lease at issue standard in the industry? And what do industry players understand such a lease to permit? The answers to questions like these are far outside the ambit of the average juror.

The overarching question at the heart of this case is whether PolyNatura's actions were *commercially* reasonable. Evaluating such a standard necessarily requires familiarity with the relevant commercial context—here, "the transfer of an industrial asset with specific, technical, and highly regulated applications, the transfer of which is subject to close oversight by multiple regulators." Def.'s Suppl. Br. at 1. Because these issues are outside the common knowledge of a lay person, expert evidence is required to establish that PolyNatura's efforts were not commercially reasonable. *Cf. KOKO Dev't, LLC v. Phillips & Jordan, Inc.*, 101 F.4th 544, 550-51 (8th Cir. 2024) (affirming district court's holding that expert testimony was required to establish breach in contract case involving technical issues).

Belgravia's argument that certain noticed witnesses can provide the requisite information as lay testimony is also unavailing. In the first place, the majority of the case law that Belgravia relies on as to permissible testimony under Federal Rule of Evidence 701 predates the significant changes made to Rules 701 and 702 in 2000. Pl.'s Suppl. Br. 2 at 2. As the Advisory Committee

Notes state, the Rules were amended in 2000 with the specific intent "to ensure that a party will not evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. Belgravia contends that "[t]he witnesses' testimony is rooted in their direct knowledge of the industry and the assets" from their "personal perceptions and professional experience," not "specialized technical analysis." Pl.'s Suppl. Br. 2 at 3. But Belgravia incorrectly narrows the scope of expert testimony under Rule 702. Rule 702 explicitly states that an expert may be qualified "by knowledge, skill, experience, training, or education." Belgravia itself states that the proffered witnesses' knowledge is grounded in part in their "significant experience[] and expertise," ECF No. 189 at 6—clearly bases within the scope of Rule 702 expert testimony, and impermissible as lay testimony under Rule 701. *See, e.g.*, *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011) ("[K]nowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." (quoting *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011))). The fact that a witness's testimony is not based on "technical analysis" does not render it categorically *not* expert. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("[T]he amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science.").

To be sure, a witness may offer both lay and expert testimony. Fed. R. Evid. 701 advisory committee's note to 2000 amendment ("Certainly it is possible for the same witness to provide both lay and expert testimony in a single case."). But just because Belgravia's identified witnesses may be able to offer lay testimony about their specific experience with the project at issue in this case does not mean that Belgravia can also smuggle expert testimony through the

same witnesses without properly noticing and qualifying them. Such lay testimony about the instant project will be insufficient for the jury to make the requisite determinations absent expert testimony that contextualizes facts about this project within the industry standards. Belgravia's designations of Dr. Turner's and Mr. Cope's depositions and several emails related to Mr. Lee, Pl.'s Suppl. Br. 2 at 3-5, encompass fact testimony and evidence about the events in the instant case; they do not constitute evidence of the industry standards bearing on commercial reasonableness.

Belgravia also has not sufficiently put PolyNatura on notice that any of those witnesses will offer relevant expert testimony. Take, for example, Dr. William Turner, for whom Belgravia provides the most extensive deposition designations, ECF No. 190 at 3-4. The following enlightening exchange took place during his deposition:

> MR. DRAPER [PolyNatura counsel]: Mr. Edelman [Belgravia counsel], I just want to say that the subpoena here is for fact witness testimony and not expert testimony. Your last question was phrased more as a – it sounded more like an expert question. He's here as a fact witness, and I would just like to be clear on the record that's – that's what's happening herein and ask you to ask your questions in that vein.
>
> MR. EDELMAN: Understood. Thank you.

Turner Dep. at 6:18-20, 7:12-15, ECF No. 192-1. Belgravia cannot pull a bait and switch and now rely on Dr. Turner as an expert.

In a footnote, Belgravia asks the Court, should it determine that expert evidence is necessary, to amend the scheduling order in this case "to allow a reasonable amount of time for the parties to conduct expert disclosures and discovery on this issue." Pl.'s Suppl. Br. 1 at 2 n.2. PolyNatura objects to this request. Def.'s Suppl. Br. at 10 n.5. Under Federal Rule of Civil Procedure 16(b), a scheduling order "may be modified only for good cause and with the judge's

28

consent." "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014)). The deadline for Belgravia to identify experts elapsed a year and a half ago on August 25, 2023, ECF No. 95, and the deadline for Belgravia to disclose the expert reports of those witnesses elapsed nine months ago, on April 7, 2024, *see* ECF No. 110 (setting deadline as seventeen days after the close of fact discovery); ECF No. 129 (extending fact discovery); ECF No. 130 (extending fact discovery). Discovery deadlines in this case have been extended numerous times—eight, by the Court's count. *See* ECF Nos. 44, 65, 90, 93, 95, 110, 129, 130. The original deadline for all expert reports set forth in the parties' joint status report and discovery plan was August 19, **2022**. ECF No. 33. Suffice it to say that Belgravia has had ample time to obtain and properly disclose expert testimony on the issue of commercially reasonable efforts and has not done so.[9] Belgravia offers no explanation for its failure to timely disclose the necessary expert(s) and "has not shown that [it] made diligent efforts to meet the expert disclosure deadline." *Tesone*, 942 F.3d at 989. *See also, e.g.*, *Greater Hall Temple Church of God v. S. Mut. Church Ins. Co.*, 829 Fed. App'x 915, 919-20 (11th Cir. 2020) (enforcing expert discovery deadlines).

　　As it stands, the record reveals that Belgravia disclosed one expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), Mr. David Greenberg, and one hybrid fact/expert witness

---

[9] As PolyNatura notes, Def.'s Suppl. Br. at 5, Belgravia apparently previously recognized the need for expert evidence, stating in a prior filing in 2023 that "PolyNatura has not supplied any evidence—such as an expert's opinion—allowing the Court to determine what a reasonable business entity would have made under similar circumstances." Pl.'s Resp. Def.'s Mot. Summ. J. at 10, ECF No. 108 (response in opposition to PolyNatura's previous motion for summary judgment that was withdrawn with leave from the Court). And, following the filing that original summary judgment motion from PolyNatura, Belgravia moved to extend expert deadlines, ECF No. 106, which motion the Court granted, ECF No. 110. But Belgravia still did not seek to offer expert evidence of its own on the present issue.

pursuant to Rule 26(a)(2)(C), Mr. Sidney Himmel. *See generally* ECF No. 176 and attachments; *see also* ECF No. 131 (certificate of service for Belgravia's disclosures). Neither witness purports to opine on the standards of the industry. Mr. Greenberg "offer[s] opinion testimony regarding the amount of damage suffered by Belgravia in this matter." Expert Report of David Greenberg at 1, ECF No. 176-1. Mr. Greenberg's report calculates damages based on alleged missed transactions to monetize the Water and the ripple effects therefrom. *See generally id.* He does not discuss commercial reasonableness. Nor would it be appropriate for him to do so—he is a consultant with expertise is in "determining economic damages," not in the industry at issue here. *See id.* at 22 (Mr. Greenberg's CV). Mr. Himmel's narrative summary of facts and opinions explains the facts that led to Belgravia's development of the Water and estimates the value of the water rights. *See generally* Summary of Facts and Opinions of Sidney Himmel, ECF No. 176-2. Mr. Himmel's proposed testimony does not shed light on the commercially reasonable efforts standard—he does not discuss the standard practices and commercial norms for the marketing of non-potable water in the Permian Basin. Even if such industry knowledge was within Mr. Himmel's purview (which is not evident), his testimony would be limited at trial to those topics fairly encompassed in his Summary.[10]

Because Belgravia has failed to present any evidence on a necessary part of its claim, PolyNatura is owed summary judgment. As the Supreme Court instructed in *Celotex*,

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

---

[10] Belgravia attached a new declaration from Mr. Himmel to its supplemental brief on designations of evidence. *See* Pl.'s Suppl. Br. 2, Ex. 1, ECF No. 190-1. PolyNatura has moved the Court to strike or exclude the declaration. Pl.'s [sic] Mot. Strike Exclude Decl. Sidney Himmel, ECF No. 195. As PolyNatura notes, in the order for supplemental briefing the Court did not permit the parties to submit *new* evidence. *See generally* ECF No. 185. The new declaration is untimely under both Rules 56 and 6(b). Fed. R. Civ. P. 56(c), 6(b). The Court will therefore GRANT PolyNatura's Motion and exclude the declaration. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894-95 (1990).

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

477 U.S. at 322-23. Belgravia lacks the requisite evidence on the issue of commercial reasonableness and thus cannot make its case at trial. "Although the Court must draw all factual inferences in favor of . . . the non-moving party, the Court cannot draw inferences in the absence of facts." *Talbott v. Pub. Serv. Co. of N.M.*, No. 18-1102 SCY/LF, 2020 WL 2043481, at *10 (D.N.M. Apr. 28, 2020). Accordingly, PolyNatura's motion for summary judgment is **GRANTED** as to Belgravia's claim for breach of contract on the basis of PolyNatura's alleged failure to use commercially reasonable efforts to monetize the Water and failure to pursue a transaction with a particular interested buyer.

      **4.**      **Delay and interference with the inspection of PolyNatura's books and records.**

      **a)**      **PolyNatura's motion**

Belgravia and PolyNatura both move for summary judgment on Belgravia's claim for breach of contract on the basis of PolyNatura's alleged delay and interference with Belgravia's inspection of PolyNatura's books and records. In Defendant's SJ Motion, PolyNatura argues that "the vast discovery now completed moots any dispute over the scope of Plaintiff's initial inspection," and that even putting that to one side, the records inspection claim "fails as a matter of law for lack of damages." Def.'s SJ Mot. at 4 n.3. Belgravia responds that the first argument is "disingenuous" because it was required to file the present lawsuit to obtain the records because of PolyNatura's breach, and that the second argument fails because Belgravia incurred attorneys' fees in sending its attorney to Hobbs, New Mexico and to New York City to inspect physical

copies of documents that PolyNatura had available electronically. Pl.'s SJ Resp. at 22-23. In reply, PolyNatura renews its argument that the claim fails for lack of damages, pointing to the provision of the Royalty Agreement that specifies that any inspection will be at Belgravia's cost and expense. Def.'s SJ Reply at 12.

PolyNatura has plainly failed to meet its summary judgment burden on this claim. Under Federal Rule of Civil Procedure 56, a party seeking summary judgment must "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. This District's local rules are even more particular in their requirements: a party's memorandum in support of its motion for summary judgment "must contain a concise statement of all of the material facts as to which the movant contends no genuine issue exists. The facts must be **numbered** and must refer with particularity to those portions of the record upon which the movant relies." D.N.M.L.R.-Civ. 56.1(b). PolyNatura's cursory argumentation in a brief footnote does not satisfy these requirements. Although PolyNatura cites to one portion of a declaration therein, Def.'s SJ Reply at 4 n.3, that citation alone is insufficient given the summary judgment standard and this District's rules for the specific identification and numbering of allegedly undisputed facts. PolyNatura's statement of undisputed facts does not refer at all to the circumstances surrounding the records inspection claim. *See id.* at 4. Accordingly, PolyNatura's motion for summary judgment as to Belgravia's claim for breach of contract on the basis of interference with Belgravia's record inspection rights is **DENIED**.

b)      **Plaintiff's motion**

i.      **Undisputed material facts[11]**

As discussed above, Belgravia and PolyNatura entered into a Royalty Agreement in 2017. Def.'s SJ Resp. at 2. The Royalty Agreement grants Belgravia the following inspection right:

> [PolyNatura] shall permit [Belgravia] and any of its authorized representatives, at [Belgravia]'s cost and expense, to inspect [PolyNatura]'s records (including without limitation, any records and data that are maintained electronically), and in conjunction with such inspection to make copies and take extracts therefrom and to discuss with [PolyNatura] the calculations of the Royalty and [Water revenue], and [mining revenue]; provided, however that such inspection shall take place at reasonable times during normal business hours and not more often than once per calendar quarter.

*Id.* at 9; Royalty Agreement § 7. Belgravia invoked its inspection rights under the contract in a May 5, 2021 letter to PolyNatura. Def.'s SJ Resp. at 3. PolyNatura responded the same day and "provided Plaintiff with access to information and an email about a potential Water transaction." *Id.* at 10. Belgravia followed up with PolyNatura on May 21, reiterating its request to inspect records and inquiring as to "the location of such records and PolyNatura's availability for an inspection." *Id.*; Decl. Paul Hong, Ex. 5, ECF No. 157-12. PolyNatura responded that there were "some records" in Hobbs, New Mexico, and some at Cartesian Capital's office in New York City. Def.'s SJ Resp. at 10; Decl. Paul Hong, Ex. 5, ECF No. 157-12. On June 3, PolyNatura e-mailed Belgravia several electronic documents. Decl. R. Matthew Burke, Ex. 1, ECF No. 157-3;

---

[11] The following facts are gleaned from PolyNatura's response to Belgravia's statement of undisputed facts, indicating which of Belgravia's facts it does and does not dispute, Def.'s SJ Resp. at 2-9, and from PolyNatura's statement of additional undisputed material facts, *id.* at 9-11. In reply, Belgravia acknowledges PolyNatura's additional facts and states merely that "none of th[o]se allegations raise a dispute of material fact that would defeat summary judgment." Pl.'s SJ Reply at 2. Because Belgravia failed to specifically object to or dispute any of PolyNatura's asserted additional facts in the manner prescribed by Federal Rule of Civil Procedure 56(c)(1) and this Court's local rules, PolyNatura's additional facts are deemed undisputed. *See* Fed. R. Civ. P. 56(e)(2); D.N.M.LR-Civ. 56.1(b); *see also, e.g.*, *Aersale, Inc. v. City of Roswell*, No. 2:22-cv-218, 2024 WL 4880835, at *3 n.3 (D.N.M. Nov. 25, 2024) (Slip op.).

*see also* Def.'s SJ Resp. at 10. Counsel for Belgravia traveled to Hobbs and to New York City to inspect certain hard copy records that PolyNatura had made available in June and July of 2021. Def.'s SJ Resp. at 4-5.

Following these trips, on July 16, Belgravia emailed PolyNatura to again request access to records, this time naming specific categories including "[a]ll electronically stored documents that are related to the Royalty Agreement[.]" *Id.* at 10; Decl. Mehdi Azodi, Ex. 8, ECF No. 144-8. Belgravia sent another letter to PolyNatura on August 18 stating its view that PolyNatura was in breach of its contractual obligations because it had failed to provide Belgravia with access to records to which it was entitled.[12] Def.'s SJ Resp. at 7; Decl. Mehdi Azodi, Ex. 7, ECF No. 144-7. On September 20, PolyNatura "agreed by letter . . . to produce all such documents" requested by Belgravia, "at Plaintiff's expense." Def.'s SJ Resp. at 11. Belgravia did not respond to that letter and filed the instant suit the same day. *Id.*

### ii.    Parties' arguments

Belgravia argues that is entitled to summary judgment on its claim for breach as to the records inspection clause because "Belgravia gave PolyNatura sufficient time and opportunities to comply with the inspection requests, and PolyNatura failed to give Belgravia access to the records it was entitled to." Pl.'s SJ Mot. at 2.[13] More specifically, Belgravia avers that when it sought to invoke its contractual right "to inspect PolyNatura's books and records with regard to PolyNatura's efforts to develop, produce, and market the water asset," PolyNatura "delayed and interfered at every turn." *Id.* at 8. Belgravia accuses PolyNatura of sending it on "a wild goose

---

[12] PolyNatura disputes the veracity of the letter's assertion but does not dispute the fact "to the extent it recites the contents of a letter." Def.'s SJ Resp. at 8.

[13] Belgravia also seeks summary judgment as to PolyNatura's alleged breach of "the duty of implied faith and fair dealing implicit in the Royalty Agreement." Pl.'s SJ Mot. at 10. However, Plaintiff does not assert such a claim in its Complaint. *See generally* Second Am. Compl., ECF No. 67. Accordingly, this claim was improperly raised and the Court will not consider it now.

chase" to Hobbs and New York City to view hard copy documents while simultaneously "withholding the most important and valuable information in electronic documents PolyNatura possessed all along." *Id.* at 8-9. Furthermore, Belgravia argues, it suffered damages in the form of the time, effort, and expense it spent on the "fruitless" trips to Hobbs and New York, and in the form of its "lost . . . ability" to ensure PolyNatura was making the efforts required under the contract. *Id.* at 9.

In response, PolyNatura argues that the evidence Belgravia submits in support of its factual allegations is inadmissible. Def.'s SJ Resp. at 13-14. PolyNatura further argues that its own evidence demonstrates that it complied with its contractual obligation; it was Belgravia's "own decision not to request electronic documents" initially. Belgravia ought to have been aware that electronic documents likely existed, PolyNatura argues, given the "fact of life" of electronic recordkeeping and the fact that in its initial response PolyNatura shared some electronic records. *Id.* at 15. PolyNatura also resists Belgravia's motion for summary judgment on the basis that Belgravia has failed to prove that it suffered any recoverable damages. *Id.* at 16-18. PolyNatura argues that the cost of the on-site visits is not recoverable because the record inspection clause specifies that such inspection will be at Belgravia's expense, *id.* at 17, and because there is no proof that Belgravia actually paid those expenses, *id.* at 17-18. Belgravia replies that the evidence to which PolyNatura objects is in fact admissible. Pl.'s SJ Reply at 2-3. Belgravia rebuts PolyNatura's argument that it in fact fulfilled its contractual obligations, arguing that PolyNatura's "with[holding] of the most useful documents maintained in electronic form" belies that assertion. *Id.* at 4. Contrary to PolyNatura's argument that Belgravia ought to have known there were electronic documents and failed to request them, Belgravia argues that its initial request to inspect PolyNatura's books and records pursuant to Section 7 of the Royalty

Agreement inherently included electronic documents, as that section specifically names such documents. *Id.* at 4-5. Finally, Belgravia notes that it did in fact pay the legal fees associated with the Hobbs and New York inspections and renews its argument that it also suffered damages in the form of lost ability "to hold PolyNatura's feet to the fire in developing, producing, or marketing the water asset." *Id.* at 7-8.

### iii.        Analysis

The Court concludes that Belgravia has not shown that the undisputed material facts entitle it to judgement as a matter of law. To be sure, there is some evidence that PolyNatura may have acted with less than total candor. As Belgravia notes, its initial request to inspect PolyNatura's records invoked Belgravia's rights under Section 7 of the Royalty Agreement, which specifically names electronically stored documents among those records to which Belgravia is entitled. A reasonable factfinder could find, therefore, that Belgravia did in fact request electronic documents from the get-go. Additionally, because PolyNatura did supply some electronic documents in its initial response to Belgravia, one could conclude that Belgravia reasonably assumed that those documents were all the electronic documents in PolyNatura's possession, not that it had merely cherry-picked a few. But on a motion for summary judgment, the Court is required to draw all inferences in favor of the non-movant. *Parker Excavating*, 863 F.3d at 1220. Doing so here leads to the inference that PolyNatura was not untoward in its dealings with Belgravia. Moreover, the issue of whether PolyNatura was willfully ignorant or genuine is unquestionably one that requires assessment of each party's witnesses. Such is a function reserved for the jury. *Daniels v. U.S. Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012), *abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).

But the above discussion is ultimately beside the point—it is unclear that any of those facts are actually material. Although the Court is required to construe the facts in the light most favorable to the non-moving party, even viewing them in the light most favorable to *Belgravia*, it is not clear that those facts demonstrate a breach of the record inspection clause. Belgravia avers that PolyNatura intentionally delayed and obfuscated, preventing Belgravia access to PolyNatura's records to which it was entitled. Even if Belgravia's characterization of events is taken as true, it does not clearly constitute a breach of the records inspection clause.

First, the records inspection clause does not provide for any particular timeframe or deadlines by which PolyNatura must comply with an inspection request from Belgravia. That section states only that inspections "shall take place at reasonable times during normal business hours and not more often than once per calendar quarter." Royalty Agreement § 7. Belgravia first requested access to PolyNatura's books and records in mid-May, 2021 and PolyNatura offered access to "all documents" that Belgravia sought in mid-September, 2021, providing some documents in the interim.[14] Absent any contractual timing requirement, four months is not obviously unreasonable and unacceptable. Thus, the timeline by which PolyNatura provided access to records does not clearly contravene the contract.

Second, it is not clear that the records inspection clause entitles Belgravia to all of the records that it requested. Belgravia characterizes the clause as permitting access to records "to ensure PolyNatura was actually using appropriate efforts to market the assets" and "unequivocally g[iving] Belgravia the right to inspect PolyNatura's books and records with regard to PolyNatura's efforts to develop, produce, and market the water asset." Pl.'s SJ Mot. at

---

[14] PolyNatura made this offer in a letter attached to an email dated September 20, 2021, 4:42PM UTC (10:42AM MDT). Ex. 2 to Decl. of R. Matthew Burke, ECF No. 157-4. Belgravia filed the instant case later that same day (2:58PM MDT). Ex. 3 to Decl. of R. Matthew Burke, ECF No. 157-5.

3, 8. But the Agreement does not state as much. Rather, the records inspection clause states that PolyNatura shall permit Belgravia to inspect its records "and in conjunction with such inspection . . . to discuss with [PolyNatura] the calculations of the Royalty and [Water revenue] and [mining revenue][.]" Royalty Agreement § 7. This language is admittedly not a model of clarity. However, it could be interpreted as permitting inspection of records only as they pertain to the *calculation* of the royalty, not as they pertain to PolyNatura's efforts to realize revenue from the Water and mining assets. The former is clearly much narrower than the latter, and, given that the assets have yet to generate any revenue at all, the relevant records are likely to be very few if any. Therefore, because it is unclear that the contract even entitles Belgravia to inspect most of the records it sought, Belgravia necessarily has not shown as a matter of law that PolyNatura's actions in response to Belgravia's request amount to breach. Accordingly, Plaintiff's Motion for Partial Summary Judgment is also **DENIED**.

### C.    Defendant's Motion to Exclude Expert Testimony

On October 18, 2024, PolyNatura moved to exclude the expert testimony of Belgravia's two noticed experts, Mr. Greenberg and Mr. Himmel. Def.'s Mot. Exclude Expert Testimony David Greenberg & Sidney Himmel, ECF No. 169. Belgravia responded, ECF No. 175, and PolyNatura replied, ECF No. 179. It is unclear to the Court from the parties' briefing whether and to what extent Mr. Greenberg's and Mr. Himmel's proffered testimony has any relevance to the sole remaining claim of breach as to the record inspection clause. Therefore, in light of the Court's instant Order, the Court will **DENY** Defendant's motion without prejudice. Should PolyNatura wish to refile its motion with an eye toward the now much limited scope of the present case it will be permitted to do so.

V.     **CONCLUSION**

For the foregoing reasons, the Court makes the following rulings:

- Defendant's Motion for Summary Judgment, ECF No. 136, is **GRANTED in part and DENIED in part**. The Motion is GRANTED as to Plaintiff's claim for breach of contract for failure to use commercially reasonable efforts to monetize the mining asset, failure to use commercially reasonable efforts to monetize the Water, and failure to engage with Buyer #1. The Motion is DENIED as to Plaintiff's claim for breach of contract as to the record inspection.

- Plaintiff's Motion for Partial Summary Judgment, ECF No. 144, is **DENIED.**

- Plaintiff's Motion for Determination of Ambiguity in the Royalty Agreement, ECF No. 145, is **DENIED.**

- Defendant's Motion to Exclude Expert Testimony, ECF No. 169, is **DENIED without prejudice.**

- Defendant's Motion to Strike or Exclude Declaration of Sidney Himmel, ECF No. 195, is **GRANTED.**

The Parties shall have **FOURTEEN DAYS** from the date of this Order to schedule a settlement conference with United States Magistrate Judge Jerry H. Ritter. The Parties are reminded that should the case fail to settle, pursuant to the undersigned's Standing Order Regarding Civil Trials they must file a joint motion requesting a trial setting.

_Margaret Strickland_
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE