IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BELGRAVIA HARTFORD GOLD ASSETS CORP.,
f/k/a IC POTASH CORP.,

 Plaintiff,

v.             Civ. No. 2:21-cv-00918-MIS-JHR

POLYNATURA CORP., f/k/a
INTERCONTINENTAL POTASH CORP.,

 Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION IN LIMINE

 THIS MATTER is before the Court on Defendant PolyNatura Corp.'s ("PolyNatura" or "Defendant") Motion in Limine ("Motion"), ECF No. 238, filed October 16, 2025. On October 30, 2025, Plaintiff Belgravia Hartford Gold Assets Corp. ("Belgravia" of "Plaintiff"), filed a Response, ECF No. 239. Per Court order, no reply was permitted. Clerk's Mins. for Hr'g of Sep. 19, 2025, ECF No. 233. On November 21, 2025, Defendant filed a Notice of Supplemental Authority per District of New Mexico Local Rule of Civil Procedure 7.8. ECF No. 240. The Court will **GRANT IN PART** and **DENY IN PART** Defendant's Motion in Limine.

## I. Background

 The present dispute centers on the development of a potash/polyhalite mine in Lea County, New Mexico. Second Am. Compl. & Jury Demand ("Second Am. Compl.") ¶¶ 5, 14, ECF No. 67. Two deep water wells were drilled for projected use in the mining project. *Id.* ¶ 14. Over time several investors fought for control of PolyNatura, the entity that owns the rights to extract the minerals and the interests in the Water. *Id.* ¶¶ 14, 17. Lengthy litigation resulted in a 2017 settlement in which the entity now known as Belgravia agreed to give Cartesian Capital full

1

ownership and control of PolyNatura in exchange for two cash payments and royalties. *Id.* ¶¶ 17-18.

The Royalty Agreement ("Agreement"), ECF No. 137-8, provides that PolyNatura (now under the control of Cartesian Capital) pay Belgravia a 75% royalty on any revenue realized from the sale of the Water, up to a cap of $12.2 million. Agreement § 3.a. Further, if the Water royalties had not reached that dollar amount by 2023, then Belgravia would begin receiving a 1% royalty on revenues from the mine (up to the same cap). *Id.* The Agreement obligates PolyNatura to use "commercially reasonable efforts to realize revenues" from the Water and the mine. *Id.* § 5.a.

The Agreement also states, in § 7, titled "Books and Records/Inspection," that PolyNatura shall permit Belgravia, at Belgravia's cost and expense, "to inspect [PolyNatura's] records (including without limitation, any records and data that are maintained electronically)," and make copies of such records, and "to discuss with [PolyNatura] the calculations of the Royalty and the [Water revenue amount], and [mining revenue amount]." *Id.*

The Agreement is governed by the laws of the State of New Mexico. *Id.* § 9(g). The Agreement provides that "[i]n any dispute arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover from the other Party court costs and reasonable attorneys' fees." *Id.*

Section 9(k) of the Agreement covers Indemnification, and provides that PolyNatura indemnify Belgravia for any losses "arising out of or in connection with (a) any breach by [PolyNatura] of any representation or warranty . . . and (b) any breach by [PolyNatura] of any covenant set forth" in the Agreement. *Id.* Losses are defined in § 9(k) as "all liabilities, obligations, damages, penalties, claims, actions, costs, charges and expenses, including, without limitation,

reasonable attorneys' fees, expert witness fees, consultant fees and other professional fees which may be imposed upon, incurred by or asserted against [Belgravia]." *Id.*

Belgravia invoked its inspection rights under § 7 in a May 5, 2021 letter to PolyNatura. Def.'s Summ. J. Resp. at 4, ECF No. 157-1. PolyNatura responded the same day and "provided Plaintiff with access to information and an email about a potential Water transaction." *Id.* at 10. Belgravia followed up with PolyNatura on May 21, 2021, reiterating its request to inspect records and inquiring as to "the location of such records and PolyNatura's availability for an inspection." *Id.*; Decl. Paul Hong, Ex. 5, ECF No. 157-12. PolyNatura responded that there were "some records" in Hobbs, New Mexico, and some in New York City. Def.'s Summ. J. Resp. at 10, ECF 157-1; Decl. Paul Hong, Ex. 5, ECF No. 157-12. On June 3, PolyNatura e-mailed Belgravia several electronic documents. Decl. R. Matthew Burke, Ex. 1, ECF No. 157-3; *see also* Def.'s Summ. J. Resp. at 10, ECF No. 157-1. Counsel for Belgravia traveled to Hobbs and to New York City in June and July of 2021 to inspect certain hard copy records that PolyNatura made available. Def.'s Summ. J. Resp. at 4-5, ECF No. 157-1.

Following these trips, on July 16, Belgravia emailed PolyNatura to again request access to records, this time naming specific categories including "[a]ll electronically stored documents that are related to the Royalty Agreement[.]" *Id.* at 10; Decl. Mehdi Azodi, Ex. 8, ECF No. 144-8. Belgravia sent another letter to PolyNatura on August 18 stating its view that PolyNatura was in breach of its contractual obligations because it had failed to provide Belgravia with access to records to which it was entitled. Def.'s Summ. J. Resp. at 7, ECF No. 157-1; Decl. Mehdi Azodi, Ex. 7, ECF No. 144-7. On September 20, PolyNatura "agreed by letter . . . to produce all such documents" requested by Belgravia, "at Plaintiff's expense." Def.'s Summ. J. Resp. at 11, ECF No. 157-1. Belgravia did not respond to that letter and filed the instant suit the same day. *Id.*

3

Belgravia asserted PolyNatura breached the Royalty Agreement in four ways: (1) "Delaying and interfering with the inspection of PolyNatura's books and records, and improperly withholding documents"; (2) "Failing to pursue a transaction with [a particular interested buyer] in 2018"; (3) "Failing to use commercially reasonable efforts to realize revenues from the water wells"; and (4)"Failing to use commercially reasonable efforts to realizing revenues from the mining asset." Second Am. Compl. at 16-17, ECF No. 67. The Parties filed Motions for Summary Judgment on all claims followed by a hearing and supplemental briefings and designations of evidence. ECF Nos. 136, 143, 144, 154, 157, 178, 185, 189, 190, 193. The Court issued an Omnibus Order ruling in favor of PolyNatura as to claims two, three, and four. ECF No. 199 at 39.

The Court withheld judgment on claim one, "Delaying and interfering with the inspection of PolyNatura's books and records, and improperly withholding documents," finding (i) PolyNatura did not identify an absence of a genuine issue of material fact on which to base its Motion (having only mentioned the claim in a footnote) and (ii) Belgravia did not establish undisputed material facts showing that Defendant interfered with the contract as a matter of law. *Id.* at 32, 36. The Court stated that "the issue of whether PolyNatura was willfully ignorant or genuine is unquestionably one that requires assessment of each party's witnesses [and] is a function reserved for the jury." *Id.* at 36. The Court also opined that even if the Court viewed the Plaintiff's alleged facts in the light most favorable to the Plaintiff, "it is not clear that those facts demonstrate a breach of the record inspection clause." *Id.* at 37.

The Court then denied Defendant's Motion for Partial Final Judgment and Motion for Costs and Attorney's Fees, despite Defendant "prevail[ing]" on claims two, three, and four, citing (i) the federal policy against piecemeal appeals and (ii) the "enormous" amount of fees sought

($3,752,176.05) and the difficulty of assessing additional fees should Defendant win on claim one. ECF No. 227. The Court found delaying final judgment would not delay justice since the "final claim is not complex and should be resolved quickly." *Id.*

The Parties filed a Joint Motion for Trial Setting, requesting a jury trial on claim one. ECF No. 230. At a Status Conference, PolyNatura requested permission to file this Motion in Limine, believing it would be dispositive and avoid a trial. *See* Clerk's Mins. for Hr'g of Sep. 19, 2025 at 2, ECF No. 233. The Court granted permission and, after receiving the Motion, Response, and Supplemental Notice, held a hearing on the instant Motion. Clerk's Mins. for Hr'g of Dec. 1, 2025, ECF No. 241.

PolyNatura makes three arguments in its Motion. First, PolyNatura argues that Federal Rule of Evidence ("FRE") 402 bars Plaintiff from submitting evidence of attorneys' fees as damages because Defendant, having prevailed on the more substantial claims, is the only prevailing party and therefore the only party entitled to attorneys' fees under New Mexico law and § 9(g) of the Agreement. Mot. in Lim. at 6-7, ECF No. 238. Second, PolyNatura argues the American Rule bars Belgravia from asserting attorneys' fees as damages for contract breach since the fee-shifting provision of the contract, § 9(g), operates only in favor of PolyNatura because PolyNatura is the prevailing party. *Id.* at 7-8. Last, PolyNatura argues that § 7 bars Belgravia from asserting damages based on inspection of records, since it requires Belgravia to bear its own costs for routine inspections. *Id.* at 9.

Belgravia's Response to Defendant's Motion makes four arguments. First, Plaintiff argues that attorneys' fees are admissible under FRE 402 because § 9(k) requires Defendant to indemnify Plaintiff for losses due to breach of contract and defines "Losses" to include "reasonable attorneys' fees." ECF No. 239 at 4-5. Second, Plaintiff argues that (i) prevailing party status cannot be

determined until final judgment is rendered, (ii) prevailing party status does not affect consequential damages resulting from a contract breach, and (iii) § 9(k) governs damages available from breach whereas § 9(g) covers attorneys' fee awards after final judgment, making both sections applicable. *Id.* at 5-9. Third, Plaintiff argues the American Rule is inapplicable because § 9(k) provides for fee-shifting in the event of breach and § 9(g) provides for fee-shifting after final judgment based on the prevailing party. *Id.* at 9-11. Finally, Plaintiff argues that § 9(k) and New Mexico law prevents Defendant from arguing § 7 waives any right of Plaintiff to recover damages based on Defendant's breach of § 7. *Id.* at 11-13.

PolyNatura filed a Notice of Supplemental Authority ("Notice"), ECF No. 240, under Local Rule 7.8, which permits parties to file a "Notice of Supplemental Authority" if "controlling" or "pertinent and significant authorities come to a party's attention after the party's brief has been filed . . . ." Local Rule 7.8 requires the Notice "state the reasons for the supplemental citations" and "refer[] either to the page of the brief or to a point argued orally."

Defendant filed the Notice because "Plaintiff asserts a new claim [in its Response]: Royalty Agreement Section 9(k) requires indemnification of its legal fees." ECF No. 240 at 1. Since Defendant "did not anticipate this entirely new issue in its motion," Defendant "identified responsive authorities." *Id.* In addition to filing for a nonconforming reason, Defendant did not refer to a page of its brief or a point argued orally. *See generally id.*

The Notice contained citations purportedly supporting the assertions that "[c]ourts presume that indemnification does not apply to first-party disputes" and "[a] distinct fee-shifting clause in the same contract precludes interpretation of [the] indemnification clause to support first-party fee-shifting." *Id.*

At the Motion Hearing, Defendant argued that § 9(k) of the Agreement does not cover first-party indemnification and should be read as a "standard" indemnification clause requiring only that Defendant indemnify Plaintiff in the event of third-party suits. Tr. of Hr'g of Dec. 1, 2025 at 3:22 – 15:1.[1, 2]

Plaintiff clarified at the Hearing that it is seeking damages for breach of § 7 and damages in the form of reasonable attorneys' fees as provided for by § 9(k). *Id.* at 28:13-21. Plaintiff is not seeking as damages all attorneys' fees paid to litigate its claims, but rather those fees related to enforcement of the contract, roughly estimated to be around $200,000. *See id.* at 28:6-11.

Plaintiff argued at the Hearing that the bifurcation of § 9(k) into clause (a), covering breaches of representations and warranties, and clause (b), covering breaches of covenants, indicates § 9(k) covers breaches of covenants like § 7. *Id.* at 41:4 – 42:8. Plaintiff also argued that, separate from § 9(k), consequential damages based on a breach of § 7 include foreseeable attorneys' fees required to enforce its rights under the Agreemnt. *Id.* at 26:18-21.

## II. Legal Standards

### A. Motions in Limine

"The purpose of a motion *in limine* is to allow the Court to decide evidentiary issues in advance of trial to avoid delay and ensure an evenhanded and expeditious trial." *Hellard v. Mid Century Ins. Co.*, 519 F. Supp. 3d 1025, 1027 (N.D. Okla. 2021) (internal quotation marks and citation omitted) (emphasis in original). Since a "trial court is almost always in a better position at the actual trial to assess the probative value of evidence, courts are reluctant to grant broad

---

[1]     Neither party ordered the transcript. The Court cites to the Court reporter's original rough draft of the hearing transcript. Any final transcript may contain slightly different page and/or line numbers.

[2]     Defendant also argued in the Hearing that Plaintiff's argument regarding § 9(k) was untimely. Tr. of Hr'g of Dec. 1, 2025 at 15:2 – 19:25. As the Court finds below that § 9(k) does not permit first-party indemnification, *infra* III.B., the Court declines to address the timeliness of Plaintiff's § 9(k) argument.

exclusions of evidence in limine." *Id.* at 1028 (alternations, internal quotation marks, and citations omitted). Thus, a movant must show "that the evidence in question is clearly inadmissible on *all* potential grounds." *Id.* (internal quotation marks and citation omitted).

### B. Admissibility of Evidence

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible." Rule 401, in turn, defines "relevant evidence" as that which has "any tendency" to make a "fact [that] is of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see United States v. Bowling*, 619 F.3d 1175, 1182 (10th Cir. 2010)

Under these rules, evidence of damages that a plaintiff "is not entitled to recover . . . is not relevant and is thus inadmissible at trial." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-CV-00970-PAB-KMT, 2014 WL 348637, at *2-3 (D. Colo. Jan. 31, 2014) (excluding evidence of damages not recoverable under a consumer protection statute from trial over statutory consumer protection claim).

### III. Discussion

The Court first addresses why there is not a prevailing party at this stage in proceedings, rendering Defendant's first and second motion arguments moot, then addresses why Plaintiff is incorrect as to § 9(k) covering first-party indemnification, meaning Plaintiff may not claim damages under § 9(k), and finally addresses why attorneys' fees connected to contract enforcement are not available as consequential damages under New Mexico law for a breach of § 7, although other consequential damages may be available.

### A. The Court cannot declare a prevailing party until it renders final judgment on all claims, therefore Defendant's argument to exclude evidence of Plaintiff's attorneys' fees damages, because Defendant is already the prevailing party, fails.

Defendant argues that it is already the prevailing party and therefore Plaintiff cannot present evidence of attorneys' fees as damages. Mot. in Lim. at 6-7, ECF No. 238. Although the Court recognized that Defendant prevailed on claims two, three, and four via Summary Judgment, Order Den. Def.'s Mot. for Partial Final J., ECF No. 227, there is a difference between prevailing on a claim and being the overall prevailing party. The Court cannot recognize a prevailing party until all claims are adjudicated. Therefore, Defendant is not yet the prevailing party and cannot prevent Plaintiff from claiming attorneys' fees as damages thereby.

Section 9(g) provides that the "prevailing Party" in "any dispute arising out of or relating to this Agreement" is "entitled to recover from the other Party court costs and reasonable attorneys' fees." ECF No. 137-8. Declaring a prevailing party is common in contract disputes. New Mexico recognizes that, in cases involving multiple claims, the party which wins the "main issue" is the prevailing party. *Hedicke v. Gunville*, 62 P.3d 1217, 1224-25 (N.M. Ct. App. 2002); *see also Mayeux v. Winder*, 131 P.3d 85, 96 (N.M. Ct. App. 2005); *U.S. ex rel. Silva's Excavation, Inc. v. Jim Cooley Const., Inc.*, 572 F. Supp. 2d 1276, 1279 (D.N.M. 2008). Under New Mexico law, courts may also find that neither party prevails. *Hedicke*, 62 P.3d at 1225.

Crucially, however, the determination of which party prevails is determined *after* the conclusion of the lawsuit: "the prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy v. Miller*, 862 P.2d 1212, 1219 (N.M. 1993); s*ee also Marchman v. NCNB Tex. Nat'l. Bank*, 898 P.2d 709, 730-31 (N.M. 1995) (affirming partial summary judgment, dismissal of the case based on forum non convenience, and vacating partial summary judgment to allow a Texas court to adjudicate claims); *Mayeux*, 131 P.3d at 97 (affirming the trial court did not abuse its discretion in determining the prevailing party in its Judgment and Final Decree); *Hedicke*, 62 P.3d at 1220

9

(remanding to trial court to determine prevailing party and amount of attorneys' fees). This suit is not yet concluded and therefore the Court cannot determine a prevailing party, even though the Court recognized Defendant prevailed on claims two, three, and four. *See* Order Den. Def.'s Mot. for Partial Final J., ECF No. 227.

As the Court cannot declare a prevailing party at this juncture, Defendant is incorrect in claiming it is the prevailing party, and its argument that its status as prevailing party prevents Plaintiff from claiming attorneys' fees as damages therefore fails as a matter of law.

**B. Plaintiff cannot claim damages based on first-party indemnification under § 9(k) and therefore evidence of such damages is inadmissible under FRE 402.**

Plaintiff makes a claim for damages under two theories: consequential damages based on a breach of § 7 and first-party indemnification under § 9(k) based on a breach of § 7. Resp. at 6, 8, ECF No. 239. Because § 9(k) limits indemnification to third-party litigation, the Court finds damages based on first-party indemnification under § 9(k) inadmissible under FRE 402.

New Mexico applies the American Rule, which requires parties to pay their own attorneys' fees unless superseded by a statute, court rule, or contractual agreement. *N.M. Right to Choose/NARAL v. Johnson*, 986 P.2d 450, 453 (N.M. 1999). The Parties are therefore capable of contracting for first-party indemnification of attorneys' fees if they so desire. *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1337 (10th Cir. 1984) ("A successful plaintiff may recover attorneys['] fees in a breach of contract case, however, if the contract so provides.").

In New Mexico, "[a] contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract." *Krieger v. Wilson Corp.*, 131 P.3d 661, 666 (N.M. Ct. App. 2005) (quoting *Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 92 P.3d 53, 57 (N.M. Ct. App. 2004)). New

Mexico applies "the general rules of contract construction in determining the meaning of the language used in indemnity contracts and clauses." *Id.* at 666.

New Mexico does not have an established position on whether indemnification provisions require specific language to establish first-party indemnification, leaving the Court to predict how the New Mexico Supreme Court would rule. *Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1012 (10th Cir. 2021) ("If the state's high court has not explicitly decided the issue, the district court must 'attempt to predict what the state's highest court would do.'") (citation omitted). In making that determination, "[t]he court may 'seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions in interpreting the law of the state in question, and the 'general weight and trend of authority' in the relevant area of law.'" *Id.* (citation omitted). Therefore, the Court turns to available rulings on indemnity by New Mexico state courts, the weight of national authority, the reasoning of other courts regarding the impact of indemnity clauses on the American Rule, the contractual language requirements imposed by other jurisdictions, and the persuasive reasoning of courts considering an indemnity clause in conjunction with a prevailing party clause to determine how the New Mexico Supreme Court would rule if similarly positioned.

(1) ***The New Mexico Supreme Court would presume indemnification does not include first-party indemnification.***

    (a) *New Mexico case law weighs in favor of a presumption against first-party indemnification.*

First, although New Mexico does not have an established position on first-party indemnity, the New Mexico Court of Appeals ruled on a similar issue in *LensCrafters, Inc. v Kehoe*, No. 28,145, 2010 WL 4924992, at *10 (N.M. Ct. App. Oct. 15, 2010), *aff'd in part, rev'd in part*, 282

P.3d 758 (N.M. 2012). In that case, the court applied general principals of contract and indemnification law to determine whether the indemnification clause at issue covered first-party litigation. *Id.*

The court found that although the indemnification clause required both parties to indemnify the other from "'any claims . . . caused by sole negligence or willful misconduct' of the responsible party," the clause did not cover first-party indemnification for two reasons. *Id.* First, "[t]raditional indemnification involves three parties," making the "plain reading of the indemnification clause . . . that [the parties] intended to contractualize [sic] traditional indemnification principles and not their own first-party liability." *Id.* Second, the contract included a separate enforceability clause mandating that if the parties "find it necessary to enforce any part of the [the sublease agreement] through arbitration or legal proceeding, . . . each party shall pay all of their own costs and attorneys' fees incurred for such purpose." *Id.* at *11. Reading the contract as a harmonious whole, the court concluded "it is clear that the parties intended to indemnify and defend each other against third-party claims and to pay their own costs and fees when enforcing contract claims against each other." *Id.*

The Court finds *LensCrafters* indicates New Mexico likely presumes third-party indemnification in the absence of specific language contracting for first-party indemnification.

> (b) *National case law also weighs in favor of a presumption against first-party indemnification*

Next, the weight of national authority appears to weigh in favor of a presumption of third-party indemnity absent specific contract language. The Delaware Superior Court reviewed two cases, one from Iowa and one from Maryland, which surveyed national case law on the subject. *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, No. CIV.A. 07C-08-286WCC, 2012 WL

1415466, at *1 (Del. Super. Ct. Mar. 29, 2012) *superseded by statute, Noranda Aluminum Holding Corp. v. XL Ins. Am., Inc.,* 269 A.3d 974, 979 (Del. 2021). The court noted there was "no [nationwide] consensus on how courts should approach indemnity clauses in the context of first-party litigation," *id.*, but the court "followed the side with the slight weight of authority on the issue, holding that 'indemnity agreements are presumed *not* to require reimbursement for attorneys' fees incurred as a result of substantive litigation between the parties to the agreement absent a clear and unequivocal articulation of that intent,'" *Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, 2013 WL 1955012, at *44 (Del. Ch. May 13, 2013) (quoting and discussing *TranSched Sys. Ltd.*, 2012 WL 1415466 at *1-2) (emphasis in original). Although a slight weight in favor of such a presumption is not dispositive, the Court finds it helpful and believes the New Mexico Supreme Court would weigh it similarly.

(c) *Use of the American Rule weighs in favor of a presumption against first-party indemnification.*

Several courts have determined that a presumption against first-party indemnity is required to prevent indemnity clauses from impermissibly conflicting with, or undermining, the American Rule. This is because presuming first-party indemnity would eliminate the obligation under the American Rule for parties to pay their attorneys' fees. *Deere & Co. v. Exelon Generation Acquisitions, LLC*, No. CVN13C07330MMJCCLD, 2016 WL 6879525, at *1 (Del. Super. Ct. Nov. 22, 2016) ("Otherwise, a typical indemnification provision would 'swallow the American Rule.'") (quoting *Senior Hous. Cap., LLC*, 2013 WL 1955012, at *44); *Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 285 (Md. 2008) ("If we were to imply a fee-shifting provision for first party actions, even where the contract does not permit one expressly, the exception would

swallow the rule, and the presumption of the American rule disallowing recovery of attorney's fees would, in effect, be gutted.").

But several jurisdictions using the American Rule do presume indemnification covers first-party litigation. *Caldwell Tanks, Inc. v. Haley & Ward, Inc.*, 471 F.3d 210, 216 (1st Cir. 2006) ("Massachusetts law imposes no explicit statement rule for indemnity contracts generally, or for varying the American rule, and contains no assumption that indemnity provisions are restricted to third-party claims."); *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1032 (9th Cir. 1992) ("The plain, unambiguous meaning of 'indemnify' is not 'to compensate for losses caused by third parties,' but merely 'to compensate.'") (applying California law); *Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.*, 446 F. Supp. 2d 551, 577 (E.D. Va. 2006) ("[T]he plain meaning definition of indemnification does not limit reimbursement to losses suffered as a result of third party claims.") (applying Virginia law).

Based on *LensCrafters*, the slight national consensus weight in favor, and the potential for indemnity clauses to conflict with the American Rule, the Court predicts that the New Mexico Supreme Court would presume third-party indemnity and require some combination of language or other contract provisions to establish a right to first-party indemnity.

**(2) *Section 9(k) contains no language indicating the parties contracted for first-party indemnification.***

(a) *Review of authorities.*

The Court now examines what language has been found to establish first-party indemnity. Several states require explicit language in contracts to establish first-party indemnity—but the range for such language is broad. On one side are jurisdictions which require clear intent. New York requires "unmistakably clear" language to find a departure from the "well-understood rule

14

that parties are responsible for their own attorney's fees." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989). Delaware requires parties to "point to specific language that is applicable to such claims." *Senior Hous. Cap., LLC*, 2013 WL 1955012, at *44 (quoting *Bear Stearns Mortg. Funding Tr. 2007-AR2 v. EMC Mortg. LLC*, No. CIV.A. 6861-CS, 2013 WL 164098, at *2 (Del. Ch. Jan. 15, 2013), *revised* Jan. 17, 2013) (applying New York law)). Iowa requires "an intent to clearly and unambiguously shift the fees." *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 471 (Iowa 2010).

Language which has *not* been found to indicate first-party indemnity includes "any and all" claims or liabilities, *LensCrafters*, 2010 WL 4924992, at *10; *Hooper*, 548 N.E.2d at 905; *NevadaCare*, 783 N.W.2d at 472, "any and all Losses . . . related to . . . any breach," *Deere*, 2016 WL 6879525, at *1, and "[i]n the event [party] breaches . . . any of its representations, warranties, and covenants contained in this Agreement," *TranSched Sys. Ltd.*, 2012 WL 1415466, at *3.

Other states, however, require only that, as here, the clause include the term "attorneys' fees" to establish first-party indemnity. *Dalton v. Childress Serv. Corp.*, 432 S.E.2d 98, 102 (W. Va. 1993) (allowing for the recovery of attorney's fees in an enforcement action where the contract indemnification clause provided for "any and all cost and expenses including attorney's fees."); *Tack's Steel Corp. v. ARC Constr. Co.*, 821 N.E.2d 883, 890 (Ind. Ct. App. 2005) ("The indemnification clause here provides for indemnity for all losses and liability. As a general proposition, such broad clauses specifically including attorney fees encompass fees for prosecuting the claim for indemnification [in first-party litigation]."); *RJF Int'l Corp. v. B.F. Goodrich Co.*, 880 S.W.2d 366, 371–72 (Mo. Ct. App. 1994) (finding that an agreement "to indemnify and hold harmless [the party] from and against any and all claims, liabilities, damages, losses, costs and

expenses, including without limitation, reasonable counsel fees and disbursements" included first-party litigation attorneys' fees).

Ultimately, the Court agrees that "there is no definitive language that must be used or phrases that have been routinely held to allow for such recovery in first-party actions," *TranSched Sys. Ltd.*, 2012 WL 1415466, at *2, and no term is dispositive. On balance, the Court finds that while the New Mexico Supreme Court may not require "unmistakably clear" language to establish first-party indemnity, it is more likely than not to require some language, beyond "attorneys' fees" or similar, to establish first-party indemnity.

(b) *Review of § 9(k).*

The Court now turns to the clause itself. Section 9(k) reads:

k. Indemnification

Grantor indemnifies Grantee for Losses arising out of or in connection with (a) any breach by Grantor of any representation or warranty set forth in this Royalty Agreement and (b) any breach by Grantor of any covenant set forth in this Royalty Agreement. "**Losses**" shall mean all liabilities, obligations, damages, penalties, claims, actions, costs, charges and expenses, including, without limitation, reasonable attorneys' fees, expert witness fees, consultant fees and other professional fees which may be imposed upon, incurred by or asserted against Grantee.

ECF No. 137-8 (emphasis in original).

First, Plaintiff argues that § 9(k)(b), which requires Defendant to indemnify Plaintiff for breach of covenant, establishes first-party liability. Resp. at 8, ECF No. 239 ("Section 9(k) is an indemnity clause that compensates Belgravia for 'Losses' caused by PolyNatura's breach of the Royalty Agreement's covenants, including for breaches of the inspection clause."); *Id.* at 12 ("PolyNatura's duty to indemnify is expressly triggered by 'any breach . . . of any covenant,' which includes [§ 7]."); Tr. of Hr'g of Dec. 1, 2025 at 43:20 – 44:22 ("The only plausible reading of 9(k), subparagraph (b), is that Poly[N]atura must pay Belgravia for losses caused by Poly[N]atura's

breach of the covenant."). Plaintiff argues that § 9(k)(a), establishing indemnity liability for breach of representations and warranties, can apply to third-party litigation, but § 9(k)(b) applies to first-party litigation. Tr. of Hr'g of Dec. 1, 2025 at 48:7-9 ("[Section 9(k)] also includes, in addition to first-party claims covered by 9[(k)](b) . . . third-party claims that would be covered by 9(k)(a)."). The Court is not persuade.

Plaintiff is correct that the covenant in question, § 7, establishes an obligation that is most reasonably read as exclusively between the two parties. But § 9(k)(b) is within the "Indemnity" section. If § 9(k) is limited to third-party indemnification, then the subsections are also limited to those breaches of covenants, or representations and warranties, that result in third-party litigation. Like in *LensCrafters*, where the New Mexico Court of Appeals found the term "any and all" did not extend beyond third-party indemnification under a plain reading because indemnification implies third-party indemnification, "any breach by Grantor of any covenant" here implies those breaches within the definition of § 9(k). 2010 WL 4924992, at *10; ECF NO. 137-8. Similarly, the terms "arising out of" and "in connection with" preceding subsections (a) and (b) do not overcome the presumption for third-party indemnification. ECF No. 137-8. The Court finds § 9(k) contains no language that overcomes the traditional view of indemnification applying only to third-party litigation.[3]

**(3) *The presence of § 9(g), a "prevailing party clause," also indicates § 9(k) applies only to third-party indemnity.***

---

[3]    Second, to the extent Plaintiff argues that the expansive terms within the definition of "Losses" in § 9(k) establishes a right to submit first-party indemnification damages due to breach, the Court disagrees. *See* Resp. at 10, ECF No. 239. "Losses" defines the damages to which Plaintiff is entitled based on a qualifying breach of § 9(k). Plaintiff must therefore look to language outside the definition of Losses to determine what type of breach triggers a claimable Loss, i.e. whether § 9(k) permits first-party indemnity or indemnity only in the event of third-party litigation. As noted above, no language establishes Plaintiff's right to claim Losses from first-party litigation.

Finally, several courts have found that the presence of a fee-shifting "prevailing party" or "enforcement clause" elsewhere in the contract indicates the indemnity clause does not permit first-party indemnification. *LensCrafters*, 2010 WL 4924992, at \*11 ("[T]he indemnity clauses and the separate 'enforceability' clause in the agreement demonstrate[,] . . . [considered with the remaining sublease provisions,] the parties intended to indemnify and defend each other against third-party claims and to pay their own costs and fees when enforcing contract claims against each other."); *TranSched Sys. Ltd.*, 2012 WL 1415466, at \*3 ("That intent [to indemnify first parties] is not spelled out in [the contract], nor is there any reference to 'prevailing parties,' a hallmark term of fee-shifting provisions."); *Gotham Partners, L.P. v. High River Ltd. P'ship*, 906 N.Y.S.2d 205, 207 (N.Y. App. Div. 2010) ("We also recognize that the agreement itself establishes that the parties were well aware of how to frame an enforceable provision creating an entitlement to prevailing party attorney's fees; section 7.12 constitutes an unmistakable, unequivocal prevailing party attorney's fees provision in favor of [appellant]."); *NevadaCare, Inc.*, 783 N.W.2d at 472 ("If the indemnification provisions in the contracts for fiscal years 1999 through 2005 were intended by the parties to be fee-shifting provisions, there would be no reason for the parties to include a specific fee-shifting provision in the contract for fiscal years 2004 and 2005.")

The Court agrees and finds that the presence of § 9(g), which is a prevailing party fee-shifting clause, makes it less likely that § 9(k) is also a fee-shifting clause between the two parties.

**(4) *Conclusion***

Based on lower court decisions in New Mexico, appellate decisions in other states with similar legal principles, and the "general weight and trend of authority" in this area of law, the Court predicts that, if this case were before the New Mexico Supreme Court, it would hold that indemnity clauses are presumed to be third-party indemnification clauses and § 9(k) does not

establish first-party indemnification liability because (i) there is no specific language in § 9(k) that establishes first-party indemnity and (ii) the inclusion of § 9(g) weighs against the likelihood § 9(k) applies to first-party indemnity. *Reeves*, 17 F.4th at 1012. Therefore, such damages as might be claimed by Plaintiff under § 9(k) are irrelevant and inadmissible under FRE 402.

### C. Plaintiff can claim consequential damages resulting from breach of § 7 but may not claim attorneys' fees as consequential damages.

Defendant argues that the American Rule bars Plaintiff from asserting attorneys' fees as damages for contract breach since the fee-shifting provision of the Agreement, § 9(g), operates only in favor of Defendant. Mot. in Lim. at 7-8, ECF No. 238. Defendant also argues that § 7 bars Plaintiff from asserting damages based on record inspections, since § 7 requires Plaintiff to bear its own costs for routine inspections. *Id.* at 9. Plaintiff argues that it is entitled to consequential damages based on a breach by Defendant of § 7. See Resp. at 11-12, ECF No. 239.

The Court agrees with Plaintiff that a breach of § 7, if the jury finds one occurred, could result in consequential damages for Plaintiff, but finds that New Mexico law prevents Plaintiff from claiming as consequential damages attorneys' fees paid to enforce Plaintiff's contract rights. At most, Plaintiff can claim consequential damages flowing directly from Defendant's supposed breach, including travel costs and fees paid to agents of Plaintiff, including lawyers—but Plaintiff cannot claim attorneys' fees related to enforcement of the contract.

### (1) *Attorneys' fees cannot be recovered as consequential damages in New Mexico without a statutory or contractual provision, and the Agreement contains no such provision.*

In New Mexico, "[i]n a contract action, a defendant is liable only for those consequential damages that were objectively foreseeable as a probable result of his or her breach when the

19

contract was made." *Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 301 P.3d 387, 393 (N.M. 2013). Plaintiff argues that the *Sunnyland Farms* standard encompasses attorneys' fees flowing from a supposed breach by Defendant of § 7. Tr. of Hr'g of Dec. 1, 2025 at 29:23 – 30:8. That is not so.

In New Mexico, "[a]ttorney fees are recoverable as damages in . . . cases [involving a third party] though not allowed as damages recoverable in the usual suit" between two parties. *Dinkle v. Denton*, 359 P.2d 345, 349-50 (N.M. 1961) (holding that "where the wrongful act of the defendant has involved the plaintiff in litigation *with others* or placed him in such relation *with others* as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.") (internal quotation marks and citation omitted) (emphasis added).

There are exceptions to the general rule, including breaching the duty to defend in insurance contracts, *see Lujan v. Gonzales*, 501 P.2d 673, 682–83 (N.M. Ct. App. 1972), and where the parties contract for attorneys' fees as damages, *First Nat'l. Bank in Albuquerque v. Sanchez*, 815 P.2d 613, 620 (N.M. 1991) ("[A] party certainly may contract to pay reasonable attorney fees incurred in connection with the enforcement of a contract."); *see also Guest v. Allstate Ins. Co.*, 205 P.3d 844, 865 (N.M. Ct. App. 2009) *aff'd in part, rev'd in part*, 244 P.3d 342 (N.M. 2010) ("Guest has not identified any statutory or contractual provision, not premised on the existence of an insurance contract, that permits her to recover attorney fees."); *First Nat'l. Bank of Clovis v. Diane, Inc.*, 698 P.2d 5, 11–12 (N.M. Ct. App. 1985) ("The general rule is that each party to litigation must pay his own counsel fees, and attorney fees are not allowable in the absence of a specially authorizing statute or agreement.").

The Court finds no exception applies here. Only if the contract so provided would attorneys' fees be available to Plaintiff as consequential damages for a breach. And, since the portions of the Agreement which address attorneys' fees either award fees to the prevailing party after final judgment, § 9(g), or apply only in cases of third-party indemnity, § 9(k), there is no contractual provision or other exception which permits Plaintiff to claim attorneys' fees as consequential damages from Defendant's supposed breach of § 7. Evidence of such fees is irrelevant and inadmissible under FRE 402.

**(2)** ***Other consequential damages stemming from a supposed breach of § 7 remain available if sufficiently supported.***

Defendant argues that the wording of § 7, which requires Plaintiff to pay the "cost and expense" of inspecting Defendant's records, prohibits Plaintiff from making any claims related to inspection, particularly because Plaintiff's invoices for the inspections at issue appear to be routine. Mot. in Lim. at 9, ECF No. 238. Plaintiff counters that § 9(k) establishes a right to damages in the event of breach of § 7 by Defendant and that Defendant's position "renders[s] [Section 7] illusory." Resp. at 11, ECF No. 239.

Section 9(k) cannot support Plaintiff contention, *supra* III.B., but Plaintiff is correct that § 7 cannot be rendered "illusory" or operate as a "waiver." *Id.* A covenant in a contract is a covenant which can be breached. Whether Defendant complied with § 7, however, is a question for the jury. *See NMRA Uniform Jury Instructions – Civil, 13-843A. Special or consequential damages.*

If the jury so finds, consequential damages stemming from a supposed breach of § 7 are available to Plaintiff if sufficiently supported. These may include ordinary legal fees or fees paid to attorneys stemming directly from the breach. *Robey v. Parnell*, 392 P.3d 642, 653-54 (N.M. Ct. App. 2017) (holding legal fees related to the "ordinary course of events," like "the cost of filling

out [an] application" and "the cost of publishing a legal notice" can be claimed as consequential damages that foreseeably flow from breach if they are sufficiently supported). Here, Plaintiff may attempt to claim as damages any fees paid to attorneys directly related to the supposed breach of § 7, including travel inspection fees and document-review fees billed prior to commencement of litigation, insomuch as those fees resulted from breach. Plaintiff may not, however, claim fees paid to attorneys for actions related to enforcement of contract rights or commencement or continuation of litigation, *supra* III.C.(1).

## IV.  Conclusion

In summary, there is not yet a prevailing party and therefore Defendant cannot exclude via FRE 402 Plaintiff's evidence of attorneys' fees damages under the theory that Defendant is already the prevailing party; Plaintiff cannot claim attorneys' fees as damages for breach of § 7 under § 9(k) because § 9(k) does not permit first-party indemnification; Plaintiff cannot claim attorneys' fees related to contract enforcement or litigation as consequential damages flowing from a breach of § 7 because attorneys' fees are not permitted as consequential damages here under New Mexico law; and Plaintiff may claim as consequential damages from a supposed breach of § 7 such damages as flow naturally from such breach, including fees paid to attorneys directly related to the supposed breach, but in no way encompassing fees paid to attorneys for enforcement or litigation of contract rights.

For the foregoing reasons, it is **HEREBY ORDERED** that Defendant's Motion in Limine, ECF No. 238, is **GRANTED IN PART** and **DENIED IN PART**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE