UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| BELGRAVIA HARTFORD GOLD ASSETS CORP., f/k/a INTERCONTINENTAL POTASH CORP., <br><br> Plaintiff, <br><br> v. <br><br> POLYNATURA CORP., f/k/a INTERCONTINENTAL POTASH CORP. (USA), <br><br> Defendant. | Case No. 2:21-cv-00918-MIS-JHR |

### DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) FOR MOOTNESS

## I.    INTRODUCTION

Plaintiff does not dispute, and therefore concedes, that PolyNatura's December 23, 2025 delivery of a cashier's check for $9,046.05 provides the maximum compensatory damages a jury could award on its B&R Claim.[1]  The flimsy straws it grasps to insist that the Court must nonetheless proceed with a full-blown, two-day jury trial (with all of the costly pre-trial procedures that will entail) now border on abuse of process.  These arguments do not conceal Plaintiff's real objective: to forestall entry of final judgment and PolyNatura's application for prevailing party attorneys' fees that will promptly follow.

Because the B&R Claim no longer presents a "live controversy," the Court lacks jurisdiction to conduct the trial Plaintiff seeks.  It should grant the motion to dismiss for mootness.

---

[1] As used herein, **"Motion"** or **"Mot."** refer to PolyNatura's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) for Mootness (ECF No. 244), and **"Response"** or **"Resp."** refer to Plaintiff's Response thereto (ECF No. 248). Capitalized terms not defined herein have the same meaning as in the Motion.

## II.    ARGUMENT

### A.    The B&R Claim Is Moot Because a Judgment Will Not Provide Plaintiff Additional Relief

Plaintiff contends that PolyNatura's payment of the full amount of its alleged damages "does not extinguish the controversy" because it does not provide "the one thing [Plaintiff] seeks: a judgment." *See* Resp. at 3, 5. That argument turns the mootness doctrine on its head. Federal courts may not render "advisory opinions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Rather, "Article III . . . confines [federal courts] to resolving real and substantial controversies admitting of ***specific relief*** through a decree of a conclusive character." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (cleaned up) (emphasis added).

Thus, in the words of the 10th Circuit, "[t]he crucial question is whether granting a present determination of the issues offered will have some effect ***in the real world***." *Brown v. Buhman*, 822 F.3d 1151, 1165-1166 (10th Cir. 2016) (internal quotation marks omitted) (emphasis added). Because PolyNatura paid the full amount of damages Plaintiff could recover, a judgment that PolyNatura breached Section 7 of the Royalty Agreement would have no effect "in the real world." It would neither require PolyNatura to do or refrain from doing anything in the future, nor would it result in any additional monetary relief for Plaintiff. It would be a purely advisory opinion, for which federal jurisdiction does not exist.

Federal courts have consistently applied this reasoning to reject the position Plaintiff asserts here and to dismiss claims as moot following a defendant's tender of the full damages claimed. For example, in *Price v. Berman's Auto., Inc.*, the court held that a claim would be moot as soon as defendant tendered "an unconditional cashier's check equal to the amount of the [damages sought]" even without a judgment. 2016 WL 1089417, at *3 (D. Md. Mar. 21, 2016).

After the tender, the court explained, a judgment could not "grant any effectual relief whatever" and "would thus be of no additional value to Plaintiffs." *Id*. at *2; *see also Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. Supp. 3d 1192, 1202-1203 (D. Colo. 2017) (holding claim moot on full payment of disputed amount as it was no longer "possible for the Court to grant relief"); *Easter's Lock & Access Sys., Inc. v. Internal Revenue Serv.*, 2024 WL 2922779, at *3 (D. Md. June 10, 2024) (holding defendant's tender of the full amount claimed accorded "the complete relief [Plaintiff] can recover" and mooted the claim); *Rueling v. MOBIT LLC*, 2018 WL 3159726, at *5 (D. Ariz. June 28, 2018) (claim mooted where plaintiff could not "receive an award for damages that would exceed the amount" tendered).

Plaintiff is flatly wrong when it asserts, "[a] payment that avoids admitting liability does not extinguish the controversy" (Resp. at 3). Plaintiff cites no authority for this proposition, which directly conflicts with the caselaw just discussed. As the court stated in *Leyse v. Lifetime Ent. Servs., LLC*, once full relief is tendered, "[a] plaintiff has no entitlement to an admission of liability." 171 F. Supp. 3d 153, 155 (S.D.N.Y. 2016), *aff'd*, 679 F. App'x 44 (2d Cir. 2017).

Plaintiff's final argument—that PolyNatura's tender of full payment is akin to a "voluntary cessation" that does not moot the dispute—also fails. *See* Resp. at 2, 5. The voluntary cessation doctrine prevents a defendant engaged in *ongoing unlawful conduct* from avoiding liability by stopping that conduct temporarily in the face of litigation, only to "pick up where he left off" after the case is dismissed as moot. *See Brown*, 822 F.3d at 1166. The rule has no application to a claim for damages based on past conduct. Here, PolyNatura's tender is a one-time, permanent act that fully resolves the alleged harm from events that occurred several years in the past. The 10th Circuit addressed analogous facts in *Unified Sch. Dist. No. 259,*

3

*Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas*, 491 F.3d 1143 (10th Cir. 2007).  There, a school district had sued an advocacy group for a declaration regarding the scope of its obligation to disclose certain records.  *Id.* at 1145-1146.  After the defendant advocacy group withdrew its request for those records, the 10th Circuit dismissed the case as moot.  *Id.* at 1146, 1150.  Because any future records request would be predicated on a "different set of facts," the court reasoned, withdrawal of the request was not a voluntary cessation.  *Id.* at 1148-1150.  The same is true here.

In short, absent a colorable claim to concrete relief in addition to the payment PolyNatura has already tendered, the case is moot and should be dismissed with prejudice.[2]  In the sections that follow, we show that Plaintiff has no such claim.

### B.    Plaintiff's Claim for Punitive Damages Is Untimely and Frivolous

On page 4 of its Opposition, Plaintiff cites three New Mexico cases that discuss the theoretical possibility for a plaintiff to recover punitive damages in a breach of contract case. Tellingly, as shown in the following footnote, none of those cases awarded punitive damages.[3] Nor does Plaintiff cite any other case from New Mexico or any other jurisdiction that actually awarded punitive damages in a purely commercial contract dispute.

---

[2] Plaintiff asserts that mootness dismissals are ordinarily "without prejudice."  *See* Resp. at 3.  Although we are aware of 10th Circuit cases reaching that conclusion in some situations, such a rule could not apply here.  The dismissal for mootness in this case hinges on Plaintiff's receipt of all the relief a jury could award for PolyNatura's alleged 2021 breach of Section 7 of the Royalty Agreement, negating any possible future case regarding the same facts and circumstances.

[3] *Paiz v. State Farm Fire & Cas. Co.*, 118 N.M. 203, 211-212 (1994) (reversing punitive damages award that was based only on "gross negligence" and not an "'evil motive' or a 'culpable mental state'"); *Hood v. Fulkerson*, 102 N.M. 677, 681 (1985) (affirming directed verdict of no punitive damages where there was "no evidence of misrepresentation or misconduct by [defendant] that rose to the level of malicious, fraudulent, intentional, reckless or wanton conduct"); *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1258 (D.N.M. 2019), *aff'd*, 2021 WL 4979300 (10th Cir. Oct. 27, 2021) (dismissing punitive damages claim from complaint for failing to allege bad intent with enough particularity to satisfy federal pleading standard).

The real relevance of the cases Plaintiff cites is that they require the plaintiff seeking punitive damages to allege specific, tort-like conduct far beyond an intentional breach of contract.  One fundamental prerequisite for punitive damages is *scienter*.  As held by the New Mexico Supreme Court in *Paiz v. State Farm Fire & Cas. Co.*, a claim for punitive damages requires "***an 'evil motive' or a 'culpable mental state*.'"  118 N.M. 203, 211 (1994) (emphasis added).  And, to meet that high standard, a plaintiff must "plead [] facts that the Defendant[] acted with scienter."  *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1258 (D.N.M. 2019), *aff'd*, 2021 WL 4979300 (10th Cir. Oct. 27, 2021) (dismissing punitive damages claim because it lacked "corresponding factual allegations to support a finding of scienter").  In addition, this court's ruling in *Nowell* makes clear that a plaintiff must allege and prove "willful, wanton, malicious, reckless, oppressive, or fraudulent" conduct.  *Id.* at 1238.

In this case, Plaintiff is not entitled to a trial on punitive damages for two independent reasons:  (i) the claim for punitive damages, raised for the first time in its January 2, 2026 draft Pretrial Order, is untimely; and (ii) there is no basis on which a jury could find either scienter or "willful, wanton, malicious, reckless, oppressive, or fraudulent" conduct.

### 1.    Plaintiff Failed Timely to Plead a Claim for Punitive Damages

Plaintiff has never—over the course of its SAC, its Rule 26 disclosures, the joint status report, or any other filing—pleaded a claim for punitive damages.  Indeed, it did not give notice that it sought such relief until January 2, 2026, when counsel first met and conferred on the draft Pretrial Order.  The claim is therefore untimely.

As the 10th Circuit held in *Shaub v. Newton Wall Co/UCAC*, a plaintiff may not proceed to trial on a claim first raised in the pretrial order.  The Court explained:

> [C]laims or defenses not contained in the pleadings should normally not appear for the first time in the pretrial order because such a practice deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice.

153 F. App'x 461, 464 (10th Cir. 2005) (cleaned up) (affirming exclusion of a claim not pleaded in the complaint and raised for the first time in the pretrial order); *see also Leiserv, LLC v. Summit Ent. Centers, LLC*, 2017 WL 4003721, at *2 (D. Colo. Sept. 12, 2017) (striking claim raised for the first time in pretrial order because, "defendants are prejudiced by the inability to take discovery or file motions related to the claim").

This Court applied that rule ***specifically to preclude a claim for punitive damages first raised in the pretrial order*** in *Asbury v. MNT, Inc.*, 2014 WL 12613384, at *2–3 (D.N.M. Apr. 22, 2014).  There, as here, the plaintiff failed to make "any mention of 'punitive damages' in [its] Complaint, the Joint Status Report, [its] Rule 26 disclosures, [or its] discovery responses."  *Id.* at *3.  The court precluded the plaintiff from seeking punitive damages because, as here, the late disclosure deprived the defendant of "fair notice, the possibility of discovery, and the opportunity for motion practice."  *Id.* at *2.  That reasoning applies with equal force and requires the same result in this case.

### 2.    Plaintiff's B&R Claim Cannot Support Punitive Damages

The SAC does not allege a plausible claim for punitive damages under the standard set by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The gravamen of the SAC is that PolyNatura breached the Royalty Agreement's inspection provision after Plaintiff made inspection demands by "fail[ing] to mention that there were extensive electronic records available"—i.e., PolyNatura's emails that were later produced in discovery—and instead making its physical records in Hobbs, NM, and

New York City available for inspection.  Second Amended Complaint, ECF No. 66-1

("**SAC**") ¶¶ 47-54.  Plaintiff alleges no facts giving rise to an inference of an "evil motive" or

"culpable mental state" in any of these allegations.  Indeed, ***the SAC fails to allege scienter at***

***all***.  Thus, the SAC does not "plausibly" allege PolyNatura's intent sufficient to support a

punitive damages claim under the federal pleading standard.  *See Nowell*, 372 F. Supp. 3d, *supra,*

at 1258 (dismissing punitive damages claim for failure to comply with the federal pleading

standard, because plaintiff failed to "plead any facts that the Defendants acted with scienter");

*MRK Int'l, LLC v. Earthstone Int'l, LLC*, 2011 WL 13289855, at *3-4 (D.N.M. Mar. 30, 2011)

(dismissing claim for punitive damages where conclusory allegation of an "intentional" breach

with "kn[owledge] that [plaintiff] would be harmed" failed to "plausibly" allege "willful,

wanton, malicious, reckless, oppressive, or fraudulent" intent).

Leaving that dispositive legal analysis aside, it is difficult to imagine a dispute less

suitable for punitive damages than this one.  To start, the record of the prelitigation back and

forth between the parties on Plaintiff's inspection demands is of a piece with differences that

routinely arise in discovery disputes.  There is not a scintilla of evidence of conduct by

PolyNatura that would be sanctionable in the discovery context.

To the contrary, it is undisputed that, after Plaintiff's counsel wrote on July 16, 2021,

demanding four categories of documents and electronic records to which it believed it was

entitled, PolyNatura's counsel wrote on September 20, 2021, to state that PolyNatura would fully

comply with those demands.  Omnibus Order, ECF No. 199, at 34.  As this Court found in its

Omnibus Order, "PolyNatura offered access to 'all documents' that [Plaintiff] sought" ***before***

Plaintiff filed this suit.  *Id.* at 37 & n.14.  PolyNatura's agreement within a matter of weeks to

produce everything Plaintiff asked for forecloses as a matter of law any inference that it acted with a fraudulent or wrongful motive.  As the Court itself noted in its Omnibus Order, "four months [from Plaintiff's first inspection demand in May 2021 to September 2021] is not obviously unreasonable and unacceptable." *Id.* at 37.  *A fortiori,* that delay can scarcely serve as the basis for punitive damages.  Further, even after reviewing many thousand pages of documents produced in discovery and six depositions, Plaintiff has identified no evidence that PolyNatura was attempting to hide any information regarding its efforts to monetize the assets. That further precludes any inference that PolyNatura acted maliciously or in bad faith.

Finally, the punitive damages cases require proof that PolyNatura intended "to harm" Plaintiff.  But the only alleged harm that occurred (on the assumption that a jury would accept Plaintiff's version of the dispute) was Plaintiff's now admitted out-of-pocket inspection costs of $9,046.05.  That "harm" is minuscule compared to the massive burden of discovery Plaintiff subsequently imposed on PolyNatura in pursuit of its meritless commercially reasonable efforts claim and the hundreds of hours of executive and attorney time, plus millions of dollars of as yet uncompensated fees that PolyNatura has borne.

Plaintiff's claim for punitive damages is both untimely and frivolous.

### C. Ancillary Claims for Fees, Costs, and Interest Cannot Confer Jurisdiction

#### 1. Fees and Costs

Plaintiff cannot establish a "live controversy" based on its purported claim for attorneys' fees and costs.  *See* Resp. at 3.  First, Plaintiff has no such claim.  PolyNatura has demonstrated that Plaintiff cannot be the prevailing party in this case both in support of its Motion for Costs and Attorneys' Fees (ECF No. 218 at 2-3) and its First *Motion in Limine* (ECF No. 238 at 6-7).

Second, and equally decisive, a claim for attorneys' fees and costs is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); *Teague v. State of Colorado, Dep't of Corr.*, 2020 WL 6470194, at *3 (D. Colo. Oct. 8, 2020), *report and recommendation adopted sub nom. Teague v. Dep't of Corr.*, 2020 WL 6450441 (D. Colo. Nov. 2, 2020) ) ("An unbroken line of cases establishes the rule that controversy as to costs alone does not salvage an otherwise moot case."). Thus, Plaintiff's purported claim for attorneys' fees and costs does not save the B&R Claim from mootness.

### 2.    Interest

Plaintiff's passing suggestion that there is a live case or controversy concerning prejudgment interest (Resp. at 3) is incorrect. At least one court in this Circuit has held that a claim is moot when a "person . . . has been paid in full as to the amount allegedly wrongfully withheld" even if that person "was not paid interest on the amount." *Friedman*, *supra*, 227 F. Supp. 3d at 1203.

But, even without that rule, the relevant factors for assessing a claim to prejudgment interest under N.M. Stat. Ann. § 56-8-4(B)[4] weigh overwhelmingly against an interest award here. One such factor is whether the defendant "made a reasonable and timely offer of settlement." N.M. Stat. Ann. § 56-8-4(B)(2). Here the Court has already found that PolyNatura

---

[4] New Mexico has two prejudgment interest statutes applicable to breach of contract: N.M. Stat. Ann. § 56-8-4(B) and N.M. Stat. Ann. § 56-8-3. § 56-8-4(B) would be the applicable statute here. By contrast, § 56-8-3 only applies "where a defendant committed a breach of contract to pay a definite sum of money, the monetary value of which is stated in the contract or is ascertainable by mathematical calculation," and correspondingly, it does not apply where, as would be the case here, "th[e] refund is not technically due under the contract" but becomes due because "the jury found that [defendant] breached the contract." *SE Techs., Inc. v. Summit Elec. Supply Co., Inc.*, 2002 WL 35649944, at *3, *4 (D.N.M. May 30, 2002).

agreed to produce all requested documents *before Plaintiff commenced suit.* Had Plaintiff allowed PolyNatura to make that agreed production, there would have been no need or basis for the B&R Claim at all.[5] Another factor is whether plaintiff "was the cause of unreasonable delay." *Id.* § 56-8-4(B)(1). Here Plaintiff delayed resolution of any claim for reimbursement of its inspection costs by prosecuting its unsuccessful, main claim for some $14.4 million in damages based on alleged failure by PolyNatura to use commercially reasonable efforts to develop the Mine. Under the applicable factors, Plaintiff has no case for prejudgment interest.[6]

## III.   CONCLUSION

PolyNatura has resisted the temptation to respond in kind to Plaintiff's rhetorical excess. In closing, we note that the only "gamesmanship" going on here is that of a Plaintiff who seeks to burden the Court and the prospective jurors with a two-day trial over a $9,046.05 claim—of doubtful merit—that has already been paid in full. The Court should dismiss the B&R Claim as moot.

Dated: January 12, 2026                          Respectfully submitted,
         New York, New York

                                                 CHAFFETZ LINDSEY LLP

                                                 By:   */s/ Peter R. Chaffetz*
                                                       Peter R. Chaffetz

---

[5] At this stage, the Court should also be aware that PolyNatura attempted to resolve the entire dispute in June 2023 by making a non-confidential, unqualified offer to convey back to Plaintiff full management of the Water rights subject to the Royalty Agreement, as well as 100% (in contrast to the 75% under the Royalty Agreement) of all water revenue up to the royalty cap. Plaintiff preferred maintaining this litigation over assuming responsibility for generating the revenue it seeks. *See* Declaration of R. Matthew Burke, ¶ 2 & Ex. 1.

[6] If, in the face of these facts and the applicable statutory factors, the Court were nonetheless to conclude that the potential for an award of prejudgment interest creates a live controversy for trial, PolyNatura stands ready to pay Belgravia an additional $4,017.44, representing prejudgment interest that would have accrued on the $9,046.05 between the date Plaintiff allegedly incurred the inspection costs on a July 16, 2021 invoice from its counsel (ECF No. 166-1 at 3) and the date PolyNatura tendered payment on December 23, 2025 (Hong Aff. ECF No. 244-1 ¶ 2), at the maximum statutory prejudgment interest rate of 10%. *See* N.M. Stat. Ann. § 56-8-4(B).

R. Matthew Burke

1700 Broadway, 33rd Floor
New York, New York 10019
Tel. (212) 257-6960
Fax (212) 257-6950
p.chaffetz@chaffetzlindsey.com
r.burke@chaffetzlindsey.com


Of Counsel:

John B. Draper
Matthew E. Draper
DRAPER & DRAPER LLC
150 Washington Avenue, Suite 201
Santa Fe, NM 87501

Tel. (505) 570-4590
john.draper@draperllc.com
matthew.draper@draperllc.com

*Attorneys for Defendant PolyNatura*

**CERTIFICATE OF SERVICE**

This is to certify that on January 12, 2026, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ R. Matthew Burke*
R. Matthew Burke
Chaffetz Lindsey LLP

**CERTIFICATION OF COUNSEL**

Pursuant to the Court's Standing Order Establishing Disclosure and Certification Requirements for Generative Artificial Intelligence, I, R. Matthew Burke, counsel for PolyNatura, hereby certify that in connection with the preparation of this filing, Harvey AI, a generative artificial intelligence tool, was utilized.  I further certify that I have verified the accuracy of the contents of the filing.

*/s/ R. Matthew Burke*
R. Matthew Burke
Chaffetz Lindsey LLP
