### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

BELGRAVIA HARTFORD GOLD ASSETS CORP.,
f/k/a IC POTASH CORP.,

     Plaintiff,

v.                               Civ. No. 2:21-cv-00918-MIS-JHR

POLYNATURA CORP., f/k/a
INTERCONTINENTAL POTASH CORP.,

     Defendant.

### <u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>

THIS MATTER is before the Court on Defendant PolyNatura Corp.'s ("PolyNatura" or "Defendant") Motion to Dismiss ("Motion"), ECF No. 244, filed December 23, 2025. On January 6, 2026, Plaintiff Belgravia Hartford Gold Assets Corp. ("Belgravia" of "Plaintiff"), filed a Response, ECF No. 248. On January 12, 2026, Defendant filed a Reply. ECF No. 250. On February 5, 2026, Defendant filed a Motion to Deposit Funds Pursuant to Fed. R. Civ. P. 67(a). ECF No. 277, which the Court granted on March 16, 2026, ECF No. 283. Defendant deposited the funds on March 18, 2026. Decl. at 1-2. ECF No. 285. The Court will **GRANT** Defendant's Motion to Dismiss.

## I.  Background

The present dispute centers on the development of a potash/polyhalite mine in Lea County, New Mexico. Second Am. Compl. & Jury Demand ("Second Am. Compl.") ¶¶ 5, 14, ECF No. 67. Two deep water wells were drilled for projected use in the mining project. *Id.* ¶ 14. Over time several investors fought for control of PolyNatura, the entity that owns the rights to extract the minerals and the interests in the Water. *Id.* ¶¶ 14, 17. Lengthy litigation resulted in a 2017 settlement in which the entity now known as Belgravia agreed to give Cartesian Capital full

ownership and control of PolyNatura in exchange for two cash payments and royalties. *Id.* ¶¶ 17-18.

The Royalty Agreement ("Agreement"), ECF No. 137-8, provides that PolyNatura (now under the control of Cartesian Capital) pay Belgravia a 75% royalty on any revenue realized from the sale of the Water, up to a cap of $12.2 million. Agreement § 3.a. Further, if the Water royalties had not reached that dollar amount by 2023, then Belgravia would begin receiving a 1% royalty on revenues from the mine (up to the same cap). *Id.* The Agreement obligates PolyNatura to use "commercially reasonable efforts to realize revenues" from the Water and the mine. *Id.* § 5.a.

The Agreement is governed by the laws of the State of New Mexico. *Id.* § 9(g). The Agreement provides that "[i]n any dispute arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover from the other Party court costs and reasonable attorneys' fees." *Id.*

The Agreement states, in § 7, titled "Books and Records/Inspection," that PolyNatura shall permit Belgravia, at Belgravia's cost and expense, "to inspect [PolyNatura's] records (including without limitation, any records and data that are maintained electronically)," and make copies of such records, and "to discuss with [PolyNatura] the calculations of the Royalty and the [Water revenue amount], and [mining revenue amount]." *Id.*

Belgravia invoked its inspection rights under § 7 in a May 5, 2021 letter to PolyNatura. Def.'s Summ. J. Resp. at 4, ECF No. 157-1. PolyNatura responded the same day and "provided Plaintiff with access to information and an email about a potential Water transaction." *Id.* at 10. Belgravia followed up with PolyNatura on May 21, 2021, reiterating its request to inspect records and inquiring as to "the location of such records and PolyNatura's availability for an inspection." *Id.*; Decl. Paul Hong, Ex. 5, ECF No. 157-12. PolyNatura responded that there were "some

2

records" in Hobbs, New Mexico, and some in New York City. Def.'s Summ. J. Resp. at 10, ECF 157-1; Decl. Paul Hong, Ex. 5, ECF No. 157-12. On June 3, PolyNatura e-mailed Belgravia several electronic documents. Decl. R. Matthew Burke, Ex. 1, ECF No. 157-3; *see also* Def.'s Summ. J. Resp. at 10, ECF No. 157-1. Counsel for Belgravia traveled to Hobbs and to New York City in June and July of 2021 to inspect certain hard copy records that PolyNatura made available. Def.'s Summ. J. Resp. at 4-5, ECF No. 157-1.

Following these trips, on July 16, Belgravia emailed PolyNatura to again request access to records, this time naming specific categories including "[a]ll electronically stored documents that are related to the Royalty Agreement[.]" *Id.* at 10; Decl. Mehdi Azodi, Ex. 8, ECF No. 144-8. Belgravia sent another letter to PolyNatura on August 18 stating its view that PolyNatura was in breach of its contractual obligations because it had failed to provide Belgravia with access to records to which it was entitled. Def.'s Summ. J. Resp. at 7, ECF No. 157-1; Decl. Mehdi Azodi, Ex. 7, ECF No. 144-7. On September 20, PolyNatura "agreed by letter . . . to produce all such documents" requested by Belgravia, "at Plaintiff's expense." Def.'s Summ. J. Resp. at 11, ECF No. 157-1. Belgravia did not respond to that letter and filed the instant suit the same day. *Id.*

Belgravia asserted PolyNatura breached the Royalty Agreement in four ways: (1) "Delaying and interfering with the inspection of PolyNatura's books and records, and improperly withholding documents"; (2) "Failing to pursue a transaction with [a particular interested buyer] in 2018"; (3) "Failing to use commercially reasonable efforts to realize revenues from the water wells"; and (4) "Failing to use commercially reasonable efforts to realizing revenues from the mining asset." Second Am. Compl. at 18, ECF No. 67. The Parties filed Motions for Summary Judgment on all claims followed by a hearing and supplemental briefings and designations of evidence. ECF Nos. 136, 143, 144, 154, 157, 178, 185, 189, 190, 193. The Court issued an

Omnibus Order ruling in favor of PolyNatura as to claims two, three, and four. ECF No. 199 at 39.

The Court withheld judgment on claim one, "Delaying and interfering with the inspection of PolyNatura's books and records, and improperly withholding documents," finding (i) PolyNatura did not identify an absence of a genuine issue of material fact on which to base its Motion (having only mentioned the claim in a footnote) and (ii) Belgravia did not establish undisputed material facts showing that Defendant interfered with the contract as a matter of law. *Id.* at 32, 36. The Court stated that "the issue of whether PolyNatura was willfully ignorant or genuine is unquestionably one that requires assessment of each party's witnesses [and] is a function reserved for the jury." *Id.* at 36. The Court also opined that even if the Court viewed the Plaintiff's alleged facts in the light most favorable to the Plaintiff, "it is not clear that those facts demonstrate a breach of the record inspection clause." *Id.* at 37.

The Court then denied Defendant's Motion for Partial Final Judgment and Motion for Costs and Attorney's Fees, despite Defendant "prevail[ing]" on claims two, three, and four, citing (i) the federal policy against piecemeal appeals and (ii) the "enormous" amount of fees sought ($3,752,176.05) and the difficulty of assessing additional fees should Defendant win on claim one. ECF No. 227. The Court found delaying final judgment would not delay justice since the "final claim is not complex and should be resolved quickly." *Id.*

The Parties filed a Joint Motion for Trial Setting, requesting a jury trial on claim one. ECF No. 230. At a Status Conference, PolyNatura requested, and the Court granted, permission to file a Motion in Limine. Clerk's Mins. for Hr'g of Sep. 19, 2025 at 2, ECF No. 233. PolyNatura believed the Motion in Limine would be dispositive and avoid a trial. *Id.* The Court granted in part and denied in part Defendant's Motion in Limine. ECF No. 242. In so doing, the Court ruled that

Plaintiff could claim "consequential damages flowing directly from Defendant's supposed breach [of § 7], including travel costs and fees paid to agents of Plaintiff, including lawyers—but Plaintiff cannot claim attorney's fees related to enforcement of the contract." *Id.* at 19.

Defendant then filed the instant Motion to Dismiss under Fed. R. Civ. Pro. 12(b)(1). Mot. at 1, ECF No. 244. Defendant argues that Plaintiff identified the total damages from the alleged breach of § 7 as $9,046.05 for travel and inspection costs and $1,200,000 in litigation costs and, since the Court

> ruled that litigation costs were not recoverable as damages . . . [and] [i]n the Court's words Plaintiff was entitled to seek at trial its "fees paid to attorneys directly related to the supposed breach of § 7, including travel inspection fees and document-review fees billed prior to commencement of litigation" . . . the maximum amount Plaintiff could recover if it prevailed on the [breach claim] is the $9,046.05 Mr. Azodi set forth in [his Declaration, ECF No. 166-1 ¶ 4].[1]

*Id.* at 2-3 (quoting Order Granting in Part and Den. in Part Def.'s Mot. in Lim. at 22, ECF No. 242). Defendant goes on to declare that it has paid Plaintiff "the full $9,046.05" via cashier's check

---

[1] Defendant comes close to misleadingly quoting the Court's Order. Instead of limiting Plaintiff to the amount named by Mr. Azodi, this section of the Court's Order delineated consequential damages resulting directly from an alleged breach of § 7, which could be claimed, from attorneys' fees incurred in the litigation, which could not. ECF No. 242 at 19-22. The full quote, with the portion extracted by Defendant emphasized, is

> If the jury so finds, consequential damages stemming from a supposed breach of § 7 are available to Plaintiff if sufficiently supported. These may include ordinary legal fees or fees paid to attorneys stemming directly from the breach. *Robey v. Parnell*, 392 P.3d 642, 653-54 (N.M. Ct. App. 2017) (holding legal fees related to the "ordinary course of events," like "the cost of filling out [an] application" and "the cost of publishing a legal notice" can be claimed as consequential damages that foreseeably flow from breach if they are sufficiently supported). Here, Plaintiff may attempt to claim as damages any <u>fees paid to attorneys directly related to the supposed breach of § 7, including travel inspection fees and document-review fees billed prior to commencement of litigation,</u> insomuch as those fees resulted from breach. Plaintiff may not, however, claim fees paid to attorneys for actions related to enforcement of contract rights or commencement or continuation of litigation, *supra* III.C.(1).

Order Granting in Part and Den. in Part Def.'s Mot. in Lim. at 21-22, ECF No. 242 (emphasis added). In both this section and elsewhere, the Court makes clear that attorneys' fees stemming directly from the breach are part of what may be claimed by Plaintiff but are not the limit. *E.g., id.* at 19 ("At most, Plaintiff can claim consequential damages flowing directly from Defendant's supposed breach, including travel costs and fees paid to agents of Plaintiff, including lawyers—but Plaintiff cannot claim attorneys' fees related to enforcement of the contract."). Defendant's insistence that the Court declared $9,046.05 to be the limit does not get better with retelling. Motion to Deposit Cashier's Check at 1, ECF No. 277.

"'without admitting liability and purely in order to save the parties and the Court the cost and effort of a trial.'" *Id.* at 3-4 (quoting Declaration of Paul S. Hong ¶¶ 2-3, ECF No. 244-1). Defendant then argues that, since it has now paid the "full amount" recoverable, the claim is now moot and the "Court must therefore dismiss Plaintiff's [claim] pursuant to Fed. R. Civ. P. 12(b)(1)." *Id.* at 5.

Plaintiff argues in its Response that the action is not moot, since it has "an interest in determining liability both for purposes of the prevailing party issues and for punitive damages." Resp. at 2, ECF No. 248. Plaintiff also argues that the "tender of damages is akin to voluntary cessation cases because while the initial harm may be paid for, the Royalty Agreement remains in force and absent a finding of liability, PolyNatura may simply repeat its breach." *Id.* Finally, Plaintiff argues "collateral issues like awards of prejudgment interest, costs, and attorneys [sic] fees" remain unresolved. *Id.* at 3. Plaintiff proposes the Court "enter judgment on liability and compensatory damages . . . and set punitive damages for trial." *Id.* at 5.

Defendant argues in its Reply that a determination of liability would be merely advisory because it would not prevent a future breach and that this case is not akin to voluntary cessation. Reply at 2-4. Defendant argues punitive damages are unavailable because Plaintiff's claim is untimely and not plausible. *Id.* at 4-8. Finally, Defendant argues attorneys' fees, costs, and interest cannot sustain a case or controversy. *Id.* at 8-9.

## II.  Legal Standard

### A.  Motions to Dismiss

A Party may file a motion asserting lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." *Kontrick v. Ryan*, 540

U.S. 443, 455 (2004) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884); *Capron v. Van Noorden*, 6 U.S. 126 (1804); Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.")).

"If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016) (citation omitted). "Mootness deprives federal courts of jurisdiction." *Id.* (citation omitted). "A 'suit becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* (citation omitted). "'Put another way, a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision.'" *Id.* at 1266 (citation omitted).

### B. Pleading Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."

*Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief . . .

[is] a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the

pleader is entitled to relief." *Id.* (cleaned up).

### C.  Mootness and Payment of Compensatory Damages

"Once whole, a plaintiff lacks a 'personal injury fairly traceable to the defendant's

allegedly unlawful conduct and likely to be redressed by the requested [judicial] relief.'" *Jarrett*

*v. United States*, 79 F.4th 675, 678 (6th Cir. 2023) (citation omitted). "She also lacks the necessary

''personal stake in the outcome' of the lawsuit.'" *Id.* (citation omitted). "A defendant's 'offer' of

relief does not make a plaintiff whole or deprive a court of jurisdiction." *Id.* (citation omitted).

"Actual payment—a tender of the money due—differs." *Id.* "Such a tender gives the plaintiff all

the relief she could receive, and as a result it moots any claim for damages." *Id.*

Where a plaintiff concedes the amount of damages based on breach of contract and the

defendant pays that amount, a "breach of contract claim [is] no longer cognizable." *Slavin v.*

*Garrison Prop. & Cas. Ins. Co.*, No. 14-CV-01839-LTB-KMT, 2017 WL 2928030, at *3 (D. Colo.

July 10, 2017), *aff'd*, 805 F. App'x 561 (10th Cir. 2020).

### D.  Voluntary Cessation

"The voluntary cessation of challenged conduct does not ordinarily render a case moot

because a dismissal for mootness would permit a resumption of the challenged conduct as soon as

the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012). "The voluntary cessation rule 'traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'" *Brown*, 822 F.3d at 1166 (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)).

Voluntary cessation doctrine prevents "a defendant [from] engag[ing] in unlawful conduct, stop[ping] when sued to have the case declared moot, then pick[ing] up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Where "the challenged action—pursuing a claim in court—c[annot] be resumed in 'this or any subsequent action' and [where] it [i]s entirely 'speculative' that any similar claim would arise in the future," voluntary cessation does not apply and the case is moot. *See id.* at 92 (quoting *Deakins v. Monaghan*, 484 U.S. 193, 201 n.4 (1988)).

### E. Attorneys' Fees and Jurisdiction

An "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (citation omitted).

## III. Discussion

Because (1) Plaintiff has not pled sufficient facts to make a claim for punitive damages, (2) Plaintiff has conceded the maximum amount of compensatory damages, for which Defendant has tendered payment via a cashier's check, ECF Nos. 279 and 285, and (3) the remaining issue of liability has no impact on this case beyond awarding of attorneys' fees to the prevailing party and attorneys' fees are insufficient to sustain a case or controversy, the Court grants Defendant's Motion to Dismiss on the merits, finding the remaining issue in this case is moot and the Court

lacks subject matter jurisdiction. The case is dismissed with prejudice as Plaintiff's claim arises out of a single set of facts not capable of repetition.

**A. Punitive damages are not available to Plaintiff as the claim lacks a sufficient showing of the predicate circumstances to prove bad faith.**

Plaintiff brought its claim for punitive damages for the first time in its Response to Defendant's Motion to Dismiss. Resp. at 4, ECF No. 248; *see generally* ECF Nos. 1-276. Plaintiff cites no facts in the support of that claim in its Response. *See generally* ECF No. 248. At the Motion to Dismiss hearing, Plaintiff stated that an email sent in January 2021 from an attorney for PolyNatura to the State Land Office General Counsel said, "Hey, the water lease is not in effect and I'm worried that my clients are trespassers."[2] Tr. of Hr'g of Feb. 3, 2026 at 18:21-25. Plaintiff claims the email shows Defendant purposefully withheld quarterly updates to "keep their bad acts hidden." *Id.* at 18:25 – 19:4. Plaintiff argues the email shows "scienter and [a basis for] punitive damages." *Id.* at 19:7-8. Plaintiff further argues that because they did not have the email at the "time the complaint was drafted" they cannot be required to have pled punitive damages at that time. *See id.* at 19:8-9.

Defendant argues that the claim for punitive damages is untimely and "there is no basis on which a jury could find" the requisite state of mind or conduct to qualify for punitive damages under New Mexico law. Reply at 5, ECF No. 250. The Court finds Plaintiff's punitive damages claim is insufficiently supported and does not comport with fair notice.

A claim for relief requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' to 'give the defendant fair notice of what the . . . claim is and the

---

[2] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

grounds upon which it rests,'" *Twombly*, 550 U.S. at 555 (citations omitted). "[W]ell-pleaded factual allegations" are assumed to be true. *Iqbal*, 556 U.S. at 679. The Court then proceeds to determine "whether [the factual allegations] plausibly give rise to an entitlement of relief" by permitting the Court "to infer more than the mere possibility of misconduct." *Id.* Claimants must also include "enough fact to raise a reasonable expectation that discovery will reveal evidence [of the claim]." *Twombly*, 550 U.S. at 556. A well-pleaded complaint can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.*

Plaintiff fails to plead sufficient facts to infer the requisite standard for punitive damages in New Mexico. New Mexico courts require a showing of "bad faith" or "reckless disregard for the interests of the nonbreaching party" in breach-of-contract cases. *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 307 (N.M. 1994). Put another way, New Mexico requires the conduct of the Party at fault be "maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard to the plaintiffs' rights." *Hood v. Fulkerson*, 699 P.2d 608, 611 (N.M. 1985) (citation omitted). And, since the idea of punitive damages is to both punish and deter the party at fault, "there must be some evidence of a culpable mental state." *Constr. Contracting & Mgmt., Inc. v. McConnell*, 815 P.2d 1161, 1165 (N.M. 1991). Plaintiff's evidence, such as it is, does not meet that threshold nor does the Court believe further discovery will result in more evidence to support Plaintiff's claim.

The first time Plaintiff brought up punitive damages and bad faith in this case, in their Response to the instant Motion, Plaintiff brought up no facts at all. *See generally* Resp. at 4, ECF No. 248. Plaintiff offered only that "punitive damages remain available to Belgravia if it can show that PolyNatura's breach was willful or in bad faith" and "Belgravia has an interest in pursuing this claim to the jury and determining whether PolyNatura's actions—where a board member of

the parent corporation who made all decisions without even involving the CEO—meet the requirement for punitive damages." *Id.* Then Plaintiff offered only a single email asserting the water lease was not in effect, which Plaintiff argues is proof Defendant concealed the expiration of the water lease by not providing quarterly updates. Tr. of Hr'g of Feb. 3, 2026 at 18:21 – 19:8. Plaintiff's facts, or rather its fact, is insufficient to meet the standard for punitive damages in New Mexico. It does not permit this Court to infer more than the mere possibility of misconduct.

Second, Plaintiff's facts do not raise a reasonable expectation that further discovery, in a case in its fifth year, will reveal more evidence of their claim. The email was apparently the only evidence Plaintiff can point to in support of their allegation. Not only does the Court believe nothing more would be found via further discovery, it seems Plaintiff did not believe that either. Plaintiff got their hands on that email in 2024 and did nothing, making it unlikely Plaintiff believed until recently it was evidence of bad faith. *Id.* at 19:10-23. Plaintiff claimed their "[f]ocus on [the email] as a breach of the commercially reasonable efforts to market the water" prevented them from making a timely motion to amend to seek punitive damages. *Id.* at 19:21-23. But a focus on commercially reasonably efforts is not a good reason to delay pursuing a valid claim of punitive damages. Plaintiff is capable of simultaneously pursuing claims of insufficient commercially reasonable efforts and punitive damages. Further, the information Plaintiff sought in discovery to prove a failure of commercially reasonable efforts would overlap with information to prove bad faith. If nothing else has been found, nothing more is likely to be found. Plaintiff has not alleged facts that raise a reasonable expectation further discovery will reveal evidence to support their claim.

Finally, while new claims are not per se prohibited at this stage of proceedings, and Plaintiff is not submitting its claim in a pretrial order, the principle that courts "do not normally expect to

12

see claims or defenses not contained in the pleadings appearing for the first time in the pretrial order, especially in such cursory form" also applies here. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). "Such a practice deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse . . ." *Id.* at 1215-16. "[T]he party seeking to add a claim or defense should do so with specificity and clarity so as to minimize the ill effects . . . [and] provide the trial court with a fair opportunity to consider whether to approve or deny what is obviously an attempt to amend the pleadings at a rather late date." *Id.* at 1216.

> These circumstances are strikingly similar to *Asbury v. MNT, Inc.* in which the plaintiffs
>
> d[id] not allege facts in their Complaint, the Joint Status Report, or the Pretrial Order that, if proven, would give rise to punitive damages, *i.e.*, that Defendants acted maliciously, willfully, recklessly, wantonly, fraudulently, or in bad faith. Plaintiffs, for the first time in the Pretrial Order, mention only once in a conclusory manner that they intend to prove that Defendants acted "willfully, wantonly and recklessly."

No. CV 12-252 KG/RHS, 2014 WL 12613384, at *3 (D.N.M. Apr. 22, 2014). As in *Asbury*, Plaintiff here has not "filed a motion to amend the Complaint to add a punitive damages claim." *Id.* And, as in *Asbury*, the Court finds Plaintiff has "not pled enough facts to provide Defendants with fair notice, the possibility of discovery, and the opportunity for motion practice" and "denies any implicit attempt by Plaintiff[] to bring an additional punitive damages claim." *Id.*

Plaintiff's claim arrives insufficiently pled and late. Therefore, Plaintiff has no right to pursue punitive damages.

**B. Plaintiff has conceded the maximum amount of compensatory damages and Defendant's tender of payment via cashier's check moots Plaintiff's claim.**

Defendant argues that the Court capped Plaintiff's maximum damages at $9,046.05 in its Order Granting in Part and Denying in Part Defendant's Motion in Limine, ECF No. 242. *E.g.*,

Mot. at 1, ECF No. 244. This is not the case, *supra* I, but in the instant Motion Defendant also claimed that Plaintiff's principal identified $9,046.05 as the maximum amount of available damages incurred based on the alleged breach of § 7. ECF No. 244 at 2.

Plaintiff failed to challenge the amount of non-punitive damages in its Response, addressing only liability and punitive damages. *See generally* Resp., ECF No. 248. Plaintiff has therefore conceded the maximum amount of compensatory damages available and Defendant has tendered payment of those damages via cashier's check. Decl. at 1-2, ECF No. 285. Defendant's tender via cashier's check of payment for the full amount of damages conceded by Plaintiff means Plaintiff is now whole, the claim is moot, and Defendant has essentially conceded Plaintiff's claim, *see Galinkin v. Safeco Ins. Co. of Am.*, 2022 WL 18777079, at *4 (D. Colo. Dec. 21, 2022) ("[Defendant] essentially conceded plaintiff's breach of contract claim when it ultimately agreed to pay the full amount of . . . benefits available under the policy.").

In cases where the amount of damages is set, payment of the full amount of claimed damages renders claims moot, including claims of breach of contract. *E.g.*, *Slavin v. Garrison Prop. & Cas. Ins. Co.*, No. 14-CV-01839-LTB-KMT, 2017 WL 2928030, at *3 (D. Colo. July 10, 2017), *aff'd*, 805 F. App'x 561 (10th Cir. 2020) ("Plaintiff concedes that such stipulation by the parties as to the amount of the covered benefit, and that [defendant] has paid [p]laintiff for the amount assessed by the Appraisal Award, renders his breach of contract claim no longer cognizable. Because the amount of the covered benefit in this case is no longer in dispute and, in turn, [p]laintiff's contract claim is not [sic] longer at issue, evidence of the Appraisal Award process and amount is not relevant for the purpose of assessing the amount of the 'covered benefit' by the jury."); *Jarrett v. United States*, 79 F.4th 675, 678 (6th Cir. 2023) ("[A] tender gives the plaintiff all the relief she could receive, and as a result it moots any claim for damages."); *Watson*

14

*v. Farmers Ins. Co.*, 23 F. Supp. 3d 1342, 1351 (N.D. Okla. 2014) ("The defendant's payment of policy limits renders plaintiff's breach of contract claim moot, because plaintiff cannot show that he has contract damages, and he is protected by his tort claim for bad faith."); *Galinkin v. Safeco Ins. Co. of Am.*, 2022 WL 18777079, at *4 n.9 (D. Colo. Dec. 21, 2022) ("Payment of the full amount of the benefits due under the contract essentially moots plaintiffs' claim for breach of contract.") (citing *Slavin*, 2017 WL 2928030 at *3*; Hansen v. Am. Fam. Mut. Ins. Co.*, 383 P.3d 28, 37 (Ct. App. Colo. 2013), *rev'd*, 375 P.3d 115 (Colo. 2016)); *Easter's Lock & Access Sys., Inc. v. Internal Revenue Serv.*, 2024 WL 2922779, at *3 (D. Md. June 10, 2024) (finding, as the defendant paid the amount in controversy and plaintiff failed to contest the amount at issue, the claim was moot and the court lacked subject matter jurisdiction); s*ee Rueling v. MOBIT LLC*, 2018 WL 3159726, at *5 (D. Ariz. June 28, 2018) ("The [c]ourt concludes that it lacks subject matter jurisdiction over [p]laintiff's FLSA claim because [p]laintiff has been fully compensated for all possible damages under the FLSA.").

The Court finds these cases persuasive and adopts their reasoning. Where, as here, a plaintiff's only breach of contract claim is for damages and the damages are a sum certain amount, payment of the full amount of claimed damages is all the relief plaintiff can expect to receive. Payment of the full amount of damages therefore renders the breach of contract claim moot and removes the claim from the Court's subject matter jurisdiction.

Crucially, the funds cannot be simply an offer of payment of the full amount but must be a tender of money that cannot be rescinded. "A defendant's 'offer' of relief does not make a plaintiff whole or deprive a court of jurisdiction . . . [a]ctual payment—a tender of the money due—differs." *Jarrett*, 79 F.4th at 678. Handing over the "full sum without stipulation or condition . . . gives the plaintiff all the relief she could receive, and as a result it moots any claim for damages." *Id.* Where

funds are made available to a plaintiff but can be pulled back by a defendant, it does not constitute valid tender. *See Price v. Berman's Auto., Inc.*, No. 14-763-JMC, 2016 WL 1089417, at *3 (D. Md. Mar. 21, 2016). But payment via a cashier's check issued by a third-party bank constitutes tender and moots a claim for damages. *See id.*

Here, Defendant tendered payment by sending a cashier's check to Plaintiff, Mot. at 3, ECF No. 244, which Plaintiff returned, Mot. to Deposit Cashier's Check with the Ct. at 1, ECF No. 277. Defendant then moved to deposit the previously tendered cashier's check with the Court. *Id.* at 2. The Court granted Defendant's Motion to Deposit. ECF No. 283.

As the full amount of compensatory damages, $9,046.05, has been tendered by Defendant via the Clerk of Court to Plaintiff in the form of a cashier's check guaranteed by a third-party, Plaintiff's claim for compensatory damages stemming from the alleged breach of § 7 of the Royalty Agreement by Defendant is moot and the Court no longer has subject matter jurisdiction. Plaintiff is hereby ordered to obtain the funds from the Clerk. *Garrick v. Weaver*, 888 F.2d 687, 695. ("[F]unds in the registry of the court cannot be executed against in the absence of court order.").

## C. Voluntary cessation does not apply because Plaintiff is seeking retrospective relief, not an end to ongoing conduct.

Plaintiff argues that even if damages were not at issue, the doctrine of voluntary cessation "bar[s] dismissal for mootness where the defendant remains free to deny fault and the challenged conduct bears collateral consequences." Resp. at 5, ECF No. 248 (without citation). Plaintiff claims that Defendant is engaged in gamesmanship that "[t]he rule against voluntary cessation 'is designed to prevent.'" *Id.* (citing *Brown*, 822 F.3d at 1166).

16

Defendant argues that voluntary cessation does not apply where the "claim for damages [is] based on past conduct." Reply at 3, ECF No. 250. The Court agrees.

There are two exceptions to the mootness doctrine. *Brown*, 822 F.3d at 1166. The first concerns those actions which are "capable of repetition, yet evading review," and the second is "'voluntary cessation' of the defendant's conduct." *Id.* (citations omitted). Voluntary cessation applies where the plaintiff challenges on-going conduct the defendant can stop to moot the case, then resume afterwards. *Id.* ("[A] defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.") (quoting *Already*, 568 U.S. at 91). Where the "challenged action— pursuing a claim in court—could not be resumed in 'this or any subsequent action'" and it is "entirely 'speculative' that any similar claim would arise in the future," voluntary cessation does not apply. *See Already*, 568 U.S. at 92 (citing *Deakins v. Monaghan*, 484 U.S. 193, 201 n.4 (1988).

Voluntary cessation does not apply here. The cases cited to by *Brown* are instructive. They involve: enforcing a trademark, *Already,* 568 U.S. at 88; whether "a public-sector union [can] require objecting nonmembers to pay a special fee for the purpose of financing the union's political and ideological activities," *Knox,* 567 U.S. at 302; licensing sellers of sexually explicit materials, *City News & Novelty, Inc.*, 531 U.S. at 281-82; racial classification and student assignment in public schools, *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 710-11 (2007); and "the operation of the citizen-suit provisions of the Clean Water Act," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 173 (2000). *Brown* involved a constitutional challenge to Utah's bigamy statute. *Brown*, 22 F.d at 1155. The defendants in all those cases had an interest in continuing the challenged behavior and could attempt to moot the cases by temporarily stopping that behavior.

17

This is entirely different. Here, the conduct at issue took place over a specific period commencing at Plaintiff's request for records on May 7, 2021, Def.'s Summ. J. Resp. at 4, ECF No. 157-1, and ending at the filing of the instant suit for damages on September 20, 2021, *id* at 11. Based on Defendant's alleged breach during that time and Plaintiff's other claims, Plaintiff sought retrospective relief: "[d]amages in an amount to be determined at trial, including consequential and lost profits damages," "[a]ttorney's fees and court costs incurred in accordance with Paragraph 9(g) of the Royalty Agreement and under applicable law," and "[p]re- and post-judgment interest." Second Am. Compl. at 19, ECF No. 67. Plaintiff is not challenging how Defendant fulfills its continuing obligations under § 7. And the Court is not dismissing the claim as moot because conduct is no longer occurring and could reoccur in the future to Plaintiff's detriment. The Court is dismissing the claim as moot because Plaintiff has received all the relief to which it is entitled, *supra* III.B. The claim cannot be resumed and it is entirely speculative as to whether a similar claim will arise in the future. Voluntary cessation does not apply. *See Already*, 568 U.S. at 92.

**D.  Without a remaining claim for damages, liability only impacts the award of attorneys' fees and costs to the prevailing party under § 9(g) of the Agreement, and attorneys' fees and costs are insufficient to sustain an Article III case or controversy.**

The Agreement between the Parties contains a prevailing party clause, § 9(g), which provides that "[i]n any dispute arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover from the other Party court costs and reasonable attorneys' fees." ECF No. 137-8.

Plaintiff argues that even without damages it has an interest in "determining liability . . . for purposes of the prevailing party issues." Resp. at 2, ECF No. 248. Plaintiff argues Defendant filed the instant motion to "avoid[] the award of judgment in favor of [P]laintiff on its inspection

claim so that PolyNatura can claim that it prevailed on all issues in this case for purposes of an award of attorneys' fees." Tr. of Hr'g of Feb. 3, 2026 at 15:13-16. Plaintiff continues that unless Defendant is "willing to offer judgment . . . there is still a live case or controversy because we're talking about entitlement to attorneys' fees as the prevailing party." *Id.* at 16:17-21. And "[t]his interest, as in the prevailing party piece of this case, is absolutely a cognizable interest." *Id.* at 16:21-22. Plaintiff also argues the case may continue to determine "collateral issues like awards of prejudgment interest, costs, and attorneys [sic] fees." Resp. at 3, ECF No. 248.

Defendant argues that Plaintiff is attempting to "forestall entry of final judgment and PolyNatura's application for prevailing party attorneys' fees that will promptly follow." Reply at 1, ECF No. 250. Defendant also argues that "a claim for attorneys' fees and costs is 'insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" *Id.* at 9 (citing *Lewis*, 494 U.S. at 480).

The Court concurs with Defendant. Plaintiff has claimed and will shortly receive all damages to which it is entitled, *see supra* III.B. The only remaining interest Plaintiff claims is in a determination of liability. Resp. at 2, ECF No. 248. This is insufficient to sustain jurisdiction because a finding of liability here only impacts which party prevails for the purpose of obtaining attorneys' fees and costs under § 9(g).[3]

Where attorneys' fees "are available only to a party that 'prevails' by winning the relief it seeks" an "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis*, 494 U.S. at 480 (citations

---

[3] To the extent Plaintiff argues that a finding of liability will constrain Defendant's future behavior, the Court made clear when dismissing Plaintiff's attempted application of voluntary cessation doctrine that this is not the case, *see supra* III.C. Plaintiff has only sought retrospective relief. Second Am. Compl. at 19, ECF No. 67. Since a finding of liability provides no constraint on Defendant's future actions and gives Plaintiff no relief, such a finding would be advisory. The Court does not issue advisory opinions. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

19

omitted); *Fleming v. Gutierrez*, 785 F.3d 442, 448 (10th Cir. 2015) ("[A] claim of entitlement to attorney's fees does not preserve a moot *cause of action*.") (citing *Dahlem v. Bd. of Educ. of Denver Pub. Schs.*, 901 F.2d 1508, 1511 (10th Cir.1990)). Nor are costs sufficient to maintain a moot case. *Bank of Marin v. England*, 385 U.S. 99, 111 n.1 (1966) (Fortas, J., dissenting) ("An unbroken line of cases establishes the rule that controversy as to costs alone does not salvage an otherwise moot case.").

Here, the prevailing party, per § 9(g), is "entitled to recover from the other Party court costs and reasonable attorneys' fees." Agreement, ECF No. 137-8. A determination of liability affects nothing save which party prevails under the meaning of § 9(g). Therefore, liability only impacts attorneys' fees and costs, an interest in which is insufficient to maintain a case or controversy. This case remains moot.

Furthermore, the Court is persuaded by cases finding prejudgment interest, alluded to by Plaintiff as a reason to maintain jurisdiction, Resp. at 3, ECF No. 248, is insufficient to maintain a case or controversy. *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. Supp. 3d 1192, 1203 (D. Colo. 2017) (finding persuasive a number of cases in which courts found standing does not exist where a plaintiff has been "paid in full as to amount [claimed]"). The Court agrees: prejudgment interest is insufficient to sustain a case or controversy. And, as in *Friedman*, Plaintiff has not cited any authority to the contrary. 227 F. Supp. 3d at 1203. The Court cannot exercise jurisdiction over a dispute in which the only remaining matters are costs, prejudgment interest, and attorneys' fees.

## IV. Conclusion

In summary, Plaintiff is entitled only to compensatory damages, not punitive damages, Plaintiff concedes compensatory damages are $9,046.05. Defendant has tendered the full amount of damages, rendering Plaintiff's claim moot. Further, Plaintiff is not entitled to a finding of

liability because liability only impacts the award of attorneys' fees and costs, which are insufficient to sustain an Article III case or controversy.

For the foregoing reasons, **IT IS HEREBY ORDERED** that,

1. Defendant's Motion to Dismiss, ECF No. 244, is **GRANTED**,

2. Plaintiff is **ORDERED** to obtain Defendant's tendered funds from the Clerk of Court,

3. The Clerk of Court is **ORDERED** to release to Plaintiff the $9,046.05 deposited by Defendant pursuant to ECF Nos. 279 and 283, and

4. Plaintiff's claim for damages resulting from a breach of § 7 of the Royalty Agreement is **MOOT** and **DISMISSED WITH PREJUDICE**,

_____

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE