IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BELGRAVIA HARTFORD GOLD ASSETS CORP.,
f/k/a IC POTASH CORP.,

     Plaintiff,

v.                            Civ. No. 2:21-cv-00918-MIS-JHR

POLYNATURA CORP., f/k/a
INTERCONTINENTAL POTASH CORP.,

     Defendant.

**ORDER GRANTING IN PART AND DEFERRING IN PART DEFENDANT'S MOTION
FOR COSTS AND ATTORNEYS' FEES**

THIS MATTER is before the Court on Defendant PolyNatura Corp.'s ("PolyNatura" or "Defendant") Motion for Costs and Attorneys' Fees ("Motion"), ECF No. 289, filed April 20, 2026. On May 20, 2026, Plaintiff Belgravia Hartford Gold Assets Corp. ("Belgravia" or "Plaintiff"), filed a Response, ECF No. 299. On June 3, 2026, Defendant filed a Reply. ECF No. 304. The Motion is ripe for consideration. Upon review of the Parties' submissions, the record, and the relevant law, the Court will GRANT IN PART and DEFER IN PART Defendant's Motion. The Court grants Defendant's Motion to the extent that it finds Defendant is the prevailing party for the purpose of awarding costs and attorneys' fees. The Court defers judgment on the remainder of the motion and refers the amount of reasonable attorneys' fees and costs to the Magistrate Judge.

## I. Background

The present dispute centers on the development of a polyhalite mine in Lea County, New Mexico. Second Am. Compl. & Jury Demand ("Second Am. Compl.") ¶¶ 5, 14, ECF No. 67. Two water wells were drilled for projected use in the mining project. *Id.* ¶ 14. Over time several investors fought for control of PolyNatura, the entity that owns the rights to extract the minerals

1

and the interests in the water. *Id.* ¶¶ 14, 17. Lengthy litigation resulted in a 2017 settlement in which the entity now known as Belgravia agreed to give Cartesian Capital full ownership and control of PolyNatura in exchange for two cash payments and royalties. *Id.* ¶ 17.

The Royalty Agreement ("Agreement") provides that PolyNatura pay Belgravia a 75% royalty on any revenue realized from the sale of water, up to a cap of $12.2 million. Agreement § 3.a, ECF No. 137-8. If water royalties had not reached that dollar amount by 2023, then Belgravia would begin receiving a 1% royalty on revenues from the mine up to $12.2 million. *Id.* The Agreement is governed by the laws of the State of New Mexico. *Id.* § 9.g. The Agreement provides that "[i]n any dispute arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover from the other Party court costs and reasonable attorneys' fees." *Id.*

The litigation in this case arose out of two provisions within the Agreement. First, the Agreement obligates PolyNatura to use "commercially reasonable efforts to realize revenues" from the water and the mine. *Id.* § 5.a. Second, the Agreement states that PolyNatura shall permit Belgravia, at Belgravia's cost and expense, "to inspect [PolyNatura's] records (including without limitation, any records and data that are maintained electronically)," and make copies of such records, and "to discuss with [PolyNatura] the calculations of the Royalty and the [water revenue amount], and [mining revenue amount]." *Id.* § 7

Plaintiff Belgravia invoked its inspection rights under § 7 in a May 5, 2021 letter to Defendant PolyNatura. Def.'s Summ. J. Resp. at 4, ECF No. 157-1. After a series of back-and-forth requests and responses, and one trip by Plaintiff's counsel to Hobbs, NM, Plaintiff believed Defendant to be in breach of its contractual obligations to provide records access to Plaintiff. *See* Order Granting Def.'s Mot. to Dismiss at 2-3, ECF No. 286. Plaintiff accordingly filed the instant suit. Second Am. Compl., ECF No. 67.

Plaintiff asserted Defendant breached the Royalty Agreement in four ways: (1) "Delaying and interfering with the inspection of PolyNatura's books and records, and improperly withholding documents"; (2) "Failing to pursue a transaction with [a particular interested buyer] in 2018"; (3) "Failing to use commercially reasonable efforts to realize revenues from the water wells"; and (4) "Failing to use commercially reasonable efforts to realizing revenues from the mining asset." Second Am. Compl. at 18, ECF No. 67. The Parties filed Motions for Summary Judgment on all claims. ECF Nos. 136, 143, 144, 154, 156, 178, 185, 189, 190, 193.

The Court issued an Omnibus Order ruling in favor of Defendant as to claims two, three, and four. ECF No. 199 at 39. The Court found that because all three claims concerned what constituted "commercially reasonable efforts" (CRE), and a factfinder "would require expert evidence to understand what is considered 'commercially reasonable' in the marketing of non-potable water for industrial use," Plaintiff's failure to "produce[] any such expert evidence in resisting summary judgment" or "disclose an expert witness on this subject" rendered it incapable of making out its claims at the summary judgment stage or at trial. *Id.* at 13. The Court found Defendant was entitled to judgment as a matter of law as to claims two, three, and four ("CRE claims"). *Id.* at 39.

The Court withheld judgment on claim one, "Delaying and interfering with the inspection of PolyNatura's books and records, and improperly withholding documents," finding (i) Defendant did not identify an absence of a genuine issue of material fact on which to base its Motion (having only mentioned the claim in a footnote) and (ii) Plaintiff did not establish undisputed material facts showing that Defendant interfered with the contract as a matter of law. *Id.* at 32, 36. The Court stated that "the issue of whether PolyNatura was willfully ignorant or genuine is unquestionably one that requires assessment of each party's witnesses [and] is a function reserved for the jury."

3

*Id.* at 36. The Court also opined that even if the Court viewed the Plaintiff's alleged facts in the light most favorable to the Plaintiff, "it is not clear that those facts demonstrate a breach of the record inspection clause." *Id.* at 37.

The Court then denied Defendant's Motion for Partial Final Judgment and Motion for Costs and Attorney's Fees, despite Defendant "prevail[ing]" on claims two, three, and four, citing (i) the federal policy against piecemeal appeals and (ii) the "enormous" amount of fees sought, $3,752,176.05, and (iii) the difficulty of assessing additional fees should Defendant win on claim one. ECF No. 227. The Court optimistically found delaying final judgment would not delay justice since the "final claim is not complex and should be resolved quickly." *Id.*

The Parties filed a Joint Motion for Trial Setting, requesting a jury trial on claim one. ECF No. 230. At a Status Conference, Defendant requested, and the Court granted, permission to file an initial Motion in Limine. Clerk's Mins. for Hr'g of Sep. 19, 2025 at 2, ECF No. 233. The Court granted in part and denied in part Defendant's Motion in Limine. ECF No. 242. In so doing, the Court ruled that Plaintiff could claim "consequential damages flowing directly from Defendant's supposed breach [of § 7], including travel costs and fees paid to agents of Plaintiff, including lawyers—but Plaintiff cannot claim attorney's fees related to enforcement of the contract." *Id.* at 19.

Defendant then filed a Motion to Dismiss under Fed. R. Civ. Pro. 12(b)(1). ECF No. 244. Defendant argued Plaintiff identified the total damages from the alleged breach of § 7 as $9,046.05 for travel and inspection costs and $1,200,000 in litigation costs related to contract enforcement and, since the Court ruled that "litigation costs were not recoverable as damages," "the maximum amount Plaintiff could recover if it prevailed on the [breach claim] is the $9,046.05." *Id.* at 2-3 (quoting Order Granting in Part and Den. in Part Def.'s Mot. in Lim. at 22, ECF No. 242).

4

Defendant also filed a Motion to Deposit Funds, seeking leave to deposit $9,046.05 with the Court, which Defendant previously tendered to Plaintiff but which Plaintiff refused. ECF No. 277 at 1. Defendant argued that, since it paid the "full amount" recoverable, Plaintiff's claim was moot. Mot. to Dismiss at 5, ECF No. 244. Defendant offered the payment "'without admitting liability and purely in order to save the parties and the Court the cost and effort of a trial.'" *Id.* at 3-4 (quoting Declaration of Paul S. Hong ¶¶ 2-3, ECF No. 244-1).

The Court granted Defendant's Motion to Deposit Funds, ECF No. 283, and found that, as Plaintiff did not reply to Defendant's assertion in its Motion to Dismiss that the maximum amount of compensatory damages from the breach claim was $9,046.05, (1) Plaintiff conceded the amount and (2) Defendant's payment rendered Plaintiff's claim moot, Order Granting Def.'s Mot. to Dismiss at 13-16, ECF No. 286. The Court dismissed the final claim with prejudice and entered final judgment on March 19, 2026. *Id.* at 21; ECF No. 287.

On April 20, 2026, Defendant filed the instant Motion for Costs and Attorneys' Fees. ECF No. 289. Defendant moves, pursuant to Agreement § 9.g, for $4,701,366.48 in costs and attorneys' fees as the prevailing party. *Id.* at 1. Defendant argues it is the prevailing party because the CRE claims "were always the 'main issue'" and Defendant won summary judgment dismissing the claims. Mot. at 5, ECF No. 289. Defendant also argues it prevailed on the breach claim because, although Plaintiff sought (i) punitive damages, (ii) $1,200,000 in consequential damages based on attorney's fees, and (iii) $9,046.05 in compensatory damages, Plaintiff only received $9,046.05 from Defendant. *Id.* at 5-6.

Defendant acknowledges it did not pay its own legal fees since "neither the Water nor Mineral resources have generated any revenue, [Defendant] has never had cash flow from which to pay its litigation costs." *Id.* at 2. Instead, nearly all fees were paid on Defendant's behalf by "a

related entity, Cartesian Capital Group LLC" and recorded as liabilities by Defendant, which plans to repay the amount "from funds it recovers through this Motion or from future Water or Mineral revenue." *Id.*

Plaintiff, in its Response, argues that: (1) neither party is the prevailing party because, although Defendant "did avoid an adverse judgment" on the CRE claims "[o]n the technical ground that no expert opinion was offered on what are commercially reasonable efforts," Defendant "conceded that [Plaintiff] is entitled to 100% of its damages relating to" the breach claim "by tendering payment to the Court's registry," Resp. at 3-4, ECF No. 299; (2) Cartesian, not Defendant, incurred the fees and costs which Defendant claims and Defendant is therefore not entitled to an award under the Agreement, *id.* at 4-6; and (3) the requested fees and costs should be "reduced significantly both under a lodestar calculation and because fees and costs are not adequately supported as reasonable," *id.* at 6-18.

Defendant, in its Reply, argues it is the prevailing party, ECF No. 304 at 1-2, it is entitled to recover fees paid by related entities, *id.* at 2-3, and its fees and cost calculations are reasonable and recoverable, *id.* at 3-12.

## II. Legal Standard

### A. Prevailing Party

"When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 746 P.2d 1109, 1111 (N.M. 1987). "When no ambiguity has been raised or argued, we uphold the plain and unambiguous wording of the contractual provision." *Dennison v. Marlowe*, 775 P.2d 726, 729 (N.M. 1989) (citation omitted).

"New Mexico law defining prevailing party under a contractual fee-shifting provision does not have the same policy considerations to lower the bar of what is required to be considered a prevailing party [as federal 42 U.S.C. § 1988 litigation], and the case law makes clear that a party must 'win the lawsuit' to be considered a prevailing party." *McNeill v. Loewen*, No. CIV 24-0032 JB/SCY, 2026 WL 1535887, at *19 (D.N.M. June 1, 2026). "The [c]ourt . . . looks at the entirety of this case to determine if either party has won the lawsuit such that they are entitled to attorney's fees under the contract." *Id.*

"[A]t the end of the entire action, the prevailing party is the party who wins on the merits or on the main issue of the case." *Hedicke v. Gunville*, 62 P.3d 1217, 1224-25 (N.M. Ct. App. 2002) (citing *Marchman v. NCNB Tex. Nat. Bank*, 898 P.2d 709, 730 (N.M. 1995)). "This is so even if the party does not prevail 'to the extent of his original contention.'" *Fort Knox Self Storage, Inc. v. W. Techs. Inc.*, 142 P.3d 1, 9 (N.M. Ct. App. 2006) (quoting *Hedicke*, 62 P.3d at 1224).

"[T]he prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy v. Miller*, 862 P.2d 1212, 1219 (N.M. 1993). "A judgment for defendant on its motion for summary judgment . . . is one on which it is the prevailing party and entitled to costs unless the trial court can articulate a justification for denial." *Marchman*, 898 P.2d at 730 (citation omitted).

"[U]sing the plain meaning of the words of the statute and the plain meaning of the words of the contract, we look to the history of this case to determine whether there is a prevailing party." *Hedicke*, 62 P.3d at 1225. In a suit involving multiple claims, "if each party prevails on one claim and loses on one claim, the trial court could and may conclude that neither is ultimately a prevailing party on those claims." *Hedicke*, 62 P.3d at 1225 (citing *N.M. Right to Choose/NARAL v. Johnson*, 986 P.2d 450, 459-60 (N.M. 1999)).

### B.  Recovery of Fees When Costs Were Paid by Related Entity

Where contractual language does not "indicate[] that attorney's fees are not available to the prevailing party if another party has paid those fees," the "critical fact" is whether the prevailing party "incurred the fees even if they were paid by another entity." *Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1312 (D. Kan.), *aff'd*, 662 F.3d 1275 (10th Cir. 2011).

## III.  Discussion

The main issue in the case is whether Defendant used "commercially reasonable efforts" in executing the Agreement. The three CRE claims therefore represent the main issue. Because Defendant won on the three CRE claims via summary judgment, it won on the main issue of the case and is the prevailing party under New Mexico state law. Since Defendant incurred its costs and attorneys' fees under a contract that does not restrict fee recovery if another entity paid the fees, Defendant is entitled to recover costs and attorneys' fees as the prevailing party. The Court defers judgment on the amount of costs and attorneys' fees and refers that issue to the Magistrate Judge.

### A.  Under New Mexico state law, Defendant is the prevailing party because it received summary judgment on the main issue.

Defendant argues it is the "prevailing party" under New Mexico law. Mot. at 5, ECF No. 289. Defendant argues that the prevailing party under New Mexico law is the one which prevails on the "main issue," the CRE claims were the "main issue" because Plaintiff sought "some $14.4 million in damages" for the CRE claims, and the Court's grant of summary judgment "made [Defendant] the prevailing party on the main claims and therefore for the case as a whole." *Id.*

(citing *Mayeux v. Winder*, 131 P.3d 85, 96-97 (N.M. Ct. App. 2006); *Dethlefsen v. Weddle*, Nos. 33,540, 2016 WL 1019190, at *5-6 (N.M. Ct. App. Fed. 15, 2016)).

Defendant also argues that it prevailed on the breach claim because Plaintiff sought punitive damages and $1,200,000 in consequential damages but only recovered $9,046.05 in compensatory damages. *Id.* at 5-6 (citing *U.S. ex rel. Silva's Excavation v. Jim Cooley Constr.*, 572 F. Supp. 2d 1276, 1278-79 (D.N.M. 2008); *Hedicke*, 62 P.3d at 1225).

Plaintiff argues that neither party is the prevailing party. Resp. at 3-4, ECF No. 299. Plaintiff notes that the New Mexico standard is that "the prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Id.* at 3 (citing *Dunleavy*, 862 P.2d at 1219). Plaintiff acknowledges that Defendant "avoid[ed] an adverse judgment" on "the technical ground that no expert opinion was offered on what are commercially reasonable efforts," thus meeting the standard in *Dunleavy* for the CRE claims. *Id.* But Plaintiff argues the recovery of "its damages" on the breach claim means it won that claim since "[Defendant] conceded that [Plaintiff] is entitled to 100% of its damages." *Id.* at 3-4 (citing *Fort Knox Self Storage*, 142 P.3d at 10). And, since the Parties split the claims, "'no one really prevailed.'" *Id.* at 4 (quoting *Aspen Landscaping, Inc. v. Longford Homes of N. M., Inc.*, 92 P.3d 53, 60 (N.M. Ct. App. 2004)).

Defendant replies that because "Plaintiff sued [Defendant] for over $14 million" and "recovered $9,046.05," it cannot be true that neither Party prevailed. *See* Reply at 1, ECF No. 304. Defendant distinguishes *Aspen Landscaping* because in that case the defendant "substantially defeated the plaintiff's claim" and the "defendant failed to obtain a 'judgment in its favor'" on its counterclaims. *Id.* at 1-2 (quoting *Aspen Landscaping*, 92 P.3d at 60). Defendant also disputes Plaintiff's characterization of Defendant's payment as a concession, asserting that because it

9

tendered the payment of all compensatory damages "without admitting liability" it was not a concession. *Id.* at 2 (emphasis removed). Finally, Defendant argues that even if "Plaintiff had won a judgment for the de minimis amount of $9,046.05, it would not be the prevailing party in any respect." *Id.* (emphasis removed). The Court agrees with Defendant.

"[U]sing the plain meaning of the words of the statute and the plain meaning of the words of the contract, [the Court] looks to the history of this case to determine whether there is a prevailing party." *Hedicke*, 62 P.3d at 1225. The Agreement states that "[i]n any dispute arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover from the other Party court costs and reasonable attorneys' fees." § 9.g, ECF No. 137-8. The plain meaning of the contract is that the prevailing party under New Mexico law is entitled to recover costs paid to the court and fees paid to its attorneys for work on the case.

The "case law makes clear that a party must 'win the lawsuit' to be considered a prevailing party" "under a contractual fee-shifting provision" in New Mexico. *McNeill*, 2026 WL 1535887, at *19. "[T]he prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy*, 862 P.2d at 1219. Put another way, "at the end of the entire action, the prevailing party is the party who wins on the merits or on the main issue of the case." *Hedicke*, 62 P.3d at 1224-25 (citing *Marchman*, 898 P.2d at 730). "This is so even if the party does not prevail 'to the extent of his original contention.'" *Fort Knox Self Storage*, 142 P.3d at 9 (quoting *Hedicke*, 62 P.3d at 1224).

Determining the prevailing party depends on determining the "main issue" issue in the case, *Hedicke*, 62 P.3d at 1224-25 (citation omitted), which in turn requires the Court to "look to the history" of the case, *id.* at 1225. Therefore, the Court recounts the history of the Parties prior

10

to litigation to explain why the CRE claims for which Defendant received summary judgment are the main issue, making Defendant the prevailing party.

**(1)** *The CRE claims are the main issue because they are the only means by which Plaintiff could reach the $12.2 million to be paid to it per the Royalty Agreement.*

Prior to litigation, Plaintiff's parent company sold its ownership interests in Defendant to Cartesian Capital Group, LLC in exchange for $15 million to be paid to Plaintiff. Second Am. Compl. ¶ 5, ECF No. 67. The total amount was split into a cash payment of $2.8 million and $12.2 million in future royalties to be paid to Plaintiff by Defendant. *Id.* ¶ 17. The Parties entered into a Royalty Agreement to formalize the payments. *Id.* ¶ 18.The Agreement provided that Defendant pay Plaintiff royalties from the sale of water up to $12.2 million and royalties from mineral revenues after 2023 if water royalties had not generated $12.2 million by that time. Agreement § 3.a, ECF No. 137-8; *see also* Second Am. Compl. ¶¶ 18-20, ECF No. 67.

For about a year, dating from just before the Parties signed the Royalty Agreement, Defendant engaged with external parties about the purchase or lease of the underlying assets which were to generate the water royalties. Second Am. Compl. ¶¶ 6-10, 28-29, ECF No. 67. Plaintiff expected the sale of the assets to result in "significant royalty income." *Id.* ¶ 6. The sale never materialized. *Id.* ¶ 11.

Plaintiff alleges a series of ham-handed actions by Defendant. *Id.* ¶¶ 6-10, 23-55. Plaintiff alleges Defendant squandered multiple opportunities to sell the underlying assets to one particular buyer, including a potential sale for $12.5 million, because Cartesian executives "did not like" the buyer due to the buyer making it known, after his firing from Defendant, that Defendant "lacked the expertise to succeed in New Mexico without him and that Cartesian's principal . . . had treated him unfairly." *Id.* ¶¶ 6-10. Plaintiff alleges that Defendant could have sold the assets for at least

$6 million to that buyer but instead pursued an "unlikely and unappealing" deal with a second buyer who eventually "walked away," by which time "the value of the water assets had greatly decreased due to changing market conditions." *Id.* ¶¶ 8-10.

After the second buyer walked away, Plaintiff believed Defendant did not "engag[e] in any reasonable efforts to market" the underlying asset and "failed to make material progress on the mining project." *Id* ¶ 11. From the signing of the Agreement in 2017 to 2022 the assets generated no revenue at all. *Id.* Plaintiff believed the project was "no closer to generating revenue [in 2022] than it was in 2017." *Id.*

Plaintiff "sought an explanation for [Defendant's] lack of activity and invoked its contractual right to inspect the company's books and records to assess whether [Defendant] was, in fact, using commercially reasonable efforts to market the assets." *Id.* ¶ 12. Plaintiff was unable to access the records to its satisfaction and decided it had "no option but to pursue records through litigation." *Id.*

Plaintiff brought four claims against Defendant: (1) "Delaying and interfering with the inspection of PolyNatura's books and records, and improperly withholding documents;" (2) "Failing to pursue a transaction with [a particular interested buyer] in 2018;" (3) "Failing to use commercially reasonable efforts to realize revenues from the water wells;" and (4) "Failing to use commercially reasonable efforts to realizing revenues from the mining asset." Second Am. Compl. ¶ 94, ECF No. 67. For the following reasons, the final three claims, which lead directly to Plaintiff realizing the full amount negotiated in the Royalty Agreement, represent the main issue in the case.

All four claims are rooted in Plaintiff's frustration with not realizing any part of the $12.2 million agreed to in 2017. The first claim stemmed from Plaintiff's desire to obtain records to determine why there was no revenue and whether Defendant was to blame. The second, third, and

fourth claims, alleging Defendant failed to make commercially reasonable efforts to market the water and develop or sell the assets, went directly to Plaintiff's loss of revenue,.

Of the four claims, the only way Plaintiff could obtain the $12.2 million would be to succeed on one or more of claims two, three, and four. Claim two would give rise to damages from the failure to sell the assets for at least $6 million and potentially up to $15 million. Claims three and four would give rise to some amount of damages capped at $12.2 million. Relative to those claims, the first claim is a minor issue because it would give rise only to damages arising from Plaintiff's inability to access records between May 2021 and September 2021. *Id.* ¶¶ 46-54. During litigation Plaintiff advanced no theories that permit it to claim damages stemming from claim one anywhere close to the damages Plaintiff could gain from success on the other claims.

Plaintiff made three arguments for damages based on claim one. First, Plaintiff claimed consequential damages of $1.2 million for attorneys' fees "expended in this lawsuit." Decl. of Azodi at 1, ECF No. 166-1. The Court found New Mexico law prohibits Plaintiff from asserting attorneys' fees in an ongoing suit as consequential damages—but did permit Plaintiff to seek other consequential damages. Order Granting in Part and Den. in Part Def.'s Mot. in Limine at 19-22, ECF No. 242. Plaintiff, however, has not identified other consequential damages stemming from breach. *E.g.,* Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 248; Pl.'s Resp. to Def.'s Mot. to Deposit Funds, ECF No. 279; Pl.'s Mot. for Reconsideration, ECF No. 288; Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Reconsideration, ECF No. 302.

Second, Plaintiff made a claim for punitive damages. Pl.'s Resp. to Def.'s Mot. to Dismiss at 4, ECF No. 248. Plaintiff's claim for punitive damages was denied as "insufficiently pled and late." Order Granting Def.'s Mot. to Dismiss at 10-13, ECF No. 286. Furthermore, Plaintiff again offered no theory by which the punitive damages for breach would rise to level of damages that

would flow from a successful outcome in claims two, three, or four. *See generally* Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 248.

Finally, Plaintiff sought compensatory damages. The Court found Plaintiff conceded that the maximum amount of compensatory damages was $9,046.05 based on Plaintiff's nonresponse to Defendant's assertion. Order Granting Mot. to Dismiss at 13-16, ECF No. 286 (citing Def.'s Mot. to Dismiss at 2, ECF No. 244; Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 248). Plaintiff denies its concession. Plaintiff argues (1) it objected to the Court's Order Granting in Part and Denying in Part Defendant's Motion in Limine ("Order on Defendant's MIL"), ECF No. 242, during a Court hearing and (2) that its submission of Jury Instructions requesting $12,200,000 for "direct damages . . . 'caused by delay or denial of inspection'" refutes its concession. Mot. for Reconsideration at 3, ECF No. 288.[1] Neither argument makes claim one a, or the, main issue.

As to the former argument, Plaintiff's objection to the Court's Order on Defendant's MIL does not bear on the Court's finding that Plaintiff conceded the amount of compensatory damages. The Court did not find Plaintiff conceded compensatory or consequential damages in its Order on Defendant's MIL, ECF No. 242, issued December 19, 2025. Quite the opposite. The Court closed off Plaintiff's consequential damages claims for "fees paid to attorneys for actions related to enforcement of contract rights or commencement or continuation of litigation." *Id.* at 19-22. The Court did not address compensatory damages, *see generally* Order on Def.'s MIL, ECF 242, and the Court left open the possibility of claiming other "sufficiently supported" consequential damages, *id.* at 21 ("If the jury so finds, consequential damages stemming from a supposed breach of § 7 are available to Plaintiff if sufficiently supported."). Plaintiff conceded compensatory

---

[1] Although not part of this Motion briefing, Plaintiff's Motion for Reconsideration arguments bear on why claim one is a minor issue and claims two, three, and four represent the main issue.

14

damages *afterwards*, on January 6, 2026, when Plaintiff submitted its Response to Defendant's Motion to Dismiss, ECF No. 248. Plaintiff's nonresponse to Defendant's assertion about compensatory damages is the source of the limitation. Order Granting Def.'s Mot. to Dismiss at 13-16, ECF No. 286.

Plaintiff's latter argument, that it did not concede damages because it filed Jury Instructions requesting $12,200,000 in direct damages, ECF No. 273 at 4, is likewise deficient. First, Plaintiff's Jury Instructions were untimely. *See* Scheduling Order, ECF No. 236. Plaintiff submitted them after the Court ordered both Parties, on the eve of the pretrial conference, to explain "why they should not be subject to sanctions for having missed numerous trial submission deadlines." Order to Show Cause, ECF No. 265. Second, even if the instructions were timely, Plaintiff's request for $12,200,000 in direct damages is an obvious, and impermissible, attempt to revive claims three and four.[2] Plaintiff was attempting to realize the exact amount owed to it under the Royalty Agreement. To do so, Plaintiff would have to explain to the jury how obtaining records for four months would have enabled it to obtain the entirety of the Royalty Agreement amount in that time—an exceptionally unlikely task especially considering its inability to bring necessary expert testimony. *See* Omnibus Order at 13, ECF No. 199. As Plaintiff's Jury Instructions were simply an attempt to pursue claims three and four via impermissible means, the Court does not find it a credible claim for compensatory damages stemming from an alleged breach.

In sum, Plaintiff has been single-mindedly pursuing the Royalty Agreement amount, $12.2 million. That amount is the main issue in the case. The claims which go directly to that amount, claims two, three, and four, represent the main issue. Claim one cannot reach that amount and is

---

[2]    In the same Jury Instructions Plaintiff listed $1,596,357.57 in legal fees as consequential damages "incurred as a result of the breach." ECF No. 273. As noted above, the Court closed off that possibility a month and a half prior to Plaintiff's filing in its Order on Defendant's MIL. ECF No. 242 at 19-21. The Court suspects Plaintiff panic-filed previously drafted Jury Instructions after reading the Court's Order to Show Cause.

therefore a minor issue. Plaintiff's attempt to bend claim one to reach $12.2 million in damages only reinforces the importance of claims two, three, and four. The Court therefore finds that claims two, three, and four represent the main issue in the case.

### (2) *Defendant won on the main issue, making it the prevailing party.*

New Mexico state law is clear on the requirement to qualify as a prevailing party. "[T]he prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy*, 862 P.2d at 1219. "[A]t the end of the entire action, the prevailing party is the party who wins on the merits or on the main issue of the case." *Hedicke*, 62 P.3d at 1224-25 (citing *Marchman*, 898 P.2d at 730).

Defendants have met every threshold and are the prevailing party. Claims two, three, and four represent the main issue in the case. On February 7, 2025, the Court awarded summary judgment to Defendant on claims two, three, and four. Omnibus Order at 39, ECF No. 199. In so doing, Defendant avoided an adverse judgment on all three counts. *Dunleavy*, 862 P.2d at 1219.

Plaintiff argues that Defendant won only on a "technical ground," Resp. to Mot. at 3, ECF No. 299, but that is immaterial. It does not matter that Defendant stumbled into summary judgment because the Court discovered that New Mexico law required an expert to explain "commercially reasonable efforts" to factfinders and Plaintiff failed to timely provide one. Omnibus Order at 13-30, ECF No. 199. Defendant won summary judgment and "[a] judgment for defendant on its motion for summary judgment . . . is one on which it is the prevailing party." *Marchman*, 898 P.2d at 730 (citation omitted).

Finally, Plaintiff and Defendant's squabble about who "won" on claim one is immaterial. *See* Mot. at 5-6, ECF No. 289; Resp. at 3-4, ECF No. 299; Reply at 1-2, ECF No. 304. The winner

of the minor issue does not impact which party is the prevailing party under New Mexico state law. *See Hedicke*, 62 P.3d at 1224-25.

**B. Defendant is eligible for costs and attorneys' fees even though other entities paid for its legal fees during litigation.**

Plaintiff argues that Defendant cannot obtain costs and attorneys' fees as the prevailing party because (1) Defendant's Chairman's claim to carry the legal fees as a liability owed is "inadmissible hearsay," (2) Defendant's costs and fees are "a debt owed to shareholders, Cartesian, or employees," and it is not clear how much is owed to each since only Cartesian agreed to be the "guarantor of payment," (3) there is no insurance agreement or indemnification contract between Defendant and Cartesian, and (4) the law firms retained by Defendant billed Cartesian directly. Resp. at 4-6, ECF No. 299.

Defendant replies that (1) its Chairman has direct knowledge of its liabilities, making his statement nonhearsay, and (2) the issue of who paid legal fees is irrelevant—it only matters that Defendant incurred the fees. Reply at 2-3, ECF No. 304 (citing *Kan. Penn Gaming*, 790 F. Supp. 2d at 1312-13). The Court agrees with Defendant.

The Court adopts the reasoning in *Kansas Penn Gaming* and finds the fact that Defendant incurred legal fees is the only material fact under the Parties' Agreement—it does not matter that other entities paid Defendant's legal fees during litigation.

In *Kansas Penn Gaming* the losing party argued it should not be obligated to pay attorneys' fees to the prevailing party because the prevailing party was "a shell company which paid none of the fees in question and is not obligated to pay them and, therefore, has no fees or expenses to be recovered." 790 F. Supp. 2d at 1311. The court found the contract between the parties did not indicate "that attorney's fees are not available to the prevailing party if another party has paid those

fees." *Id.* at 1312. The court stated that "[t]he critical fact" was the prevailing party "has incurred the fees," rendering it immaterial that "they were paid by another entity." *Id.* The Court agrees with the *Kansas Penn Gaming* court's reasoning.

The Royalty Agreement states "[i]n any dispute arising out of or relating to this Agreement, the prevailing Party shall be entitled to *recover* from the other Party court costs and reasonable attorneys' fees." § 9.g, ECF No. 137-8 (emphasis added). "Recover" is the same word used in *Kansas Penn Gaming* and the Court finds likewise that, as it is not defined in the contract, *see* ECF No. 137-8, the appropriate reading is the plain language, 790 F. Supp. 2d at 1312. And, as found in *Kansas Penn Gaming*, the Court agrees the plain language meaning of "recover" is "to obtain by judgment or other legal process." *Id.* (citing *Black's Law Dictionary* (9th ed. 2009)); *see also Recover*, *Black's Law Dictionary* (10th ed. 2014). This definition does not preclude recovery of fees if they have been paid for by another entity. *Kansas Penn Gaming*, 790 F. Supp. 2d at 1312.

Whether the prevailing party and the entity that paid the fees enter into a formal indemnification contract or a handshake agreement for repayment, or the entity does not require repayment, is not addressed in the Royalty Agreement and does not impact Plaintiff's obligation under the Agreement. *See* ECF No. 137-8. Defendant is entitled to recover incurred costs and attorneys' fees as the prevailing party even though its obligations were paid by other entities.

**C. The Court refers the remaining attorneys' fees issues to the Magistrate Judge.**

Defendant argues it is entitled to $4,701,366.48 in attorneys' fees and costs as the prevailing party. Mot. at 5-6, ECF No. 289. Defendant argues its requested fees are justified under the factors used in New Mexico state law to determine "reasonableness." *Id.* at 7-12 (citing *LPP Mortg. Ltd. V. Worldwide Christian Aid, Inc.*, No. CV 14-0367 RB/CG, 2016 WL 10538011, at *2 (D.N.M. Apr. 1, 2016)).

18

Plaintiff argues that the amount of Defendant's claimed fees should be reduced by a lodestar analysis considering rates "prevailing in the [southern New Mexico] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Resp. at 6-11, ECF No. 299 (citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000)). Plaintiff argues a lodestar analysis would result in a total of $1,724,173.75. *Id.* at 10. Plaintiff also argues that Defendant impermissibly attempts to claim fees for unrelated work, *id.* at 11-12, and fees for unrelated entities, *id.* at 12-13. Finally, Plaintiff argues "the amount of time spent on certain tasks" claimed by Defendant is "unreasonable," *id.* at 13-15, Defendant is seeking unreasonable fees for clerical work, *id.* at 15-17, and Defendant's redactions and vague descriptions make a meaningful review of fees and costs "impossible," *id.* at 17-18.

Defendant replies that its claims are reasonable under the Tenth Circuit standard for contractual applications, Reply at 3-4, ECF No. 304, its attorneys charged reasonable rates because "both parties intended to work with counsel who practice in major, national markets," and "Plaintiff's own choice of lawyers bars it from challenging" Defendant's use of New York-based counsel, *id.* at 4-6. Defendant also argues that the hours charged by its attorneys were not unreasonable and that Plaintiff's analysis of fees in its Response was "Legally Improper" and "riddled with blatant error and misrepresentation." *Id.* at 6-8 (footnote omitted). Defendant insists Plaintiff failed to identify any category of fees that are unreasonable, that the unrelated entities cited by Plaintiff were properly part of discovery efforts, that Plaintiff has no basis to exclude various categories of cited work, and that Defendant is not improperly seeking fees for clerical work. *Id.* at 8-11. Defendant also refutes Plaintiff's characterization of fees as too vague or redacted to be identified. *Id.* at 12. Finally, Defendant asserts that the costs it seeks are "compensable as 'nontaxable' costs under the Royalty Agreement." *Id.* at 12 (citation omitted).

19

In general, the Court agrees with Plaintiff. Defendant's request for $4.7 million seems inordinate considering Defendant prevailed only because a Court legal clerk, not Defendant's legal team, determined Plaintiff could not win on its CRE claims. But perhaps Defendant did something to deserve $4.7 million in fees, so the Court remains open to argument. In the interest of gathering more information the Court will refer the issue of costs and attorneys' fees to the Magistrate Judge.

In accordance with the provisions of 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), the Court refers these and other issues relating to the award of costs and attorneys' fees under the Royalty Agreement to the Magistrate Judge. The Magistrate Judge shall conduct hearings, if warranted, including evidentiary hearings, and perform any legal analysis required to recommend to the Court an ultimate disposition on the amount of costs and attorneys' fees to award Defendant. The Magistrate Judge will submit an analysis, including findings of fact, if necessary, and recommended disposition, to the District Judge assigned to the case, with copies provided to the parties. The parties will be given the opportunity to object to the proposed findings, analysis, and disposition as described in 28 U.S.C. § 636(b)(1). Objections must be filed within fourteen (14) days after being served with a copy of the proposed disposition.

## IV. Conclusion

In summary, Defendant is the prevailing party and is entitled to recover costs and attorneys' fees in an amount to be determined. The amount of costs and attorneys' fees shall be determined after proposed findings are submitted to the Court by the Magistrate Judge and objections are filed by the Parties. For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Costs and Attorneys' Fees is **GRANTED IN PART** and **DEFERRED IN PART**.

20

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE